UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA

Criminal Action No. 04-CR-00364 (JG)

-        against        -

**Hon. John Gleeson** (J.)

JOHN SURGENT,

Defendant.

------------------------------------------------------x

## MEMORANDUM OF LAW OF NON-PARTY REGINA SURGENT IN SUPPORT OF MOTION TO VACATE OR MODIFY *EX PARTE* RESTRAINING ORDER

STEVEN L. KESSLER
Law Offices of Steven L. Kessler
122 East 42 Street, Suite 606
New York, New York 10168-0699
(212) 661-1500

Attorneys for Non-Party
REGINA SURGENT

Eric M. Wagner
  *On the Memorandum*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

POINT I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

THE *EX PARTE* RESTRAINING ORDER IMPROPERLY RESTRAINS
SPECIFIC PROPERTY IN A MONEY JUDGMENT FORFEITURE CASE . . . 3

Money Judgment Forfeitures and Substitute Property . . . . . . . . . . . . . . . 6

Government's Higher Burden of Proof in Specific Property Forfeitures . . 9

The Provenance of Money Judgment Forfeitures Provides Further Support
for Barring Restraint and/or Forfeiture of Substitute Assets in Connection
with a Money Judgment Forfeiture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

POINT II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

EVEN IF THE RESTRAINING ORDER IS NOT VACATED, IT SHOULD
BE MODIFIED TO PERMIT THE RELEASE OF MS. SURGENT'S STOCK   18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

i

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

        -      against      -

JOHN SURGENT,

                       Defendant.
-------------------------------------------------------x

Criminal Action No. 04-CR-00364 (JG)

**Hon. John Gleeson** (J.)

## MEMORANDUM OF LAW OF NON-PARTY REGINA SURGENT IN SUPPORT OF MOTION TO VACATE OR MODIFY *EX PARTE* RESTRAINING ORDER

### PRELIMINARY STATEMENT

Non-party Regina Surgent, wife of defendant John Surgent in the referenced proceeding, submits this Memorandum of Law in support of her motion, pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, for an Order vacating or modifying the *ex parte* post-indictment, post-conviction restraining order dated August 25, 2005 ("the Order"), to permit the release of Ms. Surgent's 106,000 shares of Safeguard Security Holdings, Inc. ("the shares") that have been restrained by the Order.  Because the defendant is incarcerated and his criminal counsel has, without notice, decided to stop representing him, the *ex parte* Order has gone uncontested for more than three months, leaving Ms. Surgent and her two minor children destitute in the process.

As set forth in Point I, because the government has sought only a money judgment forfeiture in this case, it is not entitled to the restraint or forfeiture of substitute assets or any other specific property, but only a money judgment against the defendant to be executed under state law.

As set forth in Point II, even if the Order is not vacated, it should be modified to permit the release of the shares to Ms. Surgent.  The government's *lis pendens* on Ms. Surgent's New Jersey home ("the home") – owned solely by Ms. Surgent more than ten years before the occurrence of the events underlying the criminal proceeding against her husband – provides more than adequate security for any forfeiture judgment against her husband in this case, should the government prove the home is subject to forfeiture.[1]

In either event, the shares should be immediately released.

---

[1]There can be no question of Ms. Surgent's standing to bring this motion, as it is undisputed that (1) she is the actual as well as title owner of the home and the shares, and (2) she is being directly injured by the restraint of the property.

2

# ARGUMENT

## POINT I

### THE *EX PARTE* RESTRAINING ORDER IMPROPERLY RESTRAINS SPECIFIC PROPERTY IN A MONEY JUDGMENT FORFEITURE CASE

The government has not met the statutory standard for restraining any property in this case.  Therefore, the restraint should be lifted and the shares should be released.  Although the government has not cited a specific statute to support its *ex parte* restraining order – and, indeed, has not submitted any legal support whatsoever for the Order – the only possible authority for the restraining order is set forth in 21 U.S.C. § 853, which provides in relevant part that, "upon application of the United States, the court may enter a restraining order . . . to preserve the availability of property described in subsection (a) of this section for forfeiture under this section."  21 U.S.C. § 853(e)(1).[2]

Thus, the statute only authorizes the restraint "of property described in subsection (a)".  Subsection (a), titled "Property subject to forfeiture", describes the two types of property subject to criminal forfeiture:

> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation [and]

> (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation . . ..

