SLR:EB:KAN
F.# 2005vo1292


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

JOHN SURGENT,

        Defendant.

- - - - - - - - - - - - - - - -X

Criminal Action No.
CR-04-364 (JG)


**THE UNITED STATES' MEMORANDUM OF LAW
IN OPPOSITION TO NON-PARTY REGINA SURGENT'S
<u>MOTION TO VACATE OR MODIFY THE EX PARTE RESTRAINING ORDER</u>**

_____

    ROSLYNN R. MAUSKOPF
    UNITED STATES ATTORNEY
    Eastern District of New York
    One Pierrepont Plaza, 16th Fl.
    Brooklyn, New York 11201


KATHLEEN A. NANDAN
Assistant U.S. Attorney
    (Of Counsel)

## **TABLE OF CONTENTS**

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts and Procedural History . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      Point I     The Government is Entitled
                to a Forfeiture Money Judgment . . . . . . . . . 4

                A.   Ms. Surgent Lacks Standing to Contest
                    the Entry of a Forfeiture Money
                    Judgment Against the Defendant . . . . . . 4

                B.   The Use of Forfeiture Money Judgments is
                    Well-Established and Clearly Authorized
                    By Statute . . . . . . . . . . . . . . . . 6

                    1.   Applicable Statutes . . . . . . . . 7
                    2.   Applicable Caselaw . . . . . . . . 9

                 C.   Ms. Surgent's Arguments Regarding Burden
                    of Proof and Right to Jury Trial are
                    Without Merit . . . . . . . . . . . . . . 12

      Point II   Forfeiture of the Defendant's Interest in
                Substitute Assets, Including the Safeguard
                Shares And Franklin Lakes Property,
                to Satisfy a Forfeiture Money Judgment
                is Appropriate . . . . . . . . . . . . . . . . 13

                A.   The Forfeiture of Substitute Assets to
                    Satisfy Money Judgments in Permissible . . 13

                B.   Ms. Surgent is Entitled to a Hearing on
                    Any Claim That She May Assert to a
                    Substitute Asset . . . . . . . . . . . . 16

                 C.   The Defendant Has an Ownership in
                    the Substitute Assets . . . . . . . . . 17

                      1.   The Safeguard Shares . . . . . . . 18
                      2.   320 Algonquin Road . . . . . . . . 19

      Point III  This Court Has the Authority to Restrain
                Substitute Assets Post-Conviction . . . . . . . 22

Point IV    Ms. Surgent's Arguments Regarding
            Money Judgments Would Be Mooted by
            the Entry of a Third Proposed
            Preliminary Order of Forfeiture . . . . . . . . 24

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## PRELIMINARY STATEMENT

On July 26, 2005, the defendant, John Surgent, was convicted of conspiracy to commit securities fraud, securities fraud, and conspiracy to commit money laundering. Each charge stemmed from his scheme to manipulate the stock price of Orex Gold Mines Corporation ("Orex"), a scheme that cost innocent investors over $40 million. The government has asked the Court to enter a Preliminary Order of Forfeiture forfeiting over $2.3 million, the amount that the defendant actually laundered as charged in Count Three of the Superseding Indictment (the "Indictment"). However, because the government is unable to collect a money judgment from the defendant – because of his pending bankruptcy, his use of nominees to hide his wealth, and his recent liquidation of substantial assets – the government has also asked the Court to order the forfeiture of substitute assets[1] up to the value of the requested forfeiture money judgment. In an effort to preserve the availability of the substitute assets to satisfy the anticipated forfeiture order (and the anticipated restitution order), the Court has entered two restraining orders preventing the defendant, his wife, and other nominees from dissipating certain assets.

The defendant's wife, Regina Surgent ("Ms. Surgent"), now moves to vacate the restraining orders or, alternatively, to modify them to the extent that they prohibit her from selling certain shares of Safeguard Security Holding, Inc. ("Safeguard") currently titled in her name. In her motion papers, Ms. Surgent challenges: (1) the use of money judgments in criminal forfeiture cases; (2) the government's

_____

[1] The term "substitute assets" refers to assets in which the defendant has an ownership interest but that are not tainted by the offense of conviction.

ability to execute forfeiture money judgments on substitute assets; and (3) the Court's authority to restrain substitute assets post-conviction. See Memorandum of Law of Non-Party Regina Surgent in Support of Motion to Vacate or Modify Ex Parte Restraining Order ("Surgent Memo"). Ms. Surgent lacks standing to assert the first two claims, and all of her claims are without merit. As exemplified by Point IV herein, Ms. Surgent's position hinges on semantics, and by merely changing a few words of the proposed orders, her arguments are mooted without altering the orders' effect. Ms. Surgent's motion should be denied.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

As set forth in the government's Memorandum of Law in Support of Findings of Fact on the Criminal Forfeiture Allegation and a Preliminary Order of Forfeiture Under Fed. R. Crim. P. 32.2, dated August 26, 2005, the defendant participated in a massive conspiracy to manipulate the price of Orex stock. The Indictment charged him with conspiracy to commit securities fraud, securities fraud, and conspiracy to commit money laundering, and it advised the defendant of the government's intention to seek forfeiture of all property involved in the money laundering offense. A jury convicted the defendant on all counts, and he then waived his right to a jury trial on the forfeiture allegation. Tr. 1208.[2] Thereafter, on August 26, 2005, the government submitted a proposed Preliminary Order of Forfeiture to the

---

[2] "Tr." refers to the transcript of the criminal trial. "GX" refers to government exhibits admitted during the trial.

