UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

                                   Criminal Action No. 04-CR-00364 (JG)

     -        against      -

                                   **Hon. John Gleeson** (J.)

JOHN SURGENT,

               Defendant.

-------------------------------------------------------x

## REPLY MEMORANDUM OF LAW OF NON-PARTY
## REGINA SURGENT IN FURTHER SUPPORT OF MOTION
## TO VACATE OR MODIFY *EX PARTE* RESTRAINING ORDER

STEVEN L. KESSLER
Law Offices of Steven L. Kessler
122 East 42 Street, Suite 606
New York, New York 10168-0699
(212) 661-1500

Attorneys for Non-Party
REGINA SURGENT

Eric M. Wagner
  *On the Memorandum*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I

THE GOVERNMENT HAS FAILED TO ARTICULATE A VALID LEGAL
BASIS FOR CONTINUING TO RESTRAIN MS. SURGENT'S SAFEGUARD
SHARES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT II

THE INVALIDITY OF THE GOVERNMENT'S THEORY OF FORFEITURE
IN THIS CASE PROVIDES FURTHER SUPPORT FOR
VACATING OR MODIFYING THE *EX PARTE* RESTRAINING ORDER   . . . 7

    A.    The Government Has Not Contested the Critical Contentions
        Raised by Ms. Surgent Regarding Money Judgment Forfeitures . . . 8

    B.    The Government's Claim That it Cannot Forfeit Property
        in a Money Laundering Case without Entry of a Money Judgment
        Forfeiture is Contradicted by its Own Memorandum . . . . . . . . . . . 9

    C.    The Government Cannot, After Trial, Switch Its Theory of Recovery
        From Money Judgment Forfeiture to the Forfeiture of Specific
        Property   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    D.    Even if the Government Could Retroactively Forfeit Specific
        Property, it Would Not be Entitled to Forfeit Substitute Assets . . . 14

POINT III

PLAINTIFF MISREADS AND MISAPPLIES FED. R. CRIM. P. 32.2 . . . . . . 17

        Burden of Proof and Jury Trial  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

POINT IV

      PLAINTIFF'S ARGUMENTS REGARDING THE CASE LAW ARE
      MISPLACED  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

            Forfeiture of Substitute Assets in Money Laundering Cases  . . . . . . . . . . 23

            18 U.S.C. § 982(b)(2)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

      CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA

                                    Criminal Action No. 04-CR-00364 (JG)

     -       against      -

                                     **Hon. John Gleeson** (J.)

JOHN SURGENT,

                   Defendant.
--------------------------------------------------------x

## REPLY MEMORANDUM OF LAW OF NON-PARTY REGINA SURGENT IN FURTHER SUPPORT OF MOTION <u>TO VACATE OR MODIFY *EX PARTE* RESTRAINING ORDER</u>

### <u>PRELIMINARY STATEMENT</u>

Non-party Regina Surgent respectfully submits this Reply Memorandum of Law in further support of her motion for an order vacating or modifying the *ex parte* restraining order issued by the Court on August 25, 2005, to permit the release of Ms. Surgent's 106,000 shares of Safeguard Security Holdings, Inc. that have been restrained by the Order. *See* Memorandum of Law of Non-Party Regina Surgent in Support of Motion to Vacate or Modify *Ex Parte* Restraining Order, dated December 6, 2005 ("Surgent Mem."). This Reply Memorandum is also submitted in response to the United States' Memorandum of Law in Opposition to Non-Party Regina Surgent's Motion to Vacate or Modify the *Ex Parte* Restraining Order, dated December 22, 2005 ("Pl. Mem.").

As set forth below, plaintiff has failed to articulate a valid basis for continuing to restrain the shares. Accordingly, they should be released forthwith.

**ARGUMENT**

**POINT I**

**THE GOVERNMENT HAS FAILED TO ARTICULATE A VALID LEGAL BASIS FOR CONTINUING TO RESTRAIN MS. SURGENT'S SAFEGUARD SHARES**

Ms. Surgent's moving memorandum demonstrated that the only possible legal basis for the restraint of her property in this case is 21 U.S.C. § 853(e).  Surgent Mem. at 3.  Ms. Surgent also demonstrated that, under that statute, in a money laundering case, the government can only restrain specific property that it seeks to forfeit pursuant to 21 U.S.C. § 853(a) and/or 18 U.S.C.§ 982(a)(1).  Thus, only property that is alleged in the indictment to be "involved in", "traceable to", the proceeds of, or to have facilitated the defendant's money laundering conspiracy may be restrained pursuant to section 853(e).

Ms. Surgent's Safeguard shares were not alleged either in the indictment or at trial to be involved in, traceable to, the proceeds of, or to have facilitated the defendant's money laundering conspiracy.  As a result, they may not be restrained pursuant to 21 U.S.C. § 853(e).  Accordingly, as Ms. Surgent demonstrated, the shares must be released.

