

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

SLR:EB:KAN

*One Pierrepont Plaza*
*Brooklyn, New York  11201*

*Mailing Address:  147 Pierrepont Street*
*Brooklyn, New York  11201*

January 25, 2006

**ELECTRONICALLY FILED**
**COURTESY COPY BY INTEROFFICE MAIL**

Honorable John Gleeson
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>           Re:   United States v. John Surgent
>                 Criminal No. CR-04-364 (Gleeson, J.)

Dear Judge Gleeson:

     The government respectfully writes in advance of the argument scheduled for Wednesday, February 1, 2006 to supplement the briefing regarding the All Writs Act as an alternate authority for the issuance of the restraining orders challenged in Ms. Surgent's pending motion to vacate.  None of the cases previously cited by the government in support of this point addressed the argument made in Ms. Surgent's Reply, namely that the Court's equitable powers under the All Writs Act are predicated upon those traditionally available in equity at the time of the Courts of Chancery.

     As a preliminary matter, the government notes that this case's procedural posture is somewhat unusual as Preliminary Orders of Forfeiture are typically entered shortly after the finding of guilt.  See Fed. R. Crim. P. 32.2(b)(1) and (2).  Once a Preliminary Order is entered, the Court's authority to restrain both directly forfeitable assets and substitute assets is clearly defined.  See 21 U.S.C. § 853(g); Fed. R. Crim. P. 32.2(b)(3). Therefore, the Court need address the source and extent of its equitable powers only if it rejects the government's assertion that 21 U.S.C. § 853(e) authorizes post-conviction restraint of substitute assets, and only if it refrains from entering the Preliminary Order.

2

Because it is well-established that equity will not lie if there is an adequate remedy at law, the Court must first determine whether there is such a remedy. Adequacy, however, includes effectiveness, promptness, and completeness. 30A C.J.S. Equity § 24 (1992). Given the facts of this case, the only remedy at law apparent (other than that available under section 853 and Rule 32.2) is an action under the Federal Debt Collection Procedure Act, 28 U.S.C. § 3001 et. seq..[1] But such an action cannot provide an efficient (and thus adequate) remedy. The government could file a separate complaint against Ms. Surgent alleging that the issuance of the Safeguard shares in her name constituted a fraudulent conveyance and seeking pre-judgment attachment or garnishment. 28 U.S.C. § 3101(a). Cf. Grupo Mexicano de Desarrollo v. Alliance Bond Fund, 527 U.S. 308, 324 n.7 (1999) (observing that fraudulent conveyance statutes "may have altered the common-law rule that a general contract creditor has no interest in his debtor's property"). The clerk of court would then issue notice of the requested writ, 28 U.S.C. § 3101(d), the Court would rule upon its propriety, 28 U.S.C. § 3101(e), and the U.S. Marshals would levy the shares, 28 U.S.C. § 3102. Ms. Surgent might also move to change venue. 28 U.S.C. §§ 1391 and 3101(d). Needless to say, filing a separate lawsuit and potentially litigating it in another district as a stop-gap pending resolution of issues already before this Court is neither effective nor prompt.[2] It is, instead, a waste of judicial resources, and equity does not compel such a result. The Court therefore may exercise its "unquestionable authority to apply its flexible and comprehensive jurisdiction in such manner as might be necessary to the right administration of

---

[1] The Federal Debt Collection Procedure Act "shall not be construed to curtail or limit the right of the United States under any other Federal law or State law . . . to collect any fine, penalty, assessment, restitution, or forfeiture arising in a criminal case." 28 U.S.C. § 3003(b).

[2] Nor is it clear why Ms. Surgent would prefer, as she seems to suggest, to have a separate lawsuit filed against her personally. See Rhonda Wasserman, Equity Renewed: Preliminary Injunctions to Secure Potential Money Judgments, 67 Wash. L. Rev. 257, 281-82 (1992) (unlike a restraining order, attachment "affects the defendant's credit rating and may even place her mortgage in technical default. . . . [It] deprives the defendant of possession and use of her personal property as well as unencumbered title to her real estate. The severity of these deprivations has caused some commentators and courts to note that an attachment order dramatically changes the bargaining power between plaintiff and defendant, giving the plaintiff substantial leverage over the defendant").

justice between the parties." Seymour v. Freer, 75 U.S. 202, 218 (1869).

The All Writs Act extends to the Court the authority to issue writs "in aid of" its jurisdiction. 28 U.S.C. § 1651. There is no dispute that the Court has the jurisdiction (and the obligation) to impose forfeiture and restitution, and, as such, the Court has the power to issue orders necessary to ensure that its forfeiture and restitution awards have meaning. As the Supreme Court held in Deckert v. Independence Shares Corp.:

> [T]he power to make the right of recovery effective implies the power to utilize any of the procedures or actions normally available to the litigant according to the exigencies of the particular case.