---

[2]Although the government seeks forfeiture pursuant to 18 U.S.C. § 982(a)(1), that section does not have its own enforcement procedures.  Instead, like most federal criminal forfeiture statutes, section 982 incorporates by reference the provisions of 21 U.S.C. § 853.  *See* 18 U.S.C. § 982(b); *United States v. Razmilovic*, 419 F.3d 134, 138 n.2 (2d Cir. 2005).

21 U.S.C. § 853(a)(1)-(2).

Subdivision (1) property is commonly referred to as "proceeds", and subdivision (2) property is known as "facilitating property". Collectively, proceeds and facilitating property are often referred to as "specific property".

Only property that is the proceeds of, or facilitated, the underlying criminal activity may be restrained pursuant to section 853. This principle is confirmed by subdivision (1)(A), which provides that when the application for a restraining order is made after filing of an indictment, the indictment must allege that "the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section . . .." 21 U.S.C. § 853(e)(1)(A).

Here, the government is not seeking to forfeit specific property. From the indictment through trial and up to the current sentencing proceedings, the government has sought only a money judgment forfeiture. "A money judgment is an *in personam* judgment against the defendant and not an order directed at specific assets in which any third party could have any interest." Fed. R. Crim. P. 32.2, Advisory Committee note, *quoted in United States v. Reiner*, 393 F. Supp. 2d 52, 55 n.8 (D. Me. 2005).

Money judgments are not listed as forfeitable property in section 853(a). There is no statutory authorization for the government to restrain property pursuant to subsection (e) where it does not seek the forfeiture of that property pursuant to subsection (a). As the previously quoted injunctive relief provision of section 853 makes clear, the court's

4

power to "enter a restraining order or injunction" is limited to "property described in subsection (a) of this section for forfeiture" – *i.e.*, proceeds and facilitating property.  21 U.S.C. § 853(e) (citing 21 U.S.C. § 853(a)); *United States v. Ripinsky*, 20 F.3d 359, 363 (9th Cir. 1994) ("Subsection (e) thus authorizes an injunction only to preserve 'property described in subsection (a)'").

Accordingly, because the government seeks a money judgment forfeiture only and not the forfeiture of specific property, it is not entitled to injunctive relief pursuant to 21 U.S.C. § 853(e).  *See United States v. Gotti*, 155 F.3d 144, 149 (2d Cir. 1998) (pretrial restraining order may be issued only against specific property enumerated in subsection (a)) (quoting *United States v. Floyd*, 992 F.2d 498, 502 (5th Cir. 1993)).

The enforcement procedure for money judgment forfeitures is completely different from that for forfeiture of specific property. While forfeitures of specific assets of the defendant can be executed immediately upon the issuance of a final order of forfeiture, a money judgment forfeiture must be executed pursuant to the procedures of the state where the property is located.  *See*, *e.g.*, *United States v. Paccione*, 948 F.2d 851 (2d Cir. 1991) (government required to follow state creditor procedures to enforce stipulated money judgment issued in forfeiture case); *United States v. Baker*, 82 F. Supp. 2d 936, 944 (S.D. Ill. 1999) (issuing two part forfeiture order: (1) "a personal monetary judgment against the defendant [that] may be enforced as a regular monetary judgment" and (2) forfeiture

of defendant's interest in specific parcel of real property), *aff'd*, 227 F.3d 955 (7th Cir.

2000), *cert. denied*, *Baker v. United States*, 531 U.S. 1151 (2001).

Significantly, because the government seeks only a money judgment herein, Ms.

Surgent does not have a right to challenge the forfeiture of her assets in an ancillary

proceeding.  As Rule 32.2 of the Federal Rules of Criminal Procedure provides:

> If, as prescribed by statute, a third party files a petition asserting an interest in the property to be forfeited, the court must conduct an ancillary proceeding, *but no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment.*

Fed. R. Crim. P. 32.2(c)(1) (emphasis added).

Thus, any argument by the government to the effect that Ms. Surgent's application

is premature or that she can assert her rights to her property after sentencing and entry of

a preliminary order of forfeiture should be rejected out of hand.  The instant application is

appropriate and timely.  The *ex parte* Order should be vacated now and Ms. Surgent's

property should be released.