Court forfeiting $2,354,800.00.[3]  This figure represents the amount of fraud proceeds that the defendant wired from his personal account at Bank Atlantic to his co-conspirators' accounts overseas.  Tr. at 166, 204, 429-30, 432-33, 985, 1012, 1019-20; GX 50D, 50E, 131.  It is, in short, the actual amount that he laundered.

The defendant is currently in bankruptcy in the District of New Jersey and, as such, has represented that he does not have assets sufficient to satisfy his current debts.[4]  See Affidavit of John S. Ellis, dated August 25, 2005, Submitted in Support of Ex Parte Application for Post-Indictment Post-Conviction Restraining Order ("Ellis Decl.") at ¶ 6 and Exhibits B, C, and D.  Moreover, there is no dispute that the property "involved in" the money laundering offense was transferred to third parties overseas.  As such, the government has asked the Court to find that the prerequisites of 21 U.S.C. § 853(p) have been met and to order the forfeiture of certain substitute assets identified by the government.[5]

---

[3]     As set forth below, the proposed Preliminary Orders of Forfeiture submitted by the government on August 26 and October 13, 2005 both included provisions forfeiting substitute assets.

[4]     The defendant has also advised the Probation Department that he has no assets.

[5]     The substitute assets identified to date include all of the defendant's right title and interest in:  (1) 320 Algonquin Road, Franklin Lakes, New Jersey 07417; (2) shares of common stock, and warrants for the issuance of common stock, in Safeguard Security Holdings, Inc. ("Safeguard") or any of its predecessor or composite entities, including, but not limited to, IQUE Intellectual Properties; (3) all funds, securities, or other monetary instruments on deposit or credited to or through Garden State Securities, Incl, held in the name of Merrill Funding LLC, account Number 12W6-590903400; (4) all funds, securities, or other monetary instruments on deposit or credited to or through Rush Trade Securities, held in the name of Merrill Funding LLC, account number 41016692; and (5) all funds, securities, or other

As set forth in the Ellis Decl., in the Affidavit of John S. Ellis Submitted in Support of Second Ex Parte Application for Post-Indictment Post-Conviction Restraining Order ("2d Ellis Decl."), and in this memorandum, the government asserts that the defendant has an ownership interest in each of the identified substitute assets and asks that those interests be forfeited.  In order to preserve the availability of those assets to satisfy the anticipated forfeiture money judgment and mandatory restitution, the Court entered two Restraining Orders, one on August 25, 2005 and another on October 13, 2005.

**ARGUMENT**

**POINT I**

**THE GOVERNMENT IS ENTITLED TO A FORFEITURE MONEY JUDGMENT.**

Ms. Surgent challenges the Court's authority to enter a forfeiture money judgment against her husband.  She does not have standing to raise such a challenge which, in any event, is utterly without merit.

**A.    Ms. Surgent Lacks Standing to Contest the Entry of a Forfeiture Money Judgment Against the Defendant.**

While, after entry of a Preliminary Order, Ms. Surgent would have standing to challenge the forfeiture of substitute assets held in her name, and while she has standing to challenge the restraining orders (to the extent they authorize restraint of assets held in her name), she does not have standing to challenge the entry of an in

---

monetary instruments on deposit or credited to or through Fleet Bank, held in the name of Merrill Funding LLC, account number 9419964117.

personam forfeiture money judgment against the defendant.

As the Second Circuit has explained, the issue central to Article III standing is whether the party has alleged a "'distinct and palpable injury to himself,' . . . that is the direct result of the 'putatively illegal conduct of the [adverse party],' . . . and 'likely to be redressed by the requested relief.'" United States v. Cambio Exacto, 166 F.3d 522, 527 (2d Cir. 1999) (citations omitted). Ms. Surgent, however, cannot demonstrate any injury to herself arising from the form of the forfeiture order entered against her husband. Any injury that she may suffer arises not from the entry of a forfeiture money judgment, but rather from the government's efforts to satisfy that judgment. United States v. Weidner, No. 02-40140, 2004 WL 432251 (D. Kan. Mar. 4 2004) (rejecting third party's objections to entry of forfeiture order); United States v. Farley, 919 F. Supp. 276 (S.D. Ohio 1996) (third party cannot move to dismiss order of forfeiture and must adjudicate claims in ancillary proceeding); United States v. BCCI Holdings, 795 F. Supp. 477, 479 (D.D.C. 1992) (third party lacks standing to object to entry of forfeiture order). See also 21 U.S.C. § 853(k). Indeed, this is the reason why Rule 32.2 does not require the United States to publish notice when a money judgment is entered and why 21 U.S.C. § 853 bars third party intervention in forfeiture proceedings before the entry of a Preliminary Order of Forfeiture.