The government has failed to refute this showing.  Critically, the government acknowledges that there is no special statutory provision applicable to post-conviction restraint of property in a criminal forfeiture case.  *See* Pl. Mem. at 22.  Indeed, the statutory scheme set forth in 21 U.S.C. § 853 applies equally to both pretrial and post-conviction restraints, making no distinction between the two.

The statute's dividing line is not before and after trial, but rather before and after

2

entry of an order of forfeiture.  Only then does the statute confer greater enforcement powers on the government  *See* 21 U.S.C. § 853(g) ("Upon entry of an order of forfeiture under this section, the court shall authorize the Attorney General to seize all property ordered forfeited upon such terms and conditions as the court shall deem proper"); Fed. R. Crim. P. 32.2(b)(3) ("The entry of a preliminary order of forfeiture authorizes the Attorney General (or a designee) to seized the specific property subject to forfeiture . . ..")

That is presumably why plaintiff urges the Court to resolve Ms. Surgent's motion by effectively bypassing this motion and its requested relief and simply entering its proposed preliminary order of forfeiture, so that plaintiff can utilize 21 U.S.C. § 853(g) and Fed. R. Crim. P. 32.2(b)(3) to restrain Ms. Surgent's property.  *See* Pl. Mem. at 22 (if Court enters preliminary order of forfeiture, "Ms. Surgent's section 853(e) argument becomes moot").[1]  Clearly, plaintiff's argument concedes that, until entry of a preliminary order of forfeiture, the only statutory authority for the restraint of property in a money laundering case is found in 21 U.S.C. § 853(e).

Yet the government then contends that, even though its right to the restraining

---

[1]Although not critical to Ms. Surgent's motion, it is respectfully submitted that even with entry of a preliminary order of forfeiture, the Court still would not have authority to seize Ms. Surgent's property.  Fed. R. Crim. P. 32.2(b)(3) limits post-order seizure to "the specific property subject to forfeiture" and 21 U.S.C. § 853(g) only permits seizure of property "[u]pon entry of an order of forfeiture under this section . . .."  A money judgment forfeiture constitutes neither "specific property subject to forfeiture" nor "an order of forfeiture under" 21 U.S.C. § 853.  As discussed in Ms. Surgent's moving memorandum, a money judgment forfeiture does not authorize the forfeiture of specific property, and the remedy is not specifically authorized by section 853 or any other statute.

order is grounded on section 853(e), the case law under that same statute is irrelevant to a ruling on Ms. Surgent's motion to vacate or modify that order.  Pl. Mem. at 22 (citing *United States v. Gotti*, 155 F.3d 144 (2d Cir. 1998)); *see* Surgent Mem. at 5 (citing *Gotti*). Plaintiff, however, provides no statutory or decisional support for this assertion. Plaintiff's bare argument is insufficient to refute Ms. Surgent's showing that, under *Gotti*, only 'specific property' may be restrained under section 853(e), and that *Gotti*'s holding applies to this case.  Indeed, plaintiff offers no other plausible reading of the statute.

The government's final defense of the restraining order falls back on its old standby, the All Writs Act, 28 U.S.C. § 1651.  To support its argument, the government quotes from a Virginia district court case, cites two other Virginia cases, and attaches to its memorandum yet another Virginia case. Pl. Mem. at 23 & appendix.  What the government omits, however, is a far more relevant, more recent, and more local case that, on the previous page, it had just discarded as 'inapplicable': *United States v. Razmilovic*, 419 F.3d 134 (2d Cir. 2005).

The final footnote of that August 17, 2005 Second Circuit opinion emanating from the Eastern District of New York states in full:

> The government also argues, in a footnote, that the All Writs Act, 28 U.S.C. § 1651(a), empowered the court to order pretrial restraint in this case.  The Supreme Court has squarely held that the All Writs Act does not provide independent statutory authority for issuing pretrial restraints; rather it confers only the power to issue writs that would be authorized under traditional equitable jurisdiction.  The government offers no evidence that pretrial restraint of defendants' assets was available in equity.

4

*Razmilovic*, 419 F.3d at 141 n.7 (citing *Grupo Mexicano de Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 326 n.8, 333 (1999)).

Similarly, the government here "offers no evidence that [post-conviction] restraint of *defendants*' assets was available in equity", let alone the assets of innocent third parties.  Moreover, the government's implicit suggestion that Ms. Surgent, by seeking the release of her own funds to feed her children and keep her family economically afloat, is seeking to "frustrate the implementation of a court order or the proper administration of justice" should be rejected out of hand.  Thus, for even stronger reasons than in *Razmilovic*, the All Writs Act should be deemed unavailable as a basis for the continued restraint of Ms. Surgent's property.