311 U.S. 282, 288 (1940) (upholding pre-trial restraint). This sentiment is echoed in United States v. McCorkle, 321 F.3d 1292 (11th Cir. 2003), United States v. Abdelhadi, 327 F. Supp. 2d 587 (E.D. Va. 2004), and United States v. Numisgroup International Corp., 169 F. Supp. 2d 133, 136 (E.D.N.Y. 2001) (Spatt, J.). A contrary holding would have the perverse effect of encouraging defendants (who had not already hidden their assets, or who had not hidden them well enough) to delay entry of the Preliminary Order while they made themselves judgment-proof.

The Supreme Court has addressed the availability of asset freezes in a number of cases. In the most recent, Grupo Mexicano, the Court held that the federal courts' equity jurisdiction under the All Writs Act is co-extensive with the "jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789." 527 U.S. at 318 (citations omitted). It then, in accordance with longstanding precedent, rejected the proposition that a simple contract creditor seeking money damages could restrain a debtor's assets in advance of a judgment. Id. at 320-21. However, the government does not seek "damages" in this case, nor is it without a judgment establishing its right to the requested relief. Grupo Mexicano thus does not foreclose post-conviction restraint of substitute assets.

Unlike the respondents in Grupo Mexicano, the government does not stand in the shoes of a mere contract creditor. Nor is the government in the same position as it was in United States v. Razmilovic, 419 F.3d 134 (2d Cir. 2005), in which the government sought pre-trial restraint of assets subject to forfeiture under 18

4

U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).[3]  Here, the defendant's liability for mandatory restitution and forfeiture was clearly and unequivocally established by the jury's guilty verdict. Only quantum remains to be determined.  Thus, the government is in a position analogous to one seeking a creditor's bill in equity. See Grupo Mexicano, 527 U.S. at 319 (citing cases).

Grupo Mexicano also looked at the type of final remedy sought vis-a-vis the preliminary relief imposed.  The Court held "that an equitable remedy requires an equitable cause of action."  James R. Theuer, Pre-Judgment Restraint of Assets for Claims of Damages: Should the United States Follow England's Lead, 25 N.C. J. Int'l L. & Com. Reg. 419, 484 (2000).  In other words, a petitioner must seek an equitable remedy if it hopes to obtain the equitable relief of a pre-trial restraint.  However, as set forth above, the government did not seek restraint of the Safeguard shares in order to satisfy a potential damages award.  Instead, it sought the restraining order to preserve assets for restitution and forfeiture, both of which, depending upon the circumstances, may be analogized to traditional equitable remedies and therefore may support pre-trial restraint.

In Deckert, the Supreme Court upheld a pre-trial restraint of assets because the suit included a claim for equitable relief, including restitution.[4]  In fact, a number of cases have held that

---

[3]  Razmilovic turned on the Court's interpretation of 28 U.S.C. § 2461(c).  Specifically, section 2461(c) incorporated the procedures of 21 U.S.C. § 853 "upon conviction."  Because Razmilovic had not yet been convicted, the Second Circuit found that section 853's pre-trial restraint provisions were inapplicable.  419 F.3d at 140.  Although the Court did not definitively decide the issue, it rejected the government's reliance upon the All Writs Act because "[t]he government offer[ed] no evidence that pretrial restraint of defendants' assets was available in equity."  419 F.3d at 141 n.7.

[4]  The Deckert Court observed that the Securities Act gave it jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty" thereunder.  311 U.S. at 288 (citations omitted).  The statute now provides that federal district courts "shall have jurisdiction of offenses and violations under this subchapter . . . of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter."  15 U.S.C. § 77v(a).  Notably, Surgent was convicted of an offense and violation of that subchapter, and his restitution obligation arises therefrom. Additionally, his obligation to forfeit the property "involved in" his money laundering offense is derivative of the securities

5

restitution is a traditional equitable remedy.[5]  See e.g., Mertens v. Hewitt Associates, 508 U.S. 248, 255 (1993) (characterizing injunction and restitution as typically equitable remedies); Federal Savings & Loan v. Dixon, 835 F.2d 554, 565 (5th Cir. 1987) (restitution and rescission are equitable remedies).  Likewise, the forfeiture of criminal proceeds is analogous to the traditional equitable remedy of disgorgement.  See e.g., SEC v. ETS Payphones, Inc., 408 F.3d 727, 734 and n. 6 (11th Cir. 2005) (upholding pre-trial asset freeze because SEC sought equitable remedy of disgorgement).[6]  Cf. In re Focus Media, Inc., 387 F.3d 1077, 1085 (9th Cir. 2004) (fraudulent conveyance claim lies in equity); United States v. McHan, 345 F.3d 262, 275 (4th Cir. 2003) (analogizing ancillary hearing under 21 U.S.C. § 853(n) to equitable action to quiet title).  Therefore, because the government seeks to restrain the assets in question to satisfy obligations traditionally founded in equity (or analogous thereto), this Court has the authority to issue the equitable remedy of a restraining order.  De Beers Consol. Mines v. United States, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character which may be granted finally"); United States v. Oncology Associates, P.C., 198 F.3d 489, 496-97 (4th Cir. 1999) (upholding asset freeze when government sought both money damages and equitable relief).  See also Granfinanciera S.A. v. Nordberg, 492 U.S. 33 (1989) (analyzing difference between claims sounding in law and equity).