**Money Judgment Forfeitures and Substitute Property**

The government's forfeiture memorandum asserts that it is entitled to restrain

specific property, including the shares and home, because the property has been listed as

"substitute property" in the government's proposed Preliminary Order of Forfeiture.  *See*

21 U.S.C. § 853(p).  The government, however, is not entitled to an order forfeiting

substitute property in this case because it has not sought to forfeit specific property

6

enumerated in 21 U.S.C. § 853(a).  From the indictment through trial, the government has

sought only a "forfeiture money judgment", not the forfeiture of specific property.

Section 853 permits forfeiture of substitute property only when the government has pled

and proven that specific property is subject to forfeiture, but that property is unavailable

due to some act of the defendant.  *See United States v. Bornfield*, 145 F.3d 1123 (10th Cir.

1998) ("An asset cannot logically be both forfeitable and a substitute asset. . .. The

substitute assets provision allows the forfeiture of other assets not already forfeitable

when the forfeitable asset is unavailable due to some act or omission of the defendant").

As the Court of Appeals explained in *United States v. Candelaria-Silva*, 166 F.3d

19 (1st Cir. 1999), *cert. denied*, 529 U.S. 1055 (2000):

> A criminal forfeiture order may take several forms.  First, the government is
> entitled to an *in personam* judgment against the defendant for the amount of
> money the defendant obtained as proceeds of the offense.  Second, to the
> extent the government can trace any of the proceeds to specific assets, it
> may seek the forfeiture of those assets directly pursuant to 21 U.S.C. §
> 853(a)(1).  Third, if as a result of some act or omission of the defendant, the
> government cannot trace the proceeds to specific assets, it may seek the
> forfeiture of 'any property, cash or merchandise, in satisfaction of the
> amount of criminal forfeiture to which it is entitled.'

*Id.* at 42-43 (citing 21 U.S.C. § 853(p); *United States v. Voigt*, 89 F.3d 1050, 1088 (3d

Cir. 1996)).

Just as the court's jurisdiction to enter a restraining order under subsection (e) is

dependent upon the government seeking the forfeiture of property pursuant to subsection

(a), the government's right to seek the forfeiture of substitute property pursuant to

7

subsection (p) is limited to cases where subsection (a) property is sought to be forfeited. Subsection (p)'s substitute property provision may be invoked only where subsection (a) property is not available for forfeiture. Without an order forfeiting *specific* property, there can be no order forfeiting *substitute* property. The very definition of substitute property is that it is a *substitute* for specific property that cannot with due diligence be located. Thus, the government cannot do an end run around the statute by labeling Ms. Surgent's assets 'substitute property' without having sought the forfeiture of specific property in the first place.

Significantly, in its forfeiture memorandum, the government unilaterally rewrites the statutory definition of substitute assets by inserting the phrase "money judgment forfeiture" into its paraphrase of the statute: "If the Government cannot collect a *money judgment* . . . . then the Court must order the forfeiture of other property of the defendant, *i.e.*, substitute assets, up to the amount of the *money judgment*." Gov. Mem. at 6-7 (emphasis added). As already discussed, however, the statute does not use the term "money judgment" – indeed, no statute does. Rather, it is limited to "property described in subsection (a)" – specific property. The government's surreptitious editing of the statutory language appears to indicate its awareness that it is asking this Court to award relief that is not authorized by Congress.

8

## Government's Higher Burden of Proof in Specific Property Forfeitures

There are constitutionally significant reasons why a money judgment forfeiture cannot be simply plugged into any statute authorizing the forfeiture of specific property. The government's burden of proof is drastically lower when it seeks only a money judgment forfeiture.  As Rule 32.2 of the Federal Rules of Criminal Procedure explains, once the defendant is convicted or pleads guilty in a case in which criminal forfeiture is sought, "the court must determine what property is subject to forfeiture under the applicable statute."  Fed. R. Crim. P. 32.2(b)(1).

The nature of that determination, however, is dependent upon whether the government seeks only a money judgment forfeiture or the forfeiture of specific property:

> If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense.  If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.

Fed. R. Crim. P. 32.2 (b)(1).