**B.    The Use of Forfeiture Money Judgments is**
**       Well-Established and Clearly Authorized by Statute.**

Although Ms. Surgent lacks standing to contest the entry of a forfeiture money judgment, the government nevertheless will address her argument on the merits.  Before turning to the merits, however, the government notes that the term "forfeiture money judgment" is simply shorthand for the defendant's continuing obligation to forfeit property involved in the money laundering conspiracy of which he was convicted.  The forfeiture of property involved in violations of 18 U.S.C. § 1956 is mandatory, and a defendant is not excused from his obligations simply because he spent the money, hid the money, or as in this case, forwarded it to his co-conspirators.  See 18 U.S.C. § 982(a)(1) ("[t]he court . . . shall order that the [defendant] forfeit . . . any property . . . involved in [a violation of 18 U.S.C. § 1956]") (emphasis added).  See also United States v. Monsanto, 491 U.S. 600, 607 (1989) ("Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied. . . .").  If a defendant no longer has the property traceable to the offense, or if the government cannot locate the directly traceable property, that defendant's forfeiture obligation takes the form of a forfeiture money judgment.  See e.g., United States v. Hill, 46 Fed. Appx. 838, 839 (6th Cir. 2002) (court granted money judgment because properties involved in money laundering offense were transferred or sold).  Indeed, as set forth below, neither Ms. Surgent, nor any authority she cites, explains how, in a situation where directly traceable assets cannot be located or identified, the Court's order should reflect the defendant's forfeiture obligations.

Nor does Ms. Surgent explain how a defendant's obligation to forfeit substitute assets up to the value of the traceable assets is to be memorialized. Indeed, the only way to quantify that value is in the form of a money judgment.

Nor does Ms. Surgent (or the scant authority upon which she relies) reconcile her argument with traditional canons of statutory interpretation. "[I]n expounding a statute, [the Court] must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law. . . ." <u>United States v. Arnold</u>, 126 F.3d 92, 88-89 (2d Cir. 1997) (Gleeson, J.). Here, an examination of the whole law clearly establishes the government's right to forfeiture money judgments (and, as set forth in Point II, to execute those judgments upon substitute assets). That right has also been reflected in a body of caselaw that overwhelmingly supports the government's position.

**1. Applicable Statutes.**

The procedures governing criminal forfeiture are set forth in Federal Rule of Criminal Procedure 32.2 and in 21 U.S.C. § 853 (as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(e)). Rule 32.2(b)(1) provides:

> As soon as practicable after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. . . . **If the government seeks a personal money judgment, the court must determine the amount**

**of money that the defendant will be ordered to
pay. ...**

Fed. R. Crim. P. 32.2(b)(1) (emphasis added). Not only does the
statute authorize the award of a forfeiture money judgment, but
it <u>requires</u> the court to determine the amount of such a judgment
should the government choose to seek one.

Rule 32.2 also must be examined in context, specifically in
conjunction with statutes, such as 18 U.S.C. § 982, that authorize
criminal forfeiture. Notably, Ms. Surgent makes no such effort. For
example, section 982(a)(1) authorizes the forfeiture of property
"involved in" a money laundering offense. This Court cannot, as it
must, enter a forfeiture order to reflect the required forfeiture of
property involved in the offense but not retained by the defendant
except in the form of a money judgment. Moreover, provided that
certain circumstances are met, mere intermediaries who did not retain
the directly forfeitable property are also liable to forfeit
substitute assets. 18 U.S.C. § 982(b)(2). Under Rule 32.2, the Court
must determine the value of the directly forfeitable property, thereby
capping the forfeiture of substitute assets. Thus, whether called a
"forfeiture money judgment," the value of the directly forfeitable
property, or the cap on substitute assets, the effect is the same.
The statutory framework clearly and unambiguously authorizes
forfeiture money judgments. Ms. Surgent's contrary position seeks
merely to elevate form over function.

Nevertheless, in an effort to evade the plain meaning
of the statute and the framework developed by Congress, Ms.

Surgent points to the Advisory Committee's notes to Rule 32.2 and urges the Court to rely upon a statement purporting not to endorse any position at all. The Advisory Committee's minutes from its January 1999 meeting indicate that only one member of the Committee voiced any objection to the use of money judgment forfeitures. 1999 WL 1702845 at *10. In response, the Committee Chairman noted that "at least four of the circuits had authorized the practice" and that the Committee was "only attempting to provide appropriate procedures to follow in those circuits where money judgments are authorized. . . ." <u>Id.</u> The Committee than agreed to insert the language quoted in the Surgent Memo at 11: "The committee takes no position on the correctness of these rulings [regarding forfeiture money judgments]." <u>Id.</u> at *11. Thereafter, the Committee approved Rule 32.2 without objection. <u>Id.</u> It would be ironic indeed if the Committee's statement, a statement meant to convey no position, were construed as conveying precisely the opposite.

    **2.**    **Applicable Caselaw.**

      The Surgent Memo, after discussing the Advisory Committee's noncommital note, turns to an extensive discussion of <u>United States v. Croce</u>, 334 F. Supp. 2d 781 (E.D. Pa 2004).[6] However, Ms. Surgent conveniently neglects to mention that the overwhelming majority of

---

     [6]    Upon the government's motions for reconsideration, the <u>Croce</u> court issued two additional decisions: 345 F. Supp. 2d 492 (2004) and 355 F. Supp. 2d 774 (2005). <u>Croce</u> is currently pending on appeal in the Third Circuit. <u>United States v. Croce</u>, No. 05-1517 (3d Cir.).