The government's heavy reliance on cases from Virginia to support restraint of assets is particularly disturbing because the Fourth Circuit is the only Circuit in the country that permits *pretrial* restraint of substitute assets, thus directly contradicting the Second Circuit in *Gotti* and *Razmilovic*, as well as every other Court of Appeals that has reached the issue.  *See Gotti*, *supra*, 155 F.3d at 149 ("The Fourth Circuit is the only federal appellate court thus far to hold that 18 U.SC. § 1963(d)(1) authorizes the pretrial restraint of substitute assets").  Clearly, a jurisdiction that already finds direct *statutory* support for such restraints will be more likely to construe the All Writs Act in a similar manner.

Thus, if the All Writs Act and plaintiff's circular 'enter the order then there's no

harm done' arguments are both cast aside – as they should be – the only valid legal basis for the restraint of Ms. Surgent's property is 21 U.S.C. § 853(e). That section, as Ms. Surgent's moving memorandum clearly established, limits injunctive relief to cases where the government seeks the forfeiture of specific property as defined in 21 U.S.C. § 853(a) and related provisions such as 18 U.S.C. § 982(a). As plaintiff does not seek forfeiture of specific property, it lacks a valid statutory basis for the restraint of any property, including, but not limited to, Ms. Surgent's Safeguard shares. Accordingly, those shares should be released forthwith.

**POINT II**

**THE INVALIDITY OF THE GOVERNMENT'S THEORY OF FORFEITURE
IN THIS CASE PROVIDES FURTHER SUPPORT FOR
VACATING OR MODIFYING THE *EX PARTE* RESTRAINING ORDER**

Ms. Surgent demonstrated in her moving memorandum that the invalidity of plaintiff's theory of forfeiture provides yet further support for Ms. Surgent's motion to vacate or modify the *ex parte* restraining order.  If property is not subject to forfeiture as specific property under 21 U.S.C. § 853(a) or 18 U.S.C. § 982(a), then it cannot be restrained pursuant to section 853(e).

Plaintiff's initial response to this argument is that, although Ms. Surgent "has standing to challenge the restraining orders (to the extent they authorize restraint of assets held in her name)", she cannot "challenge the entry of an *in personam* forfeiture money judgment against the defendant."  Pl. Mem. at 4-5.  This appears to be an indirect way of arguing that Ms. Surgent cannot attack the validity of the government's basis for forfeiture in this case.  Ms. Surgent disagrees.  As Ms. Surgent demonstrated in her moving memorandum, she has standing to challenge the validity of the underlying forfeiture to the extent it bears on the validity of the restraint of her property.  As Ms. Surgent also demonstrated, the validity of the forfeiture and the validity of the restraint are inextricably related under Congress's statutory scheme.  Accordingly, plaintiff's standing argument is without merit, and plaintiff's contentions regarding the validity of the forfeiture sought in this case are addressed below.

7

**A.     The Government Has Not Contested the Critical Contentions
        Raised by Ms. Surgent Regarding Money Judgment Forfeitures**

The government has not challenged the central points Ms. Surgent raised regarding

money judgment forfeitures. It has not contested any aspect of Ms. Surgent's discussion

of the history and nature of money judgment forfeitures, or the manner in which they may

be enforced.  The critical historical point set forth in Ms. Surgent's memorandum is that

money judgment forfeitures are a judicially-created remedy rendered obsolete by

subsequent legislative action.  The government does not dispute this.  Nor does it dispute

the fact that money judgment forfeitures are actually nothing more than fines that give the

government enforcement powers no greater than that of an ordinary creditor under state

execution of judgment laws, as confirmed by the literal language of Rule 32.2.  *See* Fed.

R. Crim. P. 32.2(b)(1) ("If the government seeks a personal money judgment, the court

must determine the *amount of money that the defendant will be ordered to pay*", not the

property defendant will forfeit) (emphasis added).

Indeed, the fact that the government has taken the intermediate step of seeking an

order forfeiting substitute assets on the basis of an allegedly uncollectible money

judgment forfeiture is a concession that, without such an order, the money judgment

forfeiture would not confer on the government the right to forfeit *any* specific property.

**B.      The Government's Claim That it Cannot Forfeit Property
         in a Money Laundering Case without Entry of a
         <u>Money Judgment Forfeiture is Contradicted by its Own Memorandum</u>**

The government asserts that money judgment forfeitures are essential to the full

and fair administration of justice, claiming that money judgments serve a procedural and,

by extension, substantively indispensable role in the criminal asset forfeiture process in

money laundering cases.  Pl. Mem. at 8-9.  Indeed, the government challenges Ms.