   Whether and to what extent these cases have been affected by Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002), is unclear.  There, the Court held that "not all relief falling under the rubric of restitution is available in equity," and that "for restitution to lie in equity, the action generally must seek not to impose personal liability upon the defendant, but to restore to the plaintiff particular funds or property in the

---

fraud.  See infra note 6.  Section 77v(a) therefore offers yet another alternative basis for the post-conviction restraint sought in this case.

   [5]   Depending upon the circumstances, forfeited funds may also be distributed to victims and credited toward a restitution order.  18 U.S.C. § 981(e), 28 C.F.R. Pt. 9 and Attorney General Order No. 2088-97 (June 14, 1997).

   [6]   Although the government seeks forfeiture of approximately $2.3 million as having been "involved in" defendant's money laundering transactions and not as criminal proceeds, the evidence at trial clearly established that those monies also constituted a portion of the proceeds that the defendant generated as a result of his fraudulent scheme.

defendant's possession." Id. at 213, 214.  See Pereira v. Farace, 413 F.3d 339-40 (2d Cir. 2005).  However, Great-West specifically addressed whether ERISA's provisions authorizing "appropriate equitable relief" permitted the "imposition of personal liability . . . for a contractual obligation to pay money," a factual scenario and legal inquiry quite different from the one presented here.  Id. at 221.  Thus, neither Grupo Mexicano nor Great-West preclude an asset freeze when a creditor has an equitable claim to specific property, whether in the form of an equitable lien, constructive trust, or otherwise.  Cf. Counihan v. Allstate Insurance Co., 194 F.3d 357 (2d Cir. 10999) (imposing constructive trust over insurance proceeds when directly forfeitable asset was destroyed).  Nor do they appear to preclude disgorgement claims. SEC v. Dibella, No. 04-CV-1342, 2006 WL 62834, *9-10 (D. Conn. Jan. 10 2006).

Similarly, Great-West's effect on situations such as that presented in United States v. First Nat'l City Bank, 379 U.S. 378 (1965), remains unexplored.  In First Nat'l City Bank, the Supreme Court again approved the use of a pre-trial asset freeze based upon an I.R.S. jeopardy assessment.  The Court found the restraint "eminently appropriate to prevent further dissipation of assets" and thus protect the government's ability to collect a tax lien owed by a foreign corporation.  Id. at 385.  The decision did not explain how the restrained account was tied to the claim for back taxes so as to create an equitable lien.[7]  Nevertheless, the Court upheld the restraint, noting that "[c]ourts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." Id. at 383 (citations omitted).

The preservation of assets in order to compensate fraud victims is most certainly in the public interest.  So too is the preservation of assets to satisfy a forfeiture judgment, in that Congress has deemed forfeiture and restitution to be important elements of the criminal justice system.  Therefore, to the extent the twenty-first century statutory scheme at issue here does not fit neatly into an eighteenth century paradigm, this Court is authorized to "go much farther," to maintain the restraining orders, and to preserve the status quo consistent with the ends of justice.  The Court properly issued the restraining orders, and Ms.

---

[7] Grupo Mexicano distinguished First Nat'l City Bank in part on the grounds that the government had asserted an equitable lien.  527 U.S. at 326.  See Security Pacific Mortg. and Real Estate Services, Inc. v. Republic of Philippines, 962 F.2d 204, 208-09 (2d Cir. 1986), for a discussion of equitable liens under New York law.

7

Surgent's motion to vacate them should be denied.

     To the extent this submission exceeds the five-page limit proposed by the government, the government respectfully requests permission to exceed such page limit.

     Thank you for Your Honor's consideration of this submission.

                          Respectfully submitted,

                          ROSLYNN R. MAUSKOPF
                          United States Attorney

By: */s/ Kathleen A. Nandan*
     Kathleen A. Nandan
     Assistant U.S. Attorney
     (718) 254-6409/7000

cc:  Steven L. Kessler, Esq. *(By ECF and Facsimile)*
     122 East 42nd Street, Suite 606
     New York, NY 10168-0699
     212-297-0777 (facsimile)

     John Surgent *(By Certified Mail, Return Receipt Requested)*
     Reg. No. 03911-054
     Brooklyn MDC
     P.O. Box 329002
     Brooklyn, NY 11232

     AUSA Scott Klugman *(By Interoffice Mail)*
     AUSA Suzanne McDermott *(By Interoffice Mail)*