Thus, as the Rule makes clear, the government may not forfeit *specific* property unless it "establishe[s] the requisite nexus between the property and the offense."   In other words, the government must *trace* the property sought to be forfeited to the crime, establishing that all of the property is either proceeds of, or facilitated, the criminal activity that forms the basis for the conviction.  This is a substantial burden, and it requires the jury or the Court to make specific findings.  Unless that burden is met, and

9

such findings are made, the Court lacks authority to enter a Preliminary Order of Forfeiture against any specific property.

The contrast with money judgment forfeitures could not be more stark.  As the Rule makes clear, a money judgment forfeiture imposes virtually no burden of proof on the government: "[i]f the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay."  No tracing is required and no nexus between the property and the offense need be established.  It is simply a finding regarding how much money was generated by the defendant's criminal activity.  *See United States v. Reiner*, 393 F. Supp. 2d at 54 (Rule 32.2 of the Federal Rules of Criminal Procedure "cleanly differentiates how to proceed when the government seeks forfeiture of a particular asset from how to proceed when the government seeks a personal money judgment").

Nor can the government switch theories of forfeiture mid-stream.  As subsection (a) of Rule 32.2 provides, "[a] court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute."  Fed. R. Crim. P. 32.2(a).

This provision is critical because, as the Advisory Committee notes to the Rule make clear, "if the defendant disputes the government's allegation that a parcel of real property is traceable to the offense, the defendant would have the right to request that the

jury hear evidence on that issue, and return a special verdict, in a bifurcated proceeding that would occur after the jury returns the guilty verdict." *See United States v. Reiner*, 393 F. Supp. 2d at 54 ("the 'nexus' determination applies only to forfeiture of a particular asset.  Correspondingly, the only jury trial rights recognized by [Rule 32.2] is for that nexus determination. . .. Rule 32.2 makes no reference whatsoever to a jury's role in a personal money judgment") (citing *United States v. Tedder*, 403 F.3d 836, 841 (7th Cir. 2005) ("Although Fed. R. Crim. P. 32.2 offers the defendant a jury trial, this provision . . . is limited to the nexus between the funds and crime; Rule 32.2 does not entitle the accused to a jury's decision on the amount of the forfeiture")).

Thus, if the government seeks – as it has here – only a money judgment forfeiture in the indictment and allows the trial to be conducted under that theory, and then, during the sentencing stage, suddenly seeks forfeiture of specific property, it will have deprived the defendant of his right to a trial by jury on the tracing issue with respect to that property.

Moreover, Rule 32.2 can in no way be interpreted to loosen the statutory requirements for forfeiture of substitute property.  Subsection (e) permits the government to seek amendment of an existing forfeiture order to include subsequently identified property, or substitute property, but the latter is limited to "substitute property that qualifies for forfeiture under an applicable statute."  Fed. R. Crim. P. 32.2(e).

11

Accordingly, Rule 32.2 reinforces the huge gulf between money judgment forfeitures and forfeiture of specific property, and makes it clear that permitting the restraint and forfeiture of specific property without establishing the required nexus – as the government attempts to do here by seeking forfeiture of specific property as 'substitute property' for a money judgment forfeiture – is an utter perversion of Congress's carefully crafted forfeiture scheme set forth in 21 U.S.C. § 853.

### The Provenance of Money Judgment Forfeitures Provides Further Support for Barring Restraint and/or Forfeiture of Substitute Assets in Connection with a Money Judgment Forfeiture

Money judgment forfeitures are a legal anomaly.  Despite clear precedent demonstrating that forfeitures are drastic remedies to be narrowly construed and limited to the four corners of the statutes authorizing them, it is indisputable that there is no statute authorizing money judgment forfeitures.  Yet the government continues to seek money judgment forfeitures and many courts continue to order them.  The *government*'s reason for doing so is clear – evading the requirement of satisfying a stringent burden of proof.  The logic of the Courts, however, is somewhat fuzzier.  Interestingly, the tide may be starting to turn on the issue of the legitimacy of money judgment forfeitures.

Initially, it should be noted that it is not necessary for this Court to issue a blanket invalidation of money judgment forfeitures as a condition of vacating or modifying the restraining order in this case.  To grant the relief requested, it is sufficient to recognize

12

that money judgment forfeitures are simply that – personal money judgments enforceable in state court under state execution of judgment laws – and are not entitled to the full panoply of federal remedies that inhere in forfeitures of specific property, such as issuance of restraining orders pursuant to 21 U.S.C. § 853(e) and forfeitures of substitute property under subsection (p).