courts, including the Second Circuit, have approved the use of forfeiture money judgments.  United States v. Bermudez, 413 F.3d 304, 307 (2d Cir. 2005) (per curiam) (court orders defendant to pay forfeiture money judgment in money laundering case); United States v. Fruchter, 411 F.3d 377, 383-84 (2d Cir. 2005) (court upholds entry of forfeiture money judgment in RICO case); United States v. Huber, 404 F.3d 1047, 1056 (8th Cir. 2005) (forfeiture money judgment in money laundering case); United States v. Tedder, 403 F.3d 836, 840-41 (7th Cir. 2005) (forfeiture of traceable property and forfeiture money judgment); United States v. Iacaboni, 363 F.3d 1, 6 (1st Cir. 2004) (money judgment equal to amount involved in money laundering transactions); United States v. Vondette, 352 F.3d 772, 773-74 (2d Cir. 2003) (forfeiture of specific assets in partial satisfaction of money judgment) vacated and remanded on other grounds, 125 S.Ct. 1010 (2005); United States v. Puche, 350 F.3d 1137, 1153-54 (11th Cir. 2003) (forfeiture money judgment in money laundering case); United States v. Chavez, 323 F.3d 1216, 1218 (9th Cir. 2003) (noting without discussion that substitute assets were forfeited to satisfy money judgment); United States v. Watkins, 320 F.3d 1279, 1281 (11th Cir. 2003) (observing that seized cash was forfeited in satisfaction of money judgment); United States v. Moyer, 313 F.3d 1082, 1083 (8th Cir. 2002) (forfeiture money judgment in amount equal to amount embezzled); United States v. Edwards, 303 F.3d 606, 643-44 (5th Cir. 2002) (money judgment for proceeds of racketeering activity); United States v. Baker, 227 F.3d 955, 969-70 (7th Cir. 2000) (forfeiture money judgment); United States v. Corrado, 227 F.3d 543, 558 (6th Cir. 2000)

(remanding for entry of money judgment); <u>United States v. Candelaria-Silva</u>, 166 F.3d 19, 43 (1st Cir. 1999) (forfeiture money judgment); <u>United States v. Voigt</u>, 89 F.3d 1050, 1084 (3d Cir. 1996) (same); <u>United States v. Sokolow</u>, 81 F.3d 397, 415 (3d Cir. 1996); <u>United States v. Schlesinger</u>, 396 F. Supp. 2d 267, 273 (E.D.N.Y. 2005) (Spatt, J.) (forfeiture money judgment in amount equal to amount laundered); <u>United States v. Numisgroup International Corp.</u>, 169 F. Supp. 2d 133, 136 (E.D.N.Y. 2001) (Spatt, J.).[7]  Ms. Surgent's failure to mention even the existence of recent contrary caselaw, particularly caselaw in this circuit, is telling.  Further, efforts to distinguish many of the cases on the grounds that they pre-date Rule 32.2 is nonsensical as Rule 32.2 was intended, in part, to codify existing practice.  <u>See</u> <u>supra</u> at p. 8-9.

While blithely ignoring the avalanche of decisions ruling against her, Ms. Surgent continues to rely upon <u>Croce</u> which, notably, stands alone.  <u>Croce</u> purports to exhaustively analyze the history and propriety of forfeiture money judgments, but its logic is fundamentally flawed.  The <u>Croce</u> court acknowledges that, in a money laundering case, the government is entitled to forfeiture of money up to the value of the laundered funds and that, if the government cannot

_____

[7]     <u>See</u> <u>also</u>, <u>United States v. Weiss</u>, No. 698CR99ORL19KRS, 2005 WL 1126663 (M.D. Fla. May 6 2005); <u>United States v. Faulk</u>, 340 F. Supp. 2d 1312, 1313 (M.D. Ala. 2004); <u>United States v. Commercial Carrier, Inc.</u>, 232 F. Supp. 2d 201, 204 (S.D.N.Y. 2002); <u>United States v. Harrison</u>, No. 99 CR 934-1, 2001 WL 803695 (N.D. Ill. June 28 2001); <u>United States v. Stewart</u>, No. Crim.A. 96-583, 1998 WL 720063, *1 (E.D. Pa. Oct. 6 1998), <u>aff'd</u> 185 F.3d 112, 129 (3d Cir. 1999); <u>United States v. Cleveland</u>, No. CRIM.A. 96-207, 1997 WL 537707, *11 (E.D. La. Aug 26 1997); <u>United States v. Saccoccia</u>, 823 F.Supp. 994, 1006 (D.R.I. 1993), <u>aff'd</u> 58 F.3d 754 (1st Cir. 1995).

trace the laundered funds to specific property, it may forfeit substitute assets.  Id. at 793.  The court does not explain, however, how any forfeiture order permitting the government to forfeit the value of the laundered funds or substitute assets up to that amount is to be entered if not in the form of a money judgment or its functional equivalent.  Croce is simply not persuasive authority, nor is it the law in this Circuit.