Surgent to "explain[] how, in a situation where directly traceable assets cannot be located

or identified, the Court's order should reflect the defendant's forfeiture obligations [or]

how a defendant's obligation to forfeit substitute assets up to the value of the traceable

assets is to be memorialized," claiming that "the only way to quantify that value is in the

form of a money judgment." *Id.* at 6-7.  Thus, the government is contending that

Congress' statutory scheme, even after the 1986 amendments, remains inadequate, and

still requires the judicial remedy of money judgment forfeiture to obtain full recovery

against the criminal defendant.

This argument necessarily concedes that money judgment forfeitures are not

authorized by statute, thus undermining plaintiff's contentions to the contrary.  *See* Pl.

Mem. at 8 ("[t]he statutory framework clearly and unambiguously authorizes forfeiture

money judgments").

That internal inconsistency, however, pales in comparison to the analytical

devastation wreaked by Point IV of plaintiff's memorandum.  There, plaintiff contends

that, if the Court vacates the restraining order on the ground that its underlying theory of

forfeiture is invalid, plaintiff should be given leave to retroactively amend its proposed

preliminary order of forfeiture to provide for the forfeiture of the specific property

involved in or traceable to the defendant's money laundering conspiracy.  This property

consists of funds deposited in defendant's personal Bank Atlantic Account and then wired

overseas to accounts of his co-conspirators.  Pl. Mem. at 24.

Although this contention appears at the end of its memorandum, it is a point that

plaintiff has been setting up from the very beginning:

> [O]n August 26, 2005, the government submitted a proposed Preliminary
> Order of Forfeiture to the Court forfeiting $2,354,800.00.  This figure
> represents the amount of fraud proceeds that the defendant wired from his
> personal account at Bank Atlantic to his co-conspirators' accounts overseas.
> Tr. at 166, 204, 429-30, 432-33, 985, 1012, 1019-20; GX 50D, 50E, 131.  It
> is, in short, the actual amount he laundered.

Pl. Mem. at 2-3.

The government then argues that it would nevertheless be entitled to an order

forfeiting substitute assets up to the value of the specific property involved in the offense,

because the funds have been transferred overseas, thus meeting the requirements of 21

U.S.C. § 853(p).

As set forth below, plaintiff cannot simply amend the forfeiture count *nunc pro*

*tunc* to change its theory of recovery from a money judgment forfeiture to the forfeiture

of specific property pursuant to 18 U.S.C. §  982(a)(1) and 21 U.S.C. §  853(a).  Even if

could, it would still not entitle plaintiff to forfeit substitute assets.   Suffice it to say,

10

however, that the government's proposed reworking of the forfeiture count completely undermines its claim that the only way to memorialize the amounts involved in a money laundering offense is through the device of a money judgment forfeiture.  In fact, the standard way to memorialize those amounts is with an interrogatory in the special verdict form asking the jury to determine how much money the defendant laundered.  *See*, *e.g.*, *United States v. Wittig*, 2006 WL 13158, at *1 (D. Kan. Jan. 3, 2006) ("In this case, both defendants opted to have the jury determine whether the government has established the requisite nexus between the property and the offenses committed.  Although the Court denied the government's request to have the jury award a money judgment, it did include an interrogatory in the special verdict forms asking the jury to quantify the value of the forfeited property, to the extent possible").

Thus, it is clear that, even if all money judgment forfeitures were to be invalidated tomorrow by Congress or the Supreme Court, criminal forfeiture law could continue to function seamlessly as envisioned by Congress, without a single amendment to the statutory scheme.

**C.**    **The Government Cannot, After Trial, Switch Its Theory of Recovery From Money Judgment Forfeiture to the Forfeiture of Specific Property**

The government may or may not be correct in concluding that, given the evidence adduced at trial, it had a sufficient basis to seek the forfeiture of specific property rather than a money judgment forfeiture.  The government is wrong, however, in its contention

that this change can be made at this point in the litigation.  From the inception of this case, through indictment, trial and post-trial proceedings, the government has sought only a money judgment forfeiture.  Rule 32.2 of the Federal Rules of Criminal Procedure makes it clear that the government is bound at trial by the terms of the indictment.  *See* Fed. R. Crim. P. 32.2(a) ("A court shall not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute"); *see United States v. Bornfield*, 145 F.3d 1123, 1138 (10th Cir. 1998) (vacating forfeiture special verdict because government changed theory of forfeiture from time of indictment to time of trial), *cert. denied*, 528 U.S. 1139 (2000); *id.* at 1135 ("First, the initial forfeiture is sought in the indictment and, absent a waiver of jury trial, is specified in the jury verdict").