The history of money judgment forfeitures, however, clearly demonstrates that they have outlived their usefulness by nearly two decades. At the very least, it shows that, if money judgment forfeitures are to be recognized at all, they should be narrowly applied, and not expanded in force and effect, as the government seeks to do here.

Prior to 1986, if the property involved in the illegal activity had been changed into some other form, the government could not reach it through criminal forfeiture, because the property had to be traceable to the crime. The judicial remedy of 'money judgment forfeiture' was fashioned to satisfy this need. *See, e.g.*, *United States v. Conner*, 752 F.2d 566 (11th Cir.), *cert. denied*, 474 U.S. 821 (1985); *United States v. Ginsburg*, 773 F.2d 798 (7th Cir. 1985), *cert. denied*, 475 U.S. 1011 (1986).

In 1986, Congress responded by amending both RICO and the CCE to provide for the forfeiture of substitute assets as well as criminal fines, granting the government two powerful new statutory weapons. *See* Pub. L. No. 99-570, 100 Stat. 3207 (1986). If the government could trace specific property to the crime, but that property had been dissipated by the defendant, the government could be made whole through the forfeiture

13

of substitute assets.  If the government could not, or chose not to, trace specific property to the crime, it could still obtain a criminal fine of "twice the value of the property involved in the transaction."  *See* 18 U.S.C. § 1956(a)(1) (CCE fines); *id.* § 1963(a) (RICO fines).  With the enactment of these provisions, money judgment forfeitures became unnecessary as well as unauthorized.  *See, e.g.*, *United States v. Ripinsky*, 20 F.3d 359, 365 n.8 (9th Cir. 1994) (holdings of *Ginsburg* and *Conner* became superfluous after enactment of 1986 amendments).

Nevertheless, money judgment forfeitures, like a phantom limb, kept cropping up in post-1986-amendment decisions, particularly in RICO forfeitures which, although parallel with the CCE in numerous respects, are substantively far broader in scope than forfeitures of traceable or facilitating property pursuant to 18 U.S.C. § 982(a)(1) and 21 U.S.C. § 853(a).  *See United States v. Voigt*, 89 F.3d at 1084.[3]

This historical background highlights the absurdity of the theory behind the government's restraining order and proposed forfeiture order.  Money judgment forfeitures were judicially created to address the same statutory gap that Congress filled with the amendments authorizing substitute property forfeitures and two-fold criminal fines.  In other words, money judgment forfeitures are essentially substitute property forfeitures or criminal fines with a different name.  The government's assertion that a

---

[3]*United States v. Robilotto*, 828 F.2d 940 (2d Cir. 1987), cited by the government to support the issuance of a money judgment herein, is inapplicable for both reasons: (1) it applied the pre-1986 law, before sections 853 and 1963 were amended to permit forfeiture of substitute assets, and (2) it arose under RICO's much broader forfeiture provisions, not section 982.

substitute property forfeiture can flow *from* a money judgment forfeiture is an exercise in redundancy. The government is seeking to forfeit substitute *substitute* property.

The next critical event in the history of money judgment forfeitures occurred in 2000, with the promulgation of Rule 32.2 of the Federal Rules of Criminal Procedure. This was the first time that the phrase "money judgment forfeiture" appeared in anything other than a judicial decision. Although the Advisory Committee certainly freely addressed the issue of money judgment forfeitures, it only did so from a procedural, not a substantive, perspective as, indeed, is appropriate in a procedural rule. *See* 28 U.S.C. § 2072(b) (Supreme Court lacks power to adopt rules that "abridge, enlarge or modify any substantive right"). The Rule parses the differing logistics of dealing with money judgment forfeitures and specific property forfeitures, both with respect to entry of preliminary orders of forfeiture and the conduct of ancillary proceedings.