**C.    Ms. Surgent's Arguments Regarding Burden
       of Proof and Right to Jury Trial are Without Merit.**

         In an apparent effort to bolster her argument, Ms. Surgent contends, without any citation to supporting caselaw, that the government bears a lower burden of proof with respect to forfeiture money judgments.  Surgent Memo at 9-10.  However, unless otherwise specified (i.e., 18 U.S.C. § 2253(e)), the applicable burden of proof, whether directed at specific property or at a money judgment, is "preponderance of the evidence."  Fruchter, 411 F.3d at 380; Schlesinger, 396 F. Supp. 2d at 271; United States v. Dolney, Cr. Nr. 04-159, 2005 WL 1076269, *10  (E.D.N.Y. May 3, 2005) (Garaufis, J.). That Rule 32.2 may use different language when discussing forfeiture of specific property and forfeiture money judgments simply reflects the different considerations inherent in evaluating each type of claim.  The burden of proof remains the same, and Ms. Surgent's implicit position that it is somehow easier to value assets (such as annuities, leaseholds, or artwork) that may be involved in a money laundering crime than to trace tainted funds to those assets is puzzling.

         Ms. Surgent then posits that, by seeking a forfeiture money

judgment, the government deprives a defendant of a jury trial.
Surgent Memo at 10.  She does not have standing to assert this claim.
Nevertheless, as the defendant in this case waived his right to a jury
trial with respect to the forfeiture, Ms. Surgent's argument is moot.[8]
Tr. 1208.

**POINT II**

**FORFEITURE OF THE DEFENDANT'S INTEREST IN
SUBSTITUTE ASSETS, INCLUDING THE SAFEGUARD SHARES
AND FRANKLIN LAKES PROPERTY, TO SATISFY A
FORFEITURE MONEY JUDGMENT IS APPROPRIATE.**

**A.    The Forfeiture of Substitute Assets
to Satisfy Money Judgments is Permissible.**

Ms. Surgent next argues that the government cannot execute
its forfeiture money judgment upon substitute assets and that it is
limited to state law for collection of any money judgment.  Surgent
Memo at 13.  Predictably, she cites no authority for this proposition,
and she again ignores relevant caselaw and statutory provisions.

For example, Ms. Surgent's reading of 21 U.S.C. § 853 would
frustrate the purpose of 18 U.S.C. § 982.  See Surgent Memo at 7-8.
Ms. Surgent contends that the substitute assets provision of 21 U.S.C.
§ 853(p) applies only to those assets enumerated in section 853(a),
namely the proceeds of drug crimes and facilitating property.  The
import of her argument is that, despite the very clear language of
section 982(b)(1), which specifically incorporates the procedures of

---

[8]    Despite Ms. Surgent's argument, juries in this district have
been asked to return, and have returned, forfeiture money judgments.
See e.g., United States v. Brown, Cr. Nr. 04-159 (Garaufis, J.);
United States v. Konstantin, Cr. Nr. 04-634 (Dearie, J.); United
States v. Massino, Cr. Nr. 02-307 (Garaufis, J.).

section 853, there can be no forfeiture of substitute assets in money laundering cases. This position was expressly rejected in <u>United States v. Bennett</u>, No. 97 Cr. 629, 2000 WL 1505986 (S.D.N.Y. Oct. 6 2000). Further, extending Ms. Surgent's argument to its logical conclusion, there could be no forfeiture of substitute assets in any non-drug case, no matter that most forfeiture statutes incorporate section 853. This interpretation clearly contradicts the drafters' intention and therefore must be rejected. <u>United States v. Ron Pair Enterprises, Inc.</u>, 489 U.S. 235, 242 (1989) (plain meaning rule should not be relied upon when "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters") (citations omitted). <u>See also</u> STEPHEN BREYER, ACTIVE LIBERTY 98 (2005) (discussing the "danger that lurks where judges rely too heavily upon just text and textual aids when interpreting a statute. . . . [C]ourts [would] do better to focus foremost upon statutory purpose. . . .").

Ms. Surgent also ignores 18 U.S.C. § 982(b)(2),[9] which expressly authorizes the forfeiture of substitute assets in certain money laundering cases. As discussed <u>supra</u>, section 982(b)(2) addresses intermediaries who no longer possess the laundered property.

---

[9]     Section 982(b)(2) states: "The substitution of assets provisions of subsection [853(p)] shall not be used to order a defendant to forfeit assets in place of the actual property laundered where such defendant acted merely as an intermediary who handles but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000 or more in any twelve month period."

If a money judgment is entered in such a case, common sense and a plain reading of section 982(b)(2) make clear that Congress envisioned the execution of a forfeiture money judgment against substitute assets.

Ms. Surgent also ignores the overwhelming body of caselaw – including recent Second Circuit decisions – authorizing the government to execute forfeiture money judgments against substitute assets. See Bermudez, 413 F.3d at 307 (permitting the government in a money laundering case to seek forfeiture of substitute assets up to the amount of funds laundered); Vondette, 352 F.3d at 774 (upholding forfeiture of IRAs as substitute assets in partial satisfaction of money judgment); United States v. Carroll, 346 F.3d 744, 749 (7th Cir. 2003)(defendant may be ordered to forfeit "every last penny" he owns as a substitute asset to satisfy a money judgment); United States v. Hill, 46 Fed. Appx. 838, 839 (6th Cir. 2002) (stock could be forfeited as substitute asset to satisfy money judgment); Candelaria-Silva, 166 F.3d at 42-43 (government may forfeit real property in partial satisfaction of forfeiture money judgment); Faulk, 340 F. Supp. 2d at 1313-14 (government may satisfy money judgment with substitute assets); Chavez, 323 F.3d at 1218 (noting without discussion that substitute assets were forfeited to satisfy money judgment); Watkins, 320 F.3d at 1281 (observing that seized cash was forfeited in satisfaction of money judgment).[10] United States v. Paccione, 948 F.2d

[10] See also, Weiss, 2005 WL 1126663 (substitute assets used to satisfy money judgment); United States v. Melchior, No. S5 02 CR 1087, 2004 WL 541845, *2 (S.D.N.Y. Mar. 19 2004) (bond forfeited to satisfy money judgment); Numisgroup, 169 F. Supp. 2d at 136-37 (substitute assets may be forfeited to satisfy money judgment); United States v.