The government's attempt to change horses in mid-stream is also barred by principles of equitable and judicial estoppel.  *See*, *e.g.*, *Bates v. Long Island R. Co.*, 997 F.2d 1028, 1037-38 (2d Cir. 1997) (equitable estoppel protects a litigant who reasonably changes position in reliance on an adversary's representation; judicial estoppel prevents a party from taking a position contrary to a "prior inconsistent position [that was] adopted by the court in some manner").[2]

---

[2]The government asserts that the defendant "waived his right to a jury trial on the forfeiture allegation."  Pl. Mem. at 2.  However, this could not constitute a waiver of the defendant's right to a jury determination on the issue of nexus because, under the terms of the

To permit forfeiture of specific property, not only would the indictment have to be retroactively rewritten, but there would have to be a new verdict form, together with new interrogatories to the jury. *See United States v. Gilbert*, 244 F.3d 888, 922 (11th Cir. 2001) ("Without a valid *verdict* of forfeiture, the district court cannot properly enter an *order* of forfeiture unless the defendant waives his right to a jury trial on that issue") (emphasis in original); *United States v. Bornfield*, 145 F.3d at 1138-39 (vacating district court's forfeiture order because jury's initial award of forfeiture was invalid).

Thus, before anything like the government's third proposed preliminary order of forfeiture could be entered, there would have to be an entirely new trial on the count underlying the forfeiture and a meaningful jury option on the nexus issue made available to the defendant. The government's suggestion that everything can be 'made right' by simply revising the forfeiture order on the eve of sentencing undermines the entire system of notice and due process for criminal forfeitures provided by the statutory scheme and reflected in the procedures of Fed. R. Crim. P. 32.2. Accordingly, it is respectfully requested that the Court decline to enter the government's third proposed forfeiture order.

---

indictment, nexus was not an issue in the case. *See* Fed. R. Crim. P. 32.2 (nexus determination required only where "government seeks forfeiture of specific property", not money judgment forfeiture, which requires only a determination of "the amount of money that the defendant will be ordered to pay"). Indeed, as plaintiff notes, in this District, defendants are sometimes offered a jury determination of the amount of a money judgment forfeiture, which appears to be what the defendant gave up here. *See* Pl. Mem. at 13, fn. 8. The defendant's jury waiver on the government's representation that it was not seeking forfeiture of specific property constitutes detrimental reliance for equitable estoppel purposes; the Court's conduct of the trial in accordance with that representation constitutes an adoption warranting judicial estoppel.

13

**D.    Even if the Government Could Retroactively Forfeit Specific**
        **Property, it Would Not be Entitled to Forfeit Substitute Assets**

Plaintiff's third proposed preliminary order of forfeiture "would also note that,
because the property involved in the offense was wired to third parties overseas," the
government would be entitled to an order forfeiting substitute assets "up to the value of the
property involved in the offense" because, purportedly, "the prerequisites of 21 U.S.C. §
853(p)(1)(B) and (C) have been met."  Pl. Mem. at 24.

Ms. Surgent strongly disagrees with plaintiff's conclusion that, if this proceeding
were transformed from a money judgment forfeiture to the forfeiture of specific property,
the government would automatically satisfy section 853(p)'s standard for forfeiture of
substitute assets.  The government specifically invokes subsection (B) (property that "has
been transferred or sold to, or deposited with, a third party"), and subsection (C) (property
that "has been placed beyond the jurisdiction of the court").

Plaintiff, however, does not claim to have employed *any* effort, let alone "due
diligence", to bring the funds transferred overseas from defendant's Bank Atlantic account
back within the jurisdiction of the Court.  Certainly, this property, the "corpus" of the
laundering offense, constitutes 'property involved in the offense', and must be forfeited if
available.  *See United States v. Tencer*, 107 F.3d 1120, 1134 (5th Cir.) (property 'involved
in' an offense "include[s] the money or other property being laundered (the corpus), and
commissions or fees paid to the launderer, and any property used to facilitate the
laundering offense"), *cert. denied*, 522 U.S. 960 (1997).

14

Moreover, section 853 gives the government the power to recover transferred property.  Subsection (c) provides that any property "subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States."  21 U.S.C. § 853(c).  Under the relation-back provision, "subsequently" means after the commission of the criminal activity.  *Id.*

Not surprisingly, plaintiff sought no such special verdict at trial.  This fact alone demonstrates how much more stringent the government's burden is when it properly seeks the forfeiture of substitute property from unavailable specific property rather than the 'illegal fiction' of 'substitute property from a money judgment forfeiture'.

Further, to the extent that any property transferred by the defendant to locations outside the jurisdiction of the Court is still within the defendant's control, the substitute property section provides that "the court may, in addition to any other action authorized by this subsection, order the defendant to return the property to the jurisdiction of the court so that the property may be seized and forfeited."  21 U.S.C. § 853(p)(3).  Again, it does not appear that the government has made any attempt to seek relief under this provision.