The Advisory Committee warned, however, that the Rule should not be construed as an endorsement of the propriety of money judgment forfeitures:

> Subdivision (b)(1) recognizes that there are different kinds of forfeiture judgments in criminal cases. One type is a personal judgment for a sum of money; another is a judgment forfeiting a specific asset. The finding the court is required to make will depend on the nature of the forfeiture judgment. *A number of cases have approved use of money judgment forfeitures. The Committee takes no position on the correctness of those rulings.*

Fed. R. Crim. P. 32.2, Advisory Committee note (emphasis added).

This highly unusual comment by a Rules Committee did not go unnoticed.  Last

year, the District Court for the Eastern District of Pennsylvania noted that the

Committee's "less-than-enthusiastic discussion of" money judgment forfeitures

"suggest[ed] that at least some members of the Committee harbored doubts about the

courts' power to impose forfeiture money judgments."  *United States v. Croce*, 334 F.

Supp. 2d 781, 785 n.12 (E.D. Pa.) (Dalzell, J.), *amended on reconsideration on other*

*grounds*, 345 F. Supp. 2d 492 (2004), *reconsideration denied*, 355 F. Supp. 2d 774

(2005).

Beginning its analysis of forfeiture law with Biblical references, through the

Magna Carta, British common law and early American jurisprudence, the court found:

> In sum, deodands, forfeiture of estate and statutory forfeiture did not
> involve the kind of nonspecific and unlimited money judgment that the
> Government seeks here.  Thus, to the extent that these historical practices
> shed light on the meaning of the term 'to forfeit' in 18 U.S.C. § 982 [the
> criminal forfeiture statute], they suggest that Congress did not intend to
> authorize the imposition of nonspecific and unlimited forfeiture money
> judgments when it required district courts to order money launderers to
> 'forfeit' certain property.

*Croce*, 334 F. Supp. 2d at 788.

Finding little guidance from RICO decisions issuing money judgment forfeitures,

and following a lengthy analysis of the Third Circuit's decision in *Voigt*, the *Croce* court

concluded it would have to resolve the issue for itself, and reasoned as follows:

> Forfeiture money judgments of the type that the Government would
> have us enter here are functionally equivalent to fines.  Both fines and
> forfeiture money judgments are payable to the Government, unlimited by

16

the defendant's assets at the time of his conviction, and not directed at specific 'guilty' assets. Thus, if we had the power to enter forfeiture money judgments in addition to the power to fine, we could require a money launderer to pay the Government *three times* the amount of the laundered funds, even though the text of the money laundering statute only authorizes fines up to twice the value of the property involved in the money laundering.

Put another way, the Government's construction of § 982 would permit an end-run around § 1956(a)(1)'s limitation on fines. Congress authorized both forfeitures and fines, and we cannot accept an interpretation of the term 'forfeit' that would obliterate any distinction between them.

The money laundering statute forfeiture statute, 18 U.S.C. § 982, directs us to order the defendants to 'forfeit' certain property. Common-sense notions and dictionary definitions of *forfeit* suggest that one cannot forfeit something that he does not possess. From the time of deodands, forfeiture of estate, and the Navigation Acts until the enactment of RICO, courts had never used their power to order forfeiture to compel defendants to relinquish more than they own. Ever since RICO became law, only a few courts have held explicitly that the power to order forfeiture includes the power to enter nonspecific and unlimited forfeiture money judgments, and their decisions are neither persuasive nor binding on us. Finally, Congress's careful distinction between fines and forfeitures suggests that we should resist any attempt to 'amend the act' and conflate the two penalties.

For all of these reasons, we hold that § 982 does not authorize us to enter forfeiture money judgments.

*Croce*, 334 F. Supp. 2d at 794-95 (citations and footnote omitted).

It is respectfully submitted that the reasoning of *Croce*, although not binding upon this Court, is thorough, correct and entitled to substantial weight. At the very least, the decision demonstrates that there is no basis for restraining or forfeiting substitute property solely on the basis of a money judgment forfeiture. Accordingly, the Order herein should be vacated and Ms. Surgent's shares released forthwith.

17

## POINT II

## EVEN IF THE RESTRAINING ORDER IS NOT VACATED, IT SHOULD BE MODIFIED TO PERMIT THE RELEASE OF MS. SURGENT'S STOCK

If this Court decides not to vacate the government's *ex parte* restraining order, Ms. Surgent respectfully requests that the Order be modified to permit the release of the shares. Despite the government's vague implications to the contrary, it has seized more than enough property to satisfy the $2.3 million judgment it seeks, assuming its 'substitute money judgment forfeiture' theory of recovery is upheld.