851 (2d Cir. 1991), does not hold otherwise.  Instead, <u>Paccione</u> involves the interpretation of a plea agreement that simply did not permit the execution of the forfeiture order against substitute assets.  The decision says nothing about the government's ability to forfeit substitute assets in other contexts.

In short, the government may collect a forfeiture money judgment either by executing it upon substitute assets (assuming that it can meet the requirements of section 853(p)) or, if it chooses, pursuant to Federal Debt Collection Procedure Act.  <u>United States v. Bertolo</u>, 55 Fed. Appx. 406, 410 (9th Cir. 2002).  It is not required to choose one remedy over another.

**B.   Ms. Surgent is Entitled to a Hearing on Any Claim That She May Assert to a Substitute Asset.**

Arguing that her application to vacate the restraining order is both appropriate and timely, Ms. Surgent boldly asserts that she has no "right to challenge the forfeiture of her assets in an ancillary proceeding."  Surgent Memo at 6.  Ms. Surgent is simply incorrect, and her reading of Rule 32.2(c)(1) is belied by even a cursory reading of the statute.  Moreover, her interpretation, which permits the government to seize property without due process, would present serious constitutional questions and therefore must be rejected.  <u>Zadvydas v. Davis</u>, 533 U.S. 678, 689 (2001) (construing a statute so as to avoid "a serious doubt" as to its constitutionality

---

<u>Davis</u>, No. 00 Civ. 8296, 2001 WL 47003 (S.D.N.Y. Jan 17 2001) (no need to return property seized at arrest if it can be forfeited as substitute asset to satisfy money judgment); <u>United States v. Messino</u>, 917 F. Supp. 1307, 1308 (N.D. Ill. 1996) (motorcycle forfeited as substitute asset in partial satisfaction of money judgment).

"is a cardinal principle of statutory interpretation").

Although the entry of a money judgment does not trigger an ancillary proceeding, the forfeiture of substitute assets does. Third party claims to the substitute assets subject to forfeiture are adjudicated as set forth in 21 U.S.C. § 853(n) and Rule 32.2. Specifically, once the Court determines that substitute property qualifies for forfeiture, it must enter an order forfeiting the property. Fed. R. Crim. P. 32.2(e)(1). Upon entry of such an order, the Government must publish notice of the intended forfeiture. 21 U.S.C. § 853(n)(1). Third parties claiming an interest in the property to be forfeited may file a petition, and, upon the filing of a petition, the Court must adjudicate any third party's alleged interest in the property. Rule 32.2(c) and (e)(2)(B) and 21 U.S.C. § 853(n). See also Weidner, 2004 WL 432251; United States v. Bennett, 97 CR 639, 2003 WL 22208286 (S.D.N.Y. Sept. 24, 2003); United States v. Strube, 58 F. Supp. 2d 576 (M.D. Pa. 1999). Accordingly, any claim that Ms. Surgent has to any of the substitute assets can and will be adjudicated in the context of an ancillary proceeding.

C.   **The Defendant Has an Ownership
     Interest in the Substitute Assets.**

As the Court has not yet signed the Preliminary Order of Forfeiture, the issue before the Court is whether the defendant has an ownership interest in the substitute assets. Although Ms. Surgent's claims will be resolved in an ancillary proceeding, she spends some time disputing the fact that her husband has any interest in certain of the Safeguard shares or in the marital home. The government will respond briefly to these points.

As an initial matter, the government repeats that it does not seek forfeiture of the real property or the Safeguard shares as property "involved in" the defendant's money laundering offense. Instead, the government seeks to forfeit the defendant's interest in the real property, the Safeguard shares, and the brokerage and bank accounts as substitute assets.

**1.     The Safeguard Shares.**

Ms. Surgent asserts, notably without citation, that she has owned the Safeguard shares for five years.  Surgent Memo at 18. However, officials of Safeguard have advised that Safeguard issued shares to Ms. Surgent in late 2004.  Ellis Decl. at ¶ 14.  The shares, which constituted payment for the defendant's consulting services, were issued to Ms. Surgent at the defendant's request.  Id.  The defendant's transfer of the shares to his wife is a possible fraudulent conveyance and would negate any claim Ms. Surgent may have to a legitimate ownership interest in the shares.  If Ms. Surgent files a claim to the shares in an ancillary proceeding, the Court will resolve these disputed issues at that time.

Finally, although Ms. Surgent argues that release of the shares is justified because the government's lis pendens on the Franklin Lakes property is sufficient to secure any potential forfeiture money judgment, Surgent Memo at 2, that contention is squarely contradicted by the fact of other, competing interests in the property.  The existing mortgage and line of credit and the lis pendens placed on the property by the trustee in the defendant's pending bankruptcy action all threaten the government's ability to

forfeit the property.  Ellis Decl. at ¶ 8.  It therefore cannot serve
as security for the shares.