The government also has not even alleged, let alone established, that it cannot locate property "traceable to" the offense, meaning "property where the acquisition is attributable to the money laundering scheme rather than from money obtained from untainted sources."  *Bornfield*, 145 F.3d at 1135 (citing *United States v. Voigt*, 89 F.3d 1050, 1084-87 (3d Cir.) ("We hold that the term 'traceable to' means exactly what it

15

says"), *cert. denied*, 519 U.S. 1047 (1996); *United States v. Saccoccia*, 823 F. Supp. 994, 1005 (D.R.I. 1993), *aff'd*, 58 F.3d 754, 785 (1st Cir. 1995) (agreeing with district court's reasoning), *cert. denied*, 517 U.S. 1105 (1996)).

Having moved from the sphere of money judgment forfeitures to specific property, it is no longer sufficient (if it ever was) to assert that the defendant's bankruptcy filing absolves the government of any duty to locate any and all property "involved in" or "traceable to" the money laundering conspiracy. In the context of specific property forfeitures, plaintiff's focus on the bankruptcy issue improperly shifts the inquiry from tracing the funds in a specific account to the availability of defendant's general assets to satisfy a money judgment. Moreover, in any context, it is not due diligence to accept at face value the defendant's claim that he has no assets, particularly where, as here, the government has taken the position that the defendant lied about his assets to the bankruptcy court and that the entire bankruptcy proceeding is therefore void. Thus, it is far from certain that plaintiff has, or can, satisfy the burden of proof necessary to warrant issuance of an order forfeiting substitute assets.

In summary, plaintiff's halfhearted attempt to adduce a valid legal basis for forfeiting substitute assets in a money judgment forfeiture case provides further support for Ms. Surgent's showing that the restraining order should be lifted because plaintiff has neither pleaded nor proven that her property is or can be subject to forfeiture.

16

## POINT III

## PLAINTIFF MISREADS AND MISAPPLIES FED. R. CRIM. P. 32.2

Ms. Surgent's moving memorandum predicted that plaintiff's opposition would contend that Rule 32.2 of the Federal Rules of Criminal Procedure authorizes issuance of money judgment forfeitures, despite the statutory proscription against utilizing any court rule to "abridge, enlarge or modify any substantive right" and the Advisory Committee's cautionary statement that it "takes no position" on the validity of money judgment forfeitures.  *See* Surgent Mem. at 14 (citing 28 U.S.C. § 2072(b); Fed. R. Crim. P. 32.2, Advisory Committee Note); Pl. Mem. at 8 (characterizing Rule 32.2 as a "*statute* authoriz[ing] the award of a forfeiture money judgment") (emphasis added).

Remarkably, plaintiff accuses Ms. Surgent of taking the Rule "out of context" and overstating the significance of the Advisory Committee Note, while in the same breath ignoring the origin and purpose of money judgment forfeitures in the context of the legislative history of section 853 and elevating Rule 32.2 into a "statute" that unreservedly affirms the validity of money judgment forfeitures.

In a similar vein, plaintiff criticizes as "nonsensical" Ms. Surgent's alleged "efforts to distinguish many of the cases on the grounds that they pre-date Rule 32.2 . . . as Rule 32.2 was intended, in part, to codify existing practice."  Pl. Mem. at 11.  Not surprisingly, plaintiff includes no page reference to Ms. Surgent's memorandum, as Ms. Surgent never made such an argument.  Rather, Ms. Surgent challenged *plaintiff's* reliance on cases such

17

as *United States v. Robilotto*, 828 F.2d 940 (2d Cir. 1987), because they apply pre-1986

forfeiture law, before sections 853 and 1963 were amended to permit forfeiture of

substitute assets and double fines, thereby rendering obsolete the judge-made remedy of

money judgment forfeiture.

In fact, however, plaintiff's argument does raise an important point.  Although Rule

32.2 was not intended to change the law, it *has* had a substantive impact on the courts'

analysis of money judgment forfeitures simply by clarifying the vastly differing procedures

between such forfeitures and forfeitures of specific property.  *See* Surgent Mem. at 12

("Rule 32.2 *reinforces* the huge gulf between money judgment forfeitures and forfeiture of

specific property"); Jan. 4, 1999 Letter From National Association of Criminal Defense

Lawyers to Rules Advisory Committee regarding Proposed Rule 32.2.

While pre-Rule 32.2 case-law often demonstrated the kind of 'fuzzy' thinking that

characterized earlier decisions awarding money judgment forfeitures (*see* Surgent Mem. at

12), recent cases tend to reflect the clear analytic distinctions set forth in the Rule.  *See*,

*e.g.*, *United States v. Reiner*, 393 F. Supp. 2d 52, (D. Me. 2005) (cited twice in Ms.

Surgent's memorandum and unaddressed in plaintiff's response); *United States v. Wittig*,

*supra*.  Thus, Rule 32.2 is already having the salutary effect of causing the courts to look

more closely at the characteristics and limitations of money judgment forfeitures.