However, if the government's theory is *not* upheld, Ms. Surgent's home will be unlikely to be available to satisfy the money judgment forfeiture, as the government will be relegated to its state law execution-of-judgment remedies. In that situation, the government, like any ordinary creditor of Mr. Surgent, will have no right to attach or otherwise execute on real or personal property that is not owned by him. To reach such property, a creditor would have to engage in post-judgment discovery in an attempt to prove that Ms. Surgent was a mere straw owner of the home and the shares or that title thereto was transferred to her for the purpose of defrauding the defendant's creditors. This would be a substantial burden in light of Ms. Surgent's 17 years of sole ownership of the home and her five year-long sole ownership of the shares.

Moreover, despite the government's attempt to cast a cloud over the home with its observation that "[l]egal title is currently held in the name of RH Surgent LLC, Nevada corporation of which the defendant's wife, Regina Surgent, is the managing director" and

18

that "RH Surgent was used for 'asset protection' in case 'the husband gets jammed up,'"

Gov. Mem. at 14, the government omits to mention that when the home was transferred to

RH Surgent LLC in 1999, the *transferor was Regina Surgent*.  Whether the home is

owned by Ms. Surgent in her individual capacity or as the principal of a corporation

should have no impact on the home's forfeitability.

Further, the home, standing alone, is sufficient to secure a forfeiture money

judgment in that amount, even if the $1 million in renovations during the period in issue

is subtracted from its value.[4]  Moreover, these renovations hardly constituted a laundering

event.  Obviously, the defendant's business activities had been thriving for many years

prior to 1999, when no criminal activity is alleged, as the home was purchased in 1988 for

$1.5 million, and additional properties in Florida were purchased at or around that time as

well.  None of these millions of dollars in assets are alleged to have any connection to any

illegal activity.  To the contrary, the government concedes the legitimacy of the funds

used to purchase the home.

Additionally, the government omits that the home had undergone changes prior to

1999 as well.  Thus, the home did not simply languish for a decade and then suddenly

become a piggy bank for fraud proceeds in 1999.  Indeed, as Ms. Surgent would attest,

the Surgents had four children and the home was a bedroom short, an issue that became

---

[4]In the government's forfeiture memorandum, this $1 million has grown exponentially: "as shown at trial, [the defendant] funneled millions of dollars of fraud proceeds into home renovations."   Not surprisingly, no transcript references are provided to support this claim.  Gov. Mem. at 14.

more pronounced as the younger children grew older.  Thus, while the government predictably characterizes the home renovations as needless, the fact is that there was at least one down-to-earth purpose for these 'luxury' renovations: to give each child his or her own room.

Finally, there is no intrinsic basis for restraining the shares.  The government does not challenge Ms. Surgent's legitimate interest in the shares, nor has it shown that the shares constitute proceeds of the defendant's criminal activity.  Thus, regardless of the Court's resolution of the issues raised by the *ex parte* restraining order and the proposed Preliminary Order of Forfeiture, it is entirely appropriate to release the shares to Ms. Surgent forthwith.

## **CONCLUSION**

For all the foregoing reasons, non-party Regina Surgent respectfully requests that this Court grant her motion, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for an Order vacating the *Ex Parte* Restraining Order dated August 25, 2005; in the alternative, Ms. Surgent respectfully requests that the *Ex Parte* Restraining Order be modified to permit the release of Ms. Surgent's 106,000 shares of Safeguard Security Holdings, Inc., with costs, together with such other and further relief as this Court deems just and proper.

Dated:   New York, New York
              December 6, 2005

Respectfully submitted,

LAW OFFICES OF STEVEN L. KESSLER

By:       *Steven L. Kessler*
              Steven L. Kessler (SK-0426)
              *Attorneys for Non-Party Regina Surgent*
              122 East 42 Street, Suite 606
              New York, New York 10168-0699
              (212) 661-1500

Eric M. Wagner
   *On the Memorandum*


TO:   Clerk of the Court

          AUSA Kathleen A. Nandan
          United States Attorney's Office
          Eastern District of New York
          One Pierrepont Plaza, 16th Floor
          Brooklyn, New York 11201

21