> **2.    320 Algonquin Road.**

Although the government seeks forfeiture of the defendant's
interest in 320 Algonquin Road, Franklin Lakes, New Jersey, it has not
included the property in the restraining order.  Instead, upon return
of the Indictment in which the real property was identified as a
substitute asset, the government placed a <u>lis</u> <u>pendens</u> on the
property.[11]

Ms. Surgent argues that, because the home was transferred to
RH Surgent LLC by Ms. Surgent (who had "17 years of sole ownership")
in 1999, the government bears a "substantial burden" in establishing
that Ms. Surgent is a mere "straw owner" of the home.  Surgent Memo at
18-19.  No matter the government's burden, Ms. Surgent overstates her
case.  According to the evidence adduced at trial, 320 Algonquin Road
was transferred to Ms. Surgent on December 29, 1988 for $1,350,000.
GX-64.  No corresponding mortgage was recorded.  On July 3, 1995, Ms.
Surgent transferred the property to the defendant.  <u>Id.</u>  Less than two
weeks later, the defendant transferred the property back to his wife,
although the transfer was not recorded until July 1, 1996.  <u>Id.</u>  Then,
on September 7, 1999, Ms. Surgent transferred title to RH Surgent LLC.
<u>Id.</u>  The defendant prepared the deed transferring title to the LLC.
<u>Id.</u>

---

[11]    The filing of a <u>lis</u> <u>pendens</u> does not constitute a
"restraint" within the meaning of 21 U.S.C. § 853(e).  <u>See</u>, <u>e.g.</u>
<u>United States v. Miller</u>, 26 F. Supp. 2d 415, 432 n.15 (N.D.N.Y. 1998),
<u>aff'd</u>, 2001 WL 300536 (2d Cir. Mar. 23, 2001)(unpublished opinion).

In January, 2000, RH Surgent LLC obtained a mortgage, and the defendant signed the mortgage on behalf of RH Surgent LLC as its manager. GX-64. Later that year, he also signed an amendment and a modification to the mortgage as the LLC's manager. Id. On November 15, 2000, RH Surgent LLC, the defendant, and Ms. Surgent obtained a home equity line of credit. Again, the defendant signed the paperwork as RH Surgent LLC's manager. Id.

Both the defendant's and Ms. Surgent's testimony in prior proceedings establishes that the motivation behind the transfer to the LLC was to hide the defendant's assets, for "asset protection" in case "the husband gets jammed up." Ellis Decl. at ¶ 10, Exhibit E at 83-84. Indeed, this is corroborated by the trial testimony of Evelyn Rivas-Cruz. Tr. 649-50, 663-64. Although Ms. Surgent attempts to distance her husband from RH Surgent LLC, the defendant's preparation of the deed, his role in obtaining the mortgage and line of credit, and the prior deposition testimony all undermine her position. The defendant clearly played a role in managing RH Surgent LLC, and he clearly has an ownership interest in the property.

Further, fraud proceeds to which Ms. Surgent can claim no legitimate interest, were funneled into the Franklin Lakes property. As set forth at trial, the defendant generated over $5.5 million in proceeds from the sale of Orex stock. Tr. at 989-91, 994, 996-1000; GX 52B, 52D, 58B, 58D, 122-25. Over $2.3 million of those proceeds were wired by the defendant to his co-conspirators.[12] Tr. at 166, 204,

_____

[12] These wires form the basis for the money laundering conspiracy and are the evidentiary support for the government's request for the forfeiture money judgment.

429-30, 432-33, 985, 1012, 1019-20; GX 50D, 50E, 131.  Although Ms. Surgent claims that the family spent only $1 million in renovations during the relevant period,[13] Surgent Memo at 19, the evidence at trial demonstrated that the Surgents spent over $4 million on home renovations and interior design between 1998 and 2001.[14]  GX-63. Conservatively limiting the disbursements identified on GX-63 to disbursements from John Surgent's Bank Atlantic Account No. 0053877179 during the period March 15, 1999 to November 14, 1999, the government can trace over $1.3 million of fraud proceeds into renovations at 320 Algonquin Road.  See GX-50.  It is clear that Ms. Surgent has no legitimate ownership interest in the house to the extent its value is attributable to her husband's illegal activity.  See e.g. United States v. Salinas, 65 F.3d 551, 554 (6th Cir. 1995) (one never acquires a property right in illegal proceeds).  The government invites Ms. Surgent to establish the extent of her ownership interest, if any, in an ancillary proceeding.

---

[13]     Ms. Surgent's argument that the renovations were necessary because the family was one bedroom short is completely irrelevant to the issue before the Court, namely forfeiture of her husband's interest in the property.  Surgent Memo at 19-20.  Whether it was reasonable to install an in-home movie theater and a mahogany paneled library or to spend over $27,000 on handmade tiles and rusticated stone flooring for three children's bathrooms, in excess of $34,000 for light fixtures (with 22 karat gold leaf) in the entry and great room, $110,000 on kitchen cabinetry, or hundreds of thousands dollars on furniture (such as an antique style writing table with ebonized accents and inlaid tooled leather) is likewise irrelevant.  GX-67, GX-67C, GX-67E, GX-67G, GX-91, GX-96.  The relevant question is how these renovations and purchases were funded.

[14]     It therefore appears that the $3 million drive-by appraisal referenced in the Ellis Decl. at ¶ 8 significantly undervalues the property.