Although the issue of substitute assets from a money judgment forfeiture has not yet been

addressed in a decision applying the Rule, it seems inevitable that such cases will have to

18

confront head-on the fact that the very concept of forfeiting specific, substitute property in a money judgment forfeiture case improperly commingles two very separate branches of relief, violently breaching the Rule's procedural scheme and, by necessary extension, the substantive principles underlying those procedures.

**Burden of Proof and Jury Trial:** The procedural characteristics that most sharply divide the world of money judgment forfeitures from the world of specific property forfeitures are the burden of proof and the right to a jury trial, as both have constitutional implications. As discussed in Ms. Surgent's moving memorandum, with specific property forfeitures, the government must "establish[] the requisite nexus between the property and the offense," and the defendant has the right to have this issue determined by a jury. With money judgment forfeitures, there is no jury right, and the court need only "determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1).

With respect to the burden of proof, plaintiff's almost unfathomable response is that there is no difference between money judgment forfeitures and forfeitures of specific property because both employ the same preponderance of the evidence standard. Pl. Mem. at 12. The *quantum* of evidence, however, is a separate issue from the *substance* of that evidence. Surely, plaintiff cannot seriously contend that it is just as difficult to prove that it rained last Tuesday as it is to trace the proceeds of a money laundering scheme just because both must be established by a preponderance of the evidence.

With respect to the right to a jury trial, plaintiff claims that Ms. Surgent lacks

19

standing to make this argument, and that the defendant waived his right to a jury trial on the forfeiture count.  Plaintiff misconstrues Ms. Surgent's point.  As noted earlier, Ms. Surgent has standing to assert any argument that bears on the restraint of her property. The fact that criminal defendants are entitled to a jury determination of nexus when the government seeks the forfeiture of specific property, but not when the government seeks a money judgment forfeiture, is a potent demonstration of the vast gulf between the two types of relief.  This distinction bears on the government's attempt to restrain and forfeit Ms. Surgent's property as 'substitute property' in a case where it seeks, and has sought, only a money judgment forfeiture.  Thus, Ms. Surgent has standing to raise this issue.

With respect to waiver, as noted in a footnote 2, *supra*, because the government never sought the forfeiture of specific property in the indictment or at any time thereafter, nexus between the property and the offense was not an issue in the case, and a jury trial on that issue was neither specifically offered to, nor waived by, the defendant. Tr. 1209.  In any event, the issue of waiver has no bearing on the importance of trial by jury in distinguishing money judgment forfeitures from forfeitures of specific property.

Thus, Rule 32.2 highlights the substantial differences between money judgment forfeitures and forfeitures of specific property, including the fact that substitute assets may be forfeited only if the government seeks the latter.

## POINT IV

## PLAINTIFF'S ARGUMENTS REGARDING THE CASE LAW ARE MISPLACED

Plaintiff asserts that "[t]he use of forfeiture money judgments is well-established and clearly authorized by statute", chiding Ms. Surgent for "neglect[ing] to mention that the overwhelming majority of courts, including the Second Circuit, have approved the use of forfeiture money judgments."  Pl. Mem. at 6 (point heading); *id.* at 9-10.  A lengthy string of case citations follows.  *Id.* at 10-11.  Unfortunately for plaintiff, however, its citations do not support its argument.

There can be no doubt that the government continues to seek money judgment forfeitures and many courts continue to order them.  Ms. Surgent's moving memorandum acknowledged that, adding that although outliving their usefulness, "money judgment forfeitures, like a phantom limb, kept cropping up in post-1986-amendment decisions . . . ."  Surgent Mem. at 14.  Indeed, included in plaintiff's list are cases cited and even quoted in Ms. Surgent's memorandum, including *United States v. Tedde*r, 403 F.3d 836 (7th Cir. 2005), *United States v. Candelaria-Silva*, 166 F.3d 19 (1st Cir. 1999) and *United States v. Voigt*, 89 F.3d 1050 (3d Cir. 1996).

Plaintiff also claims that Ms. Surgent "ignores the overwhelming body of caselaw – including recent Second Circuit decisions – authorizing the government to execute forfeiture money judgments against substitute assets."  Pl. Mem. at 15.  A similarly impressive string-cite follows this assertion.  Plaintiff is incorrect.  Without giving this

21

laundry list more credit than it is due, it is sufficient to note each of these cases is distinguishable.  *See*, *e.g.*, *United States v. Bermudez*, 413 F.3d 304 (2d Cir. 2005) (defendant stipulated to forfeiture judgment and conceded that property was 'involved in' money laundering, but argued property not 'proceeds' within meaning of 21 U.S.C. § 853(a); held that 18 U.S.C. § 982(a)(1) specific property definitions apply in money laundering case); *United States v. Fruchter*, 411 F.3d 377 (2d Cir. 2005) (holding that "district court's imposition of criminal forfeiture on Braun did not violate the Sixth Amendment and that it committed no error in calculating the forfeiture amount"); *United States v. Vondette*, 352 F.3d 772 (2d Cir. 2002) (addressing "single issue of whether Vondette's IRAs are properly subject to criminal forfeiture").