## POINT III

### THIS COURT HAS THE AUTHORITY TO RESTRAIN SUBSTITUTE ASSETS POST-CONVICTION.

The government sought the two restraining orders in this case pursuant to 21 U.S.C. § 853(e). Although there are no decisions specifically addressing post-conviction restraint under section 853(e), particularly in light of recent Second Circuit caselaw, this Court has the authority to restrain the substitute assets. As set forth above, section 982 expressly incorporates the provisions of section 853, including the restraining order provisions of section 853(e). Because the defendant was convicted of money laundering, neither United States v. Gotti, 155 F.3d 144 (2d Cir. 1998), nor United States v. Razmilovic, 419 F.3d 134 (2d Cir. 2005), both of which address pre-trial restraint, apply. Entry of the restraining orders was therefore proper.

Moreover, after a forfeiture order listing substitute assets is entered, there is no dispute that the Court has authority under 21 U.S.C. § 853(g) to restrain the assets subject to the order. See e.g., United States v. McCorkle, 321 F.3d 1292 (11th Cir. 2003). Indeed, if the Court enters the proposed Preliminary Order submitted by the government on October 13, 2005, Ms. Surgent's section 853(e) argument becomes moot. Additionally, entry of the order would trigger the third-party provisions of Rule 32.2 and section 853(n), permitting Ms. Surgent to challenge the forfeiture of any asset, including substitute assets, in which she may claim an ownership interest. Accordingly, the government respectfully requests that the Court enter the proposed Preliminary Order of Forfeiture.

Alternatively, the Court has authority to restrain the substitute assets pursuant to the All Writs Act, 28 U.S.C. § 1651. The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Entry of both a forfeiture and a restitution order is mandatory, and given the defendant's pending bankruptcy as well as his liquidation of assets over the course of the summer and after entry of the first restraining order, there is ample reason to believe that the defendant may default on his expected obligation to pay restitution and forfeiture. See Ellis Decl. at ¶¶ 6, 17, 20; 2d Ellis Decl. at ¶ 7. This Court therefore has authority to restrain the defendant's assets post-conviction. Indeed,

> if a trial court does not have authority to order a defendant, post-conviction but prior to sentencing, not to dispose of his assets, then the court is without any meaningful ability to impose a proper sentence under the guidelines and to fulfill the intent and mandate of Congress . . . .

United States v. Gates, 777 F. Supp. 1294, 1296 n.1 (E.D. Va. 1991).

The federal courts' authority under the All Writs Act also includes the power to enjoin non-parties. United States v. New York Telephone Company, 434 U.S. 159, 174 (1977) (authority under All Writs Act extends to non-parties who "are in a position to frustrate the implementation of a court order or the proper administration of justice"); In re Baldwin-United Corp., 770 F.2d 328, 338 (2d Cir. 1985). As such, this Court has authority not only to restrain the defendant, but also Ms. Surgent, from dissipating assets subject to

forfeiture.  See Numisgroup, 169 F. Supp. 2d at 137-38.  See also,
McCorkle, 321 F.3d 1292; United States v. Abdelhadi, 327 F. Supp. 2d
587 (E.D. Va. 2004); United States v. Neal, No. 03-35-A, p. 11 (E.D.
Va. Sept. 29 2003) (unpublished decision) (copy attached hereto as
Appendix 1).

**POINT IV**

**MS. SURGENT'S ARGUMENTS REGARDING MONEY JUDGMENTS
WOULD BE MOOTED BY THE ENTRY OF A THIRD PROPOSED
PRELIMINARY ORDER OF FORFEITURE.**

Notably, this Court need not reach the issue of the
propriety of forfeiture money judgments or the satisfaction of money
judgments with substitute assets if the language of the previously
submitted orders were modified.  As such, should the court request, or
if the Court finds that the government is not entitled to a money
judgment or to satisfy a money judgment with the forfeiture of
substitute assets, the government respectfully requests permission to
submit another proposed Preliminary Order of Forfeiture (the "Third
Proposed Order").  The Third Proposed Order would order the defendant
to forfeit the property involved in the money laundering conspiracy,
specifically the property wired from his Bank Atlantic account to the
Lions Gate Management and Warwick Nominee accounts.  GX-131.  The
Third Proposed Order would also note that, because the property
involved in the offense was wired to third parties overseas, the
prerequisites of 21 U.S.C. § 853(p)(1)(B) and (C) have been satisfied.
As such, the Third Proposed Order would authorize the government to
seek the forfeiture of substitute assets up to the value of the
property involved in the offense, namely $2,354,800.00.  While such an

order would have precisely the same effect as the orders previously submitted by the government, the Third Proposed Order would not specifically award a forfeiture money judgment and would not authorize the government to satisfy a money judgment with substitute assets.

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that Ms. Surgent's motion to vacate or modify the restraining order be denied, together with such other and further relief as to this Court seems proper.

Dated:    Brooklyn, New York
          December 22, 2005

                              Respectfully submitted,

                              ROSLYNN R. MAUSKOPF
                              UNITED STATES ATTORNEY
                              Eastern District of New York
                              One Pierrepont Plaza, 16ᵗʰ Fl.
                              Brooklyn, New York 11201

KATHLEEN A. NANDAN
Assistant U.S. Attorney
      (Of Counsel)