More importantly, however, plaintiff cannot quote from *any* opinion that has set forth a reasoned, legal justification for the continued issuance of money judgment forfeitures after the 1986 amendment of the forfeiture laws to add the remedies of double fines and substitute asset forfeitures to the government's arsenal. The only case that has actually analyzed the issue is *Croce*, and the Court is by now quite familiar with *that* result.  *See* Surgent Mem. at 16-17.  Similarly missing from plaintiff's memorandum are citations to any judicial *discussion* of the validity of forfeiting substitute assets to satisfy a money judgment forfeiture.

The reason that there is no analysis of these issues is because they have not been challenged, either at the trial or appellate level, or, if they have, the decision has not been

memorialized in a published writing.  No claimant or defendant has apparently argued, to a published judicial conclusion, that a money judgment forfeiture fails to satisfy the definitions of specific property in either 21 U.S.C. § 853(a) or 18 U.S.C. § 982(a), and that, as a result, the government has no right to restrain property under 21 U.S.C. § 853(e) or forfeit substitute assets under 21 U.S.C. § 853(p), when it is not seeking the forfeiture of specific property.  Indeed, when the issue is phrased in such terms – as with pretrial restraints of substitute property pursuant to 21 U.S.C. § 853(e) – the courts hold that the government can only restrain under subsection (e) what it can forfeit under subsection (a).  *See*, *e.g.*, *Razmilovic*, *supra*; *Gotti*, *supra*.  Thus, no case cited by the government even addresses, let alone is dispositive of, the issue before this Court.

**Forfeiture of Substitute Assets in Money Laundering Cases**: The government attempts to refute an argument Ms. Surgent did not make – that it is never permissible to forfeit substitute property in a money laundering case.  Pl. Mem. at 13-14.  What Ms. Surgent argued, and still contends, is that substitute assets cannot be forfeited unless the government first seeks forfeiture of specific property.  Plaintiff appears to be referring to the technical issue of statutory interpretation addressed in *Bermudez*, where the Second Circuit held that, in a money laundering case, the definition of specific property is not limited to the proceeds and facilitating property identified in 21 U.S.C. § 853(a), but must necessarily encompass property "involved in" or "traceable to" money laundering activity as set forth in 18 U.S.C. § 982(a)(1).  The distinction, although useful, does not affect Ms.

23

Surgent's demonstration that the government can only restrain specific property, and can only forfeit substitute property where it seeks to forfeit specific property. Whether the property sought to be forfeited was "involved in", was "traceable to", constituted the proceeds of, or facilitated criminal activity is irrelevant. They are all forms of *specific property* as that term is utilized in Rule 32.2. As long as the government seeks the forfeiture of specific property, within the meaning of either section 982 or section 853, it can seek the forfeiture of substitute assets. As the government has not done so here, however, its argument is unavailing.

**18 U.S.C. § 982(b)(2):** The government also asserts that 18 U.S.C. § 982(b)(2), which permits forfeiture of substitute assets in intermediary cases, somehow vitiates Ms. Surgent's position, presumably because it demonstrates that substitute assets can be forfeited in a money laundering case. Pl. Mem. at 14-15. However, as noted above, Ms. Surgent does not contend that substitute assets cannot be forfeited in money laundering cases in general; only that they cannot be reached where, as here, the government does not seek the forfeiture of specific property. As § 982(b)(2) does not appear to be an actual or potential basis for forfeiture in this case, however, this argument is apparently purely hypothetical.

## CONCLUSION

For all the reasons set forth above and in her prior submission to this Court, non-party Regina Surgent respectfully requests that this Court grant her motion, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for an Order vacating the *Ex Parte* Restraining Order dated August 25, 2005.  In the alternative, Ms. Surgent respectfully requests that the *Ex Parte* Restraining Order be modified to permit the release of Ms. Surgent's 106,000 shares of Safeguard Security Holdings, Inc., with costs, together with such other and further relief as this Court deems just and proper.

Dated:   New York, New York
             January 17, 2006

                              Respectfully submitted,

                              LAW OFFICES OF STEVEN L. KESSLER

                    By:      *Steven L. Kessler*
                              Steven L. Kessler (SK-0426)
                              *Attorneys for Non-Party Regina Surgent*
                              122 East 42 Street, Suite 606
                              New York, New York 10168-0699
                              (212) 661-1500

Eric M. Wagner
  *On the Memorandum*

TO:   Clerk of the Court

        AUSA Kathleen A. Nandan
        United States Attorney's Office
        Eastern District of New York
        One Pierrepont Plaza, 16th Floor
        Brooklyn, New York 11201

                              25