UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA

        -against-                         MEMORANDUM
                                         AND ORDER
JOHN SURGENT,                            04-CR-364 (JG) (SMG)

               Defendant.
-------------------------------------------------------------x

A P P E A R A N C E S :

        BENTON J. CAMPBELL
            United States Attorney
            Eastern District of New York
            271 Cadman Plaza East, 7th Floor
            New York, NY 11201
        By:   Kathleen A. Nandan
            Attorneys for the United States

        LAW OFFICES OF STEVEN L. KESSLER
            122 East 42nd St., Suite 606
            New York, NY 10168
         By:   Steven L. Kessler
            Attorneys for Third-Party Petitioner
            Regina Surgent

JOHN GLEESON, United States District Judge:

        The government moves, pursuant to 18 U.S.C. § 982 and Federal Rule of

Criminal Procedure 32.2 ("Rule 32.2"), for a final order of forfeiture against defendant John

Surgent ("John"), who has been convicted of conspiring to launder money. The government

seeks a money judgment of $2,354,800 and the forfeiture of certain "substitute property" in

which John allegedly has an ownership interest. Regina Surgent ("Regina"), John's wife, filed a

petition pursuant to 21 U.S.C. § 853(n), alleging that her husband has no interest in two of the

assets in question: the real property located at 320 Algonquin Road in Franklin Lakes, New

Jersey ("the Franklin Lakes property") and shares of common stock in Safeguard Security

Holdings, Inc. (the "Safeguard shares") held by Regina. The government has also moved to amend the order of forfeiture to include John's interest in RH Surgent LLC ("the LLC"), a Nevada limited liability company that currently holds title to the Franklin Lakes property.

On June 6, 2006, I referred these motions to Magistrate Judge Steven Gold. On October 31, 2008, after lengthy but ultimately fruitless settlement negotiations, Judge Gold issued a Report and Recommendation ("R&R") recommending that I award summary judgment to the government with regard to the Safeguard shares and to Regina with regard to the Franklin Lakes property. He also recommended that I hold a hearing regarding ownership of the LLC. The parties did not raise the propriety of personal money judgments before Judge Gold.

This case raises a number of important issues involving the remedies available to the government in a criminal forfeiture proceeding and the procedures to be followed in awarding those remedies. At the threshold, I conclude that nothing in § 982, § 853, or the jurisprudence of the Second Circuit authorizes me to enter a personal money judgment, as opposed to an order forfeiting specific property, in sentencing a defendant convicted of a money laundering offense, and amend the preliminary order of forfeiture to remove that personal money judgment remedy. I also conclude that the government's choice of remedy does not render its notice of forfeiture ineffective or the defendant's waiver of his jury right regarding forfeiture invalid. I hold that, to obtain an order forfeiting substitute property, the government must prove, by a preponderance of the evidence, the identity, value, and unavailability, *see* 21 U.S.C. § 853(p)(1), of the property "involved in" the offense of conviction. 18 U.S.C. § 982(a). It must also prove by a preponderance that the substitute property it seeks to forfeit is "property of" the defendant; *i.e.*, that the defendant has a legally cognizable interest under the applicable property

law. I also conclude that state property law governs the extent of the defendant's interest unless explicitly superseded by federal law. Once it makes such a showing, the government is entitled to forfeiture of the property unless a third-party claimant demonstrates a superior interest in an ancillary proceeding pursuant to 21 U.S.C. § 853(n). Furthermore, although the government must demonstrate that the defendant has an interest in any substitute property at the time forfeiture is sought, a court may grant a motion to amend the order of forfeiture to include after-acquired property "at any time." Fed. R. Crim. P. 32.2(e)(1). In light of these holdings, it appears that the principal difference between the money judgment sought by the government and the order of forfeiture authorized by Congress is that the latter may be enforced only by the court that enters it.

With respect to the Safeguard shares, I find that the government has proven that the shares held by Regina are the property of defendant John Surgent, and that Regina has failed to rebut this showing. With respect to the Franklin Lakes property, I find that the government has failed to show that any part of this property is property of the defendant, and accordingly remove this property from the order of forfeiture and dismiss Regina's petition regarding this property as moot. With respect to the LLC, I conclude that the government has failed to show, based in part on the effect of John Surgent's bankruptcy petition, that any part of this property is property of the defendant and deny the government's motion to amend the order of forfeiture to include this property.

BACKGROUND

On April 15, 2004, the government filed an indictment charging John Surgent with securities fraud and conspiracy to commit securities fraud in violation of 15 U.S.C. §§

78j(b) and 78ff, and with conspiracy to launder money in violation of 18 U.S.C. § 1956.  On

June 10, 2005, the government filed a superseding indictment that added the following "Criminal

Forfeiture Allegation":

> 17.  The United States hereby gives notice to the defendant charged in Count Three [the money laundering conspiracy] that, upon his conviction of such offense, the government will seek forfeiture in accordance with [18 U.S.C. § 982], of all property involved in the offense of conviction . . . and all property traceable to such property as a result of the defendant's conviction . . . , including but not limited to, [*sic*] a sum of money equal to $2,314,800.00 in United States currency.
> 18.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:
> (a) cannot be located upon the exercise of due diligence;
> (b) has been transferred or sold to, or deposited with, a third party;
> (c) has been placed beyond the jurisdiction of the court;
> (d) has been substantially diminished in value; or
> (e) has been comingled with other property which cannot be divided without difficulty;
> it is the intent of the United States, pursuant to [18 U.S.C. § 982], to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation, including but not limited to, all right title and interest in [the Franklin Lakes property], held in the name of [the LLC].

Superseding Indictment 11-12.[1]

Surgent's trial began on July 18, 2005.  On July 25, while the jury was

deliberating on the stock fraud and money laundering charges, the parties agreed that if Surgent

was found guilty of the money laundering charge, the criminal forfeiture allegations would be

determined entirely by the Court.  Tr. 1209.

On July 26, 2005, the jury found John guilty of all three counts.  On August 26,

2005, the government filed a motion for forfeiture of property.  In its motion, the government

sought "a money judgment equal to the amount that the defendant laundered, namely

---

[1]   The superseding indictment was filed on June 10, 2005 as Document 53.

$2,354,800.00." Gov't Aug. 26, 2005 Mem. 5 (citing 18 U.S.C. § 982(a)(1)).[2] Although this amount exceeded the amount alleged in the indictment, the government contended that the evidence it adduced at trial would permit me to find that the larger amount accurately reflected the sum of money laundered by the defendant and his co-conspirators. *Id.* at 8.

The motion also sought the forfeiture of substitute property. The government stated that

> [t]he defendant is currently in bankruptcy . . . and, as such, has represented that he does not have assets sufficient to satisfy his current debts. The prerequisites of 21 U.S.C. § 853(p) therefore have been satisfied because the Government cannot satisfy the forfeiture money judgment given the pending bankruptcy proceedings. Accordingly, the Preliminary Order of Forfeiture should order the forfeiture of any other property of the defendant, up to the value of the money judgment.

*Id.* at 13 (internal citations omitted). In an *ex parte* order dated August 25, 2005, I ordered the restraint of the Safeguard shares.[3]

On October 13, 2005, the government submitted a modified proposed Preliminary Order of Forfeiture that added two brokerage accounts and a bank account to the assets subject to forfeiture. Its proposed order decreed that:

> 1. The defendant shall forfeit all of his right, title and interest in the sum of . . . $2,354,800.00 in United States currency, and a forfeiture money judgment in that amount shall be entered against him, pursuant to 18 U.S.C. § 982(a)(1).
> 2. The defendant shall forfeit all of his right, title and interest in the following property (collectively the "Forfeited Assets") up [to] the amount of the money judgment imposed in paragraph 1 herein pursuant to 21 U.S.C. § 853(p)(2):
> a. all right, title, and interest in [the Franklin Lakes property];
> b. all right, title and interest in [the Safeguard shares];
> c. all right, title and interest in any funds, securities, or other monetary instruments on deposit or credited to or through Garden State Securities, Inc., held in the name of Merrill Funding LLC, account number 12W6-590903400, and all proceeds traceable thereto;

---

[2]  This motion was filed on August 26, 2005 as Document 100.
[3]  This order was filed as Document 102 on September 7, 2005.

d. all right, title and interest in any funds, securities, or other monetary instruments on deposit or credited to or through Rush Trade Securities, held in the name of Merrill Funding LLC, account number 41016692, and all proceeds traceable thereto;

e. all right, title and interest in any funds, securities, or other monetary instruments on deposit or credited to or through Fleet Bank, held in the name of Merrill Funding LLC, account number 9419964117, and all proceeds traceable thereto.

Second Proposed Preliminary Order of Forfeiture 2-3.[4]

On October 12, 2005, I entered an order restraining the three accounts identified in the government's proposed order.[5]  On December 6, 2005, Regina filed a motion to vacate the order restraining the Safeguard shares.  The motion argued that only "specific property," *i.e.*, property described in 21 U.S.C. § 853(a)(1)-(2), could be restrained pursuant to § 853.[6]  Mem. of Law of Non-Party Regina Surgent in Supp. of Mot. to Vacate or Modify *Ex Parte* Restraining Order ("RS Restraining Order Mem.") 4.[7]  Because the government had not sought forfeiture of any specific property, Regina contended, it could not seek a restraining order pursuant to § 853(e).  She also argued that because the government sought a "forfeiture money judgment," rather than the forfeiture of specific property, it could not seek the forfeiture of substitute property under § 853(p).  *Id.* at 4-5.  Finally, although she observed that "it is not necessary for this Court to issue a blanket invalidation of money judgment forfeitures as a condition of vacating or modifying the restraining order," her memorandum asserted that "it is indisputable that there is no statute authorizing money judgment forfeitures," and that such judgments "have outlived their usefulness by nearly two decades."  *Id.* at 12-13.

---

[4]    The proposed order was attached to an October 13, 2005 letter from Assistant United States Attorney Kathleen A. Nandan, filed on that date as Document 104.

[5]    This order was filed as Document 105 on October 21, 2005.

[6]    As discussed *infra*, although 18 U.S.C. § 982 governs criminal forfeiture in crimes involving money laundering, that section incorporates by reference the forfeiture procedures of 21 U.S.C. 853.  *See* 18 U.S.C. § 982(b).

[7]    This memorandum was filed as Document 111 on December 15, 2005.

In its December 22, 2005 response to Regina's motion, the government argued that "the statutory framework clearly and unambiguously authorizes," and "the overwhelming majority of courts, including the Second Circuit, have approved," the award of personal money judgments. U.S. Mem. of Law in Opposition to Non-Party Regina Surgent's Mot. to Vacate or Modify the *Ex Parte* Restraining Order ("Gov't Restraining Order Response") 8-10 (citing, *inter alia*, 18 U.S.C. § 982, Fed. R. Crim P. 32.2, and *United States v. Bermudez*, 413 F.3d 304, 307 (2d Cir. 2005) (*per curiam*)).[8] It also asserted that it was appropriate to order the forfeiture of substitute assets to satisfy a personal money judgment and that, in any event, Regina did not have standing to contest the entry of a personal money judgment against her husband. In the alternative, the government argued that it could submit another proposed order that would eliminate the potential problems involving personal money judgments:

> The Third Proposed Order would order the defendant to forfeit the property involved in the money laundering conspiracy, specifically the property wired from his Bank Atlantic account to the Lions Gate Management and Warwick Nominee accounts. The Third Proposed Order would also note that, because the property involved in the offense was wired to third parties overseas, the prerequisites of 21 U.S.C. § 853(p)(1)(B) and (C) have been satisfied. As such, the Third Proposed Order would authorize the government to seek the forfeiture of substitute assets up to the value of the property involved in the offense, namely $2,354,800.00.

*Id.* at 24.

Regina filed a reply on January 17, 2006.[9] In it, she argued that Rule 32.2, as well as principles of equitable and judicial estoppel, prevented the government from seeking the forfeiture of specific property instead of a personal money judgment. She also argued that, even if the government could seek forfeiture of specific property at that juncture, it could not

---

[8] The government's response memorandum is filed as Document 113. A textually identical submission correcting an error in font size was filed on January 3, 2006 as Document 115.

[9] The reply was filed as Document 117.

demonstrate the propriety of the forfeiture of substitute property. The reply also developed Regina's argument that the relevant statutes and case law did not authorize personal money judgments. With leave of the Court, the government filed additional briefing on January 25, 2006, and Regina replied on January 27. Oral argument on the motion was held on February 1, 2006, and I reserved decision.

On March 1, 2006, John Surgent, proceeding *pro se*, filed a memorandum in opposition to the government's motion for a preliminary order of forfeiture and in support of Regina's motion to vacate the restraining order. After another round of briefing on the issues raised by John, I held a status conference on April 10, 2006. At this conference, I made findings of fact and decided both motions on the record. I found that John had transferred $2,151,800 from his Bank Atlantic account to co-conspirator Scott Piccinnini's Lion's Gate Management account in the Bahamas and transferred $203,000 from the same account to co-conspirator Louis Colonna in the Bahamas. I also found that those funds constituted "property involved in the offense within the meaning of Section 982(a)(1) of Title 18." Apr. 10 Tr. 7. I noted, citing *United States v. Bermudez*, that "the government has persuasively argued that the question whether personal money judgments are available against defendants found guilty of money-laundering offenses has been decided [in the affirmative] in this circuit." *Id.* at 9. I also rejected Regina's contention that it was inappropriate to order the forfeiture of substitute property to satisfy a personal money judgment, and concluded that because "the government has demonstrated that [John] Surgent can't satisfy the forfeiture money judgment, as evidenced by the bankruptcy proceedings commenced by Surgent in the District of New Jersey," the government was entitled to seek the forfeiture of substitute property. *Id.* at 9-10. I also held that

Regina would be allowed to assert her ownership interest in the substitute property in an ancillary proceeding under § 853(n). Accordingly, on May 1, 2006, I entered a preliminary order of forfeiture[10] identical to the order proposed by the government on October 13, 2005.

On June 1, 2006, Regina filed a petition pursuant to 21 U.S.C. § 853(n) asserting her interest in the Franklin Lakes property and the Safeguard shares.[11] On June 9, 2006, I referred her petition to Magistrate Judge Steven M. Gold. After lengthy but ultimately unsuccessful attempts to settle their competing claims to these properties, the government and Regina cross-moved for summary judgment, and I referred their motions to Judge Gold. On August 11, 2008, the government filed a motion to amend the preliminary order of forfeiture to include, as substitute property, any interest of John Surgent in the LLC, which currently holds title to the Franklin Lakes property.[12]

Judge Gold's October 31, 2008 R&R recommended that I grant the government's motion with regard to the Safeguard shares, grant Regina's motion with regard to the Franklin Lakes property, and deny both motions with regard to John's interest in the LLC. Both parties filed objections to the R&R on December 9, 2008. During my review of the R&R, I concluded that it would be desirable to hold oral argument both on the issues raised by the parties' objections and on other issues, such as the propriety of personal money judgments, which had arisen earlier in the proceedings. After allowing the parties to submit additional briefing on these issues, I held oral argument on February 27, 2009.

## DISCUSSION

---

[10] The preliminary order of forfeiture was filed as Document 147
[11] Regina's petition was filed as Document 165.
[12] This motion was filed as Document 261. Although this last motion was not explicitly referred to Judge Gold, I assumed that he would address it in his R&R, and he did so.

A.      *The Unavailability of "Personal Money Judgments" Under 18 U.S.C. § 982*

    1.      *"Personal Money Judgments" Versus Orders Forfeiting "Specific Property"*

    Section 982(a)(1) of Title 18 states that a "court, in imposing sentence on a person convicted of an offense in violation of section 1956 . . . of this title [] shall order that the person forfeit to the United States *any property*, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1) (emphasis added). The statute further provides that "[t]he forfeiture of property under this section . . . shall be governed by the provisions" of 21 U.S.C. § 853. *Id.* at § 982(b)(1). Section 853(p)(2) of Title 21 provides that, if certain conditions set forth in 21 U.S.C. § 853(p)(1) are satisfied, "the court shall order the forfeiture of any *other* property of the defendant, up to the value of any property" described in § 853(p)(1) (emphasis added). For the purposes of this discussion, I refer to the property defined by 18 U.S.C. § 982(a)(1), *i.e.*, "any property, real or personal, involved in such offense, or traceable to such property," as "offense property." I refer to the property defined by 21 U.S.C. § 853(p)(2), *i.e.*, "any other property of the defendant," as "substitute property," because I may order its forfeiture only when some or all of the offense property is unavailable for one of five enumerated reasons.

    Federal Rule of Criminal Procedure 32.2 suggests that I discharge this obligation by entering an order that either "set[s] forth the amount of any money judgment" or "direct[s] the forfeiture of specific property." Fed. R. Crim. P. 32.2(b)(2). Following Rule 32.2's terminology, I will refer to the first type of order as a "money judgment" or a "personal money judgment"[13] and to the second type of order as one forfeiting "specific property," or a "specific

---

    [13]      The parties also refer to this type of order as a forfeiture money judgment.

property forfeiture."  As suggested above, "specific property" may refer to offense property, substitute property, or some combination of the two.

2.  *18 U.S.C. § 982 and 21 U.S.C. § 853 Do Not Authorize Personal Money Judgments*

The operational language of § 982(a) and § 853(p) requires me to order the defendant to forfeit "property," and specifies *which* property I shall order the defendant to forfeit: offense property, and, to the extent the offense property is unavailable, substitute property of equivalent value.  Thus, these provisions explicitly authorize me to enter an order forfeiting specific property.  Notably, they speak only of property, and do not mention money judgments at all.  Similarly, the provisions involving the execution of such orders refer to the "seizure" and "disposition" of "property ordered forfeited."  21 U.S.C. § 853(g) ("Upon entry of an order of forfeiture under this section, the court shall authorize the Attorney General to seize all *property ordered forfeited* upon such terms and conditions as the court shall deem proper.") (emphasis added); *id.* at § 853(h) ("Following the seizure of *property ordered forfeited* under this section, the Attorney General shall direct the disposition of the property by sale or any other commercially feasible means . . . .") (emphasis added).  Without cataloguing the functional differences between a personal money judgment and an order forfeiting specific property, it seems clear that only the latter actually orders the forfeiture of specific property.  If only a money judgment is entered, there is no "property ordered forfeited."  Accordingly, while ordering the forfeiture of specific property would discharge the duty imposed on the sentencing court by 18 U.S.C. § 982 and trigger the execution mechanisms described in 21 U.S.C. § 853(g)-(i), it appears that ordering the entry of a money judgment would not.

Other statutes demonstrate that when Congress intends to authorize personal money judgments, it does so explicitly. In the USA PATRIOT Act of 2001, Congress created the new federal crime of "bulk cash smuggling." Like § 982, 31 U.S.C. § 5332(b)(2) provides that "the court, in imposing sentence . . . , shall order that the defendant forfeit to the United States, any property, real or personal, involved in the offense, and any property traceable to such property." However, the relevant section also provides that "[i]f the property subject to forfeiture under [(b)(2)] is unavailable, and the defendant has insufficient substitute property that may be forfeited pursuant to [21 U.S.C. § 853(p)], the court shall enter a personal money judgment against the defendant for the amount that would be subject to forfeiture." 31 U.S.C. § 5332(b)(4). This language authorizes the entry of a personal money judgment, but does so only when an individual is convicted of bulk cash smuggling and has insufficient substitute property. Because Congress knows how to explicitly authorize and require the imposition of a personal money judgment in a forfeiture proceeding, I view its failure to do so in § 982 and § 853 as intentional rather than inadvertent. *Cf. Chapman v. United States*, 500 U.S. 453, 459 (1991) ("Congress knew how to indicate that the weight of the pure drug was to be used to determine the sentence, and did not make that distinction with respect to LSD.").

3. *Rule 32.2 Does Not Authorize Personal Money Judgments*

As the government points out, Rule 32.2 contemplates the use of personal money judgments in criminal forfeiture proceedings. Rule 32.2(b)(1) states that "[i]f the government seeks a personal money judgment against the defendant, the court shall determine the amount of money that the defendant will be ordered to pay." And Rule 32.2(b)(2) provides that "[i]f the court finds that property is subject to forfeiture, it shall promptly enter a preliminary order of

12

forfeiture setting forth the amount of any money judgment." However, I cannot conclude from this language that Rule 32.2 purports to *authorize* the award of personal money judgments.

First, the rules "govern *the procedure* in all criminal proceedings," Fed. R. Crim. P. 1(a)(1) (emphasis added); they do not expand the range of remedies available to the government in a criminal forfeiture proceeding. Even if they could, Rule 32.2 makes no effort to exercise such a power. The Advisory Committee's notes make clear that the rule merely "recognizes" that "[a] number of cases have approved use of money judgment forfeitures," and the "Committee takes no position on the correctness of those rulings." Rule 32.2 advisory committee's notes. Indeed, in the minutes to the Advisory Committee's January 1999 meeting, the chair noted that the committee, by promulgating Rule 32.2, was "only attempting to provide appropriate procedures to follow in those circuits where money judgments are authorized." 1999 WL 1702845 at *10. Accordingly, I now consider whether the Second Circuit has authorized money judgments in forfeiture proceedings under § 982, and, if it has not, whether authority from other circuits persuades me that such judgments should be authorized.

4. *The Case Law Regarding Personal Money Judgments*

Earlier in these proceedings, I opined, citing *United States v. Bermudez*, 413 F.3d 304 (2d Cir. 2005), that "the government has persuasively argued that the question whether personal money judgments are available against defendants found guilty of money-laundering offenses has been decided [in the affirmative] in this circuit." Apr. 10 Tr. 9. Upon further reflection, I conclude that I read *Bermudez* too broadly.[14] In *Bermudez*, the district court first

---

[14]     The government does not contend that I am somehow bound by my earlier ruling, and "the law of the case doctrine does not rigidly bind a court to its former decisions, but is only addressed to its good sense." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009).

"entered a judgment against [the defendant] for $14.2 million, the stipulated amount of funds involved in the money-laundering offense." 413 F.3d at 305. After the "IRS tried unsuccessfully to locate and recover" the laundered funds, the district court entered an "Order of Forfeiture of Substitute Assets" under 18 U.S.C. § 982(b), which, as mentioned above, incorporates by reference the forfeiture procedures of 21 U.S.C. § 853. *Id.* Section 853 both defines the "offense property" that is subject to forfeiture in certain types of criminal cases (narcotics-related offenses) and outlines procedures for the forfeiture of property, including the forfeiture of substitute property, that statutes such as § 982 incorporate by reference.

The problem posed by *Bermudez* was that the procedure for the forfeiture of "substitute property" set forth in § 853(p) incorporates the definition of "offense property" contained in § 853(a). That definition allows for the forfeiture of property that is the "proceeds" of the offense of conviction, rather than property that is merely "involved in" the offense. The defendant in *Bermudez* argued that because the government had shown only that $14.2 million was involved in his money laundering offenses, and not that he had obtained $14.2 million in proceeds from these offenses, he could not be ordered to forfeit substitute assets in that amount. The Second Circuit rejected this argument. It held, in essence, that in a forfeiture proceeding under § 982, offense property (and therefore the value of substitute property that may be forfeited) is defined by reference to § 982(a)(1), not to § 853(a).

Notably, the defendant in *Bermudez* did not argue that the government had erred by seeking a personal money judgment in the first place, instead of an order forfeiting the actual property laundered. As the government now concedes, *Bermudez* is a case where "the Second Circuit affirmed forfeiture orders awarding money judgments without discussion or analysis."

14

Gov't Feb. 24, 2009 Mem. 3; *see also United States v. Fruchter*, 411 F.3d 377 (2d Cir. 2005); *United States v. Vondette*, 352 F.3d 772, 773-74 (2d Cir. 2003). Accordingly, *Bermudez* cannot properly be considered as binding precedent authorizing the award of personal money judgments. *See Webster v. Fall*, 266 U.S. 507, 511 (1924) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

Having agreed that cases like *Bermudez* merely assume, rather than decide, that money judgments are authorized in criminal forfeiture proceedings under § 982, the government contends that *United States v. Robilotto*, 828 F.2d 940 (2d Cir. 1987), proves that this assumption is sound.

*Robilotto* interprets 18 U.S.C. § 1963, the forfeiture provision of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), Pub. L. 98-473, not the money laundering forfeiture provision implicated in this case. More precisely, *Robilotto* interpreted the version of § 1963 that was in effect when the defendant in that case committed his crimes, *i.e.*, the pre-1984 version of that statute. *Robilotto*, 828 F.2d at 948. Prior to its amendment by the Comprehensive Crime Control Act of 1984, RICO's criminal forfeiture provision provided that

> Whoever violates any provision of section 1962 of this chapter . . . shall forfeit to the United States (1) any interest he has acquired or maintained in violation of section 1962 and (2) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962.

Organized Crime Control Act of 1970, Pub. L. 91-452, Title IX, § 901(a), 84 Stat. 922, 943 (1970), *codified at* 18 U.S.C. § 1963(a). Like § 982(a) and § 853(a), § 1963 describes a category

of offense property that a defendant shall be ordered to forfeit.[15]  And like the forfeiture statutes at issue here, § 1963 did not explicitly address the form that the forfeiture sanction should take. That is, it does not say how a sentencing court should carry out its command that a violator of § 1962 "shall forfeit to the United States" any interest described in § 1963(a).  However, other provisions of § 1963 suggest that a court should order the defendant to forfeit specific property: § 1963(c), for example, provides that "the court shall authorize the Attorney General to seize all property or other interest declared forfeited under this section" following a racketeering conviction.

Critically, the first iteration of § 1963 contained no provisions addressing the forfeiture of substitute property.  As a result, it was unclear how a court should proceed when the offense property described in § 1963(a) was not in the defendant's possession -- or even in existence -- at the time of sentencing.  Cases like *Robilotto* address this ambiguity, but they do not purport to resolve it as completely as the government suggests.

In *Robilotto*, the district court entered, pursuant to § 1963(a), an order described only as "a judgment of forfeiture of the monetary proceeds of [appellant] Spagnola's illegal racketeering activity."  828 F.2d at 948.  On appeal, Spagnola contended that "the judgment is invalid because he no longer retains those ill-gotten funds."  *Id.*  The Second Circuit found that "Spagnola's contention [was] premised upon his erroneous belief that the government should be required to trace the proceeds of his racketeering activities to identifiable assets and establish that he had the proceeds at the time of forfeiture."  *Id.*  It held that, "[b]ecause the forfeiture imposed

---

[15]        Prior to the decision in *Robilotto*, the Supreme Court had held that the "profits and proceeds derived from racketeering constitute an 'interest' within the meaning of this statute and are therefore subject to forfeiture." *Russello v. United States*, 464 U.S. 16, 20 (1983).

upon Spagnola is *in personam,* the government need not trace the proceeds of Spagnola's racketeering activities to identifiable assets." *Id.* at 949.

Notably, Spagnola did not contend that the district court erred by imposing a money judgment rather than an order directing him to forfeit specific property. Indeed, from the description given, "a judgment of forfeiture of the monetary proceeds of Spagnola's illegal racketeering activity," *id.* at 948, it is not clear whether the district court in *Robilotto* entered a judgment against Spagnola in an amount equal to the monetary proceeds of his racketeering activity (a personal money judgment), or specifically ordered him to forfeit those proceeds (an order forfeiting specific property). Furthermore, the crux of its holding -- that the government need not trace criminal proceeds to particular property possessed by the defendant at the time of sentencing as a prerequisite to an order of forfeiture -- is equally applicable whether that forfeiture takes the form of a money judgment or an order forfeiting specific property.

*Robilotto* thus stands for the proposition that a forfeiture sanction may be imposed under § 1963(a) even though the offense property is not in the defendant's possession at the time of sentencing. It does not explicitly discuss the form that such a sanction may take. As a result, it is difficult to read *Robilotto*, as the government urges, as a case in which "the Second Circuit expressly addressed the propriety of forfeiture money judgments" and "upheld the entry of the forfeiture money judgment." Gov't Feb. 24, 2009 Mem. 3.

*United States v. Ginsburg*, a Seventh Circuit case frequently read as approving the imposition of money judgments under the original version of § 1963, is similarly ambiguous. In that case, the defendant was "ordered to forfeit his one-half interest in the firm's legal fees, or $225,000, to the government under RICO's forfeiture provision." *Id.* at 799. The Seventh

Circuit rejected defendant's argument that "the trial court's forfeiture order must be vacated because the government failed to prove beyond a reasonable doubt that the legal fees he had received [during the period of his racketeering activity] were still in existence at the time of his conviction in March 1984." *Id.*

These cases, in essence, hold that a defendant cannot escape a forfeiture sanction under § 1963 by divesting himself of the offense property prior to his conviction. In so holding, they represent judicial attempts to address an ambiguity in the forfeiture scheme enacted by Congress. As initially drafted, § 1963 did not specify how a court should effectuate the requirement that a RICO defendant "forfeit to the United States . . . any interest he has acquired or maintained in violation of section 1962." *Robilotto*, 828 F.2d at 948. Nor did the statute address how a court should proceed when a defendant has dissipated such an interest prior to his conviction.

*Robilotto* and *Ginsburg* hold that a defendant must still forfeit the offense property in these circumstances,[16] but they do not address how to carry out this order, and there are several possible ways to do so. The court might authorize the government to seize any offense property possessed by someone other than the defendant; it might enter a judgment

---

[16]  These cases' reliance on the *in personam* nature of a criminal forfeiture proceeding is not entirely persuasive. Personal jurisdiction is certainly a necessary condition for the imposition of a personal money judgment. A court cannot enter a personal money judgment in an *in rem* civil forfeiture proceeding because there is no "person" in that action. But it is not a sufficient condition. A court cannot enter a money judgment forfeiture, or any other criminal sanction, unless some substantive law authorizes it to do so. If Surgent had only been convicted of securities fraud, his sentencing would still be *in personam*. However, as the government acknowledges, I would have no authority to impose a forfeiture sanction in that proceeding because no statute authorized such a sanction at the time Surgent committed his fraud. Thus, the reasoning in *Robilotto* and *Ginsburg* demonstrates that Congress could have drafted 18 U.S.C. §1963 (or § 982(a)) to authorize courts to award personal money judgments that could be executed against untainted property. But the *in personam* nature of such proceedings provides no reason to conclude that Congress actually did so. *See United States v. Voigt,* 89 F.3d 1050, 1086 (3d Cir.1996) ("[I]f the legitimacy of [*Ginsburg* and *Robilotto's*] interpretation of the RICO statute had been beyond doubt, then the addition of a substitute asset provision to the RICO, CCE and money laundering criminal forfeiture schemes would seem superfluous.").

declaring the defendant liable to the government for an amount equal to the value of the offense property (a personal money judgment); or it might order the defendant to forfeit other property up to that value (a specific property forfeiture of substitute property). If the offense property was no longer in existence, the first option -- the only option explicitly suggested by the text of § 1963 -- would not be available. The language of the statute offered no guidance on how to proceed in such circumstances, and *Robilotto* and *Ginsburg*, at most, suggest that the second and third options, neither of which is explicitly suggested by the statutory language, would be equally permissible.

In § 982, however, Congress has adopted the third option. That section directs the court to order the forfeiture of offense property, and, when such property is unavailable for one of the specified reasons, to order the forfeiture of substitute property.[17] This procedure arguably fills the gap at issue in *Robilotto* and *Ginsburg*, because a court may amend such an order, presumably to include property acquired after a defendant is sentenced, "at any time." Fed. R. Crim. P. 32.2(e)(1). Although the prosecutor or the court might prefer to impose a money judgment in other circumstances, Congress has demonstrated that it knows how to authorize this remedy, and has not done so in the context of money laundering offenses. "[W]e should not be in the business of overlooking the plain terms of a statute in order to implement what we, as

---

[17]    In 1984, RICO's forfeiture provision was amended to include operational language similar to that found in § 982(a): "The court, in imposing sentence on such person shall order . . . that the person forfeit to the United States all property described in this subsection." Pub. L. 98-473, § 302 (codified at 18 U.S.C. 1963(a)). The 1984 act also added provisions authorizing the forfeiture of substitute property, but deleted those same provisions, without explanation, later in the same bill. *Id.* at §§ 302, 2301(b). Substitute forfeiture provisions analogous to those in § 853(p) were added by amendment in 1986, Pub. L. 99-570, § 1153(a), and remain in force today. 18 U.S.C. § 1963(m).

federal judges, believe might be better policy." *United States v. Voigt,* 89 F.3d 1050, 1085 (3d Cir. 1996).[18]

Nonetheless, a number of recent cases from other circuits have relied on *Ginsburg*'s reasoning in "[r]equiring imposition of a money judgment on a defendant who currently possesses no assets." *United States v. Casey,* 444 F.3d 1071, 1074 (9th Cir. 2006). In

---

[18]    The Advisory Committee's notes to Rule 32.2 cite *Voigt* for the proposition that the "government is entitled to a personal money judgment equal to the amount involved in the money laundering offense, as well as [*sic*] order forfeiting specific assets involved in, or traceable to, the offense; in addition, if the statutory requirements are met, the government may be entitled to forfeit substitute assets." I respectfully suggest that this reading of *Voigt* is incorrect.

In *Voigt*, the government "brought separate criminal forfeiture allegations under 18 U.S.C. § 982 seeking forfeiture of certain vehicles and pieces of jewelry as either 'involved in' or 'traceable to' Voigt's money laundering activity or as substitute assets under 21 U.S.C. § 853(p)(5) [now § 853(p)(1)(E)]." 89 F.3d at 1081. The court concluded that "the government has proved beyond a reasonable doubt that it is entitled to $1.6 million in criminal forfeiture; that amount represents the property 'involved in' money laundering activity for purposes of § 982(a)(1). What is at issue here is the question of *how* the government may go about seizing property in satisfaction of that $1.6 million amount." *Id.* at 1084-85. The district court had found that the jewelry was traceable to the money involved in the money laundering offense because it was purchased with funds from an account containing both money laundering proceeds and untainted funds. Voigt contended that because the jewelry had been purchased with commingled funds, the government "failed to prove that the money used to purchase [it] was 'traceable to' money laundering proceeds." The government, relying on *Ginsburg* and *Robilotto*, countered that the *in personam* nature of criminal forfeiture "obviates the need for strict tracing," *id.* at 1084, and that it would be bad policy to interpret the term "'traceable to' to require even some tracing." *Id.* at 1085.

The court acknowledged that the fungibility of money made it extremely difficult to trace the property (*i.e.*, the money) involved in a money laundering offense. However, it noted that the provisions permitting the forfeiture of substitute property represented the legislatively mandated solution to this problem. It therefore rejected the argument that this problem gave it license to ignore the plain meaning of § 982(a), concluding that "to accept the government's argument that 'traceable to' does not mean what it says for purposes of commingled property, in effect would render the substitute asset provision a nullity," *id.* at 1087, and held "that the term 'traceable to' means exactly what it says." *Id.* It therefore vacated the forfeiture order, but noted that "the government should be permitted to move to amend the judgment to reflect that the jewelry is forfeitable as a substitute asset." *Id.* at 1088.

*Voigt* states repeatedly that the government "is entitled to $1.6 million in criminal forfeiture." *Id.* at 1084, 1085 n. 19, 1088. However, to read that language as saying that the government is entitle to a personal money judgment in that amount confuses a right with the remedy for vindicating that right. Furthermore, although that case refers to a "forfeiture judgment," it does not appear that the government sought or the district court entered a judgment for the sum of money. Instead, the government sought "forfeiture of certain vehicles and pieces of jewelry," and the district court "ordered forfeiture of, *inter alia*, two pieces of jewelry." *Id*. at 1081. Thus, the government apparently sought, and the district court entered, an order forfeiting specific property. There is no discussion in *Voigt* of whether this property was equivalent in value to the offense property, and, if not, whether the court was authorized to enter a judgment against the defendant in the amount of the deficiency. Accordingly, I believe that the Advisory Committee's notes err in citing *Voigt* for the proposition stated above. Notably, the Third Circuit did not even mention *Voigt* when it decided that personal money judgments were authorized under § 853 in *United States v. Vampire Nation*, 451 F.3d 189 (3d Cir. 2006).

*Casey*, the district court declined to impose a $7,000 money judgment against an Ecstasy-dealing defendant who was virtually insolvent, "explaining that it was not within her authority because [the defendant] Casey had no assets to forfeit." *Id.* at 1072. On the government's appeal, the defendant argued "that the statute [21 U.S.C. § 853][19] does not authorize money judgments but is limited only to forfeiture orders of existing assets." *Id.* at 1073. The Ninth Circuit noted that 21 U.S.C. § 853's definition of property "is not limited to the defendant's current assets, but neither does it explicitly authorize money judgments, which could be satisfied out of the defendant's future assets." *Id.* at 1073. However, the court noted that section § 853 "shall be liberally construed to effectuate its remedial purposes," and that Congress intended criminal forfeiture provisions to eliminate profit from certain criminal activities. *Id.* at 1073. It then concluded that "requiring imposition of a money judgment on a defendant who currently possesses no assets furthers the remedial purposes of the forfeiture statute by ensuring that all eligible criminal defendants receive the mandatory forfeiture sanction Congress intended and disgorge their ill-gotten gains, even those already spent." *Id.* at 1074.

I respectfully disagree. The "mandatory forfeiture sanction Congress intended" for drug offenders is the one it enacted in § 853: an order requiring the defendant to forfeit specific property -- the offense property described in §853(a), and, if applicable, the substitute property described in § 853(p)(2). For money laundering offenders, it intended the sanction it enacted in § 982, which uses operational language identical to § 853's language and incorporates 853(p)(2)'s definition of substitute property, but defines offense property differently. In both cases, the sanction is an order directing the defendant to forfeit specific property, rather than an order establishing that the defendant is liable to the United States for a certain amount of money.

---

[19]  Although *Casey* interprets only § 853, most of its reasoning is applicable to § 982 as well.

Tellingly, the *Casey* opinion does not address the fact that Congress has explicitly authorized personal money judgments in other contexts.

Furthermore, the analysis in *Casey* assumes that when a forfeiture-eligible defendant is insolvent, an order forfeiting specific assets provides no sanction. At best, this assumption will remain untested as long as courts refuse to impose only the forfeiture order authorized by the statutes. At worst, it is unsound: Rule 32.2 states that the government may move "at any time" to amend an existing order of forfeiture to include property that "is substitute property that qualifies for forfeiture under the statute." Rule 32.2(e). Although I do not purport to resolve the issue here, this provision suggests that an order forfeiting specific property would be as effective against after-acquired property as a personal money judgment, provided that a defendant had at least some nominal property at the time of conviction. Thus, rather than insist on an unauthorized money judgment, the government in *Casey* could have sought an order declaring that Casey received proceeds of $7,000 from his crime, finding that he had transferred this property to third parties, 21 U.S.C. § 853(p)(1)(B), and ordering him to forfeit the "approximately $150" worth of funds in his stock account, *Casey*, 444 F.3d at 1073, as substitute property. The government could then move to amend that order to include other substitute assets up to the $7,000 value of the offense property as Casey subsequently acquired them. This is because Fed. R. Crim. P. provides that I may amend an order "at any time" to include additional substitute property subject to forfeiture. Accordingly, I cannot agree with the Ninth Circuit's conclusion that it is necessary, at least in proceedings against insolvent defendants, to construe § 853 or § 982 to authorize the award of personal money judgments.

Finally, *Casey*'s holding relies on its conclusion that the purpose of the forfeiture statute is to "negate[] any [financial] benefit" the defendant receives from his crime and to ensure "he does not profit from his criminal activity." *Id.* at 1074. This conclusion is apparently based on the fact that § 853(a) is concerned with forfeiture of, *inter alia*, "any property constituting, or derived from, any proceeds . . . obtained . . . as the result of" a violation. By contrast, § 982(a)(1) requires the forfeiture of all property "involved in" the offense, which includes by its terms not merely the profit the defendant makes from laundering money, but all of the money actually laundered. Although there is some relief from this sweeping provision for a defendant who acts "merely as an intermediary who handled but did not retain the property in the course of the money laundering offense," § 982(b)(2), the primary focus of the forfeiture statute is on the property involved in the offense, and not on the amount of the defendant's profits. Accordingly, this situation differs significantly from that presented in *Casey*, and it does not follow, given the availability of an order forfeiting the property involved in the offense and the existence in this case of property of substantial value subject to such an order,[20] that an entry of a personal money judgment is necessary here to "effectuate [the] remedial purposes" of 18 U.S.C. § 982. 21 U.S.C. § 853(o).

I recognize that *Casey* is no outlier. In *United States v. Candelaria-Silva*, 166 F.3d 19 (1st Cir. 1999), the defendant objected to the forfeiture of a piece of property as a substitute asset, raising six objections to its inclusion in the final order of forfeiture. Beginning its discussion of the forfeiture issues, the First Circuit stated that:

> A criminal forfeiture order may take several forms. First, the government is entitled to an *in personam* judgment against the defendant for the amount of money the defendant obtained as proceeds of the offense. Second, to the extent

[20]        *See infra* Part D.2.

the government can trace any of the proceeds to specific assets, it may seek the forfeiture of those assets directly pursuant to 21 U.S.C. § 853(a)(1). Third, if as a result of some act or omission of the defendant, the government cannot trace the proceeds to specific assets, it may seek the forfeiture of "any property, cash or merchandise, in satisfaction of the amount of criminal forfeiture to which it is entitled." *United States v. Voigt,* 89 F.3d 1050, 1088 (3d Cir.1996); *see* 21 U.S.C. § 853(p) (authorizing forfeiture of substitute assets).

*Id.* at 42. Notably, the court cited no authority for and did not otherwise explain its conclusion that "the government is entitled to an *in personam* judgment against the defendant" in a proceeding under 21 U.S.C. § 853. This is unsurprising, as the defendant did not challenge that claimed entitlement. However, it also renders the case unpersuasive on the issue before me. *See also United States v. Baker*, 227 F.3d 955, 970 (7th Cir. 2000) ("The district court also stated that the government could enforce its forfeiture award against Baker as a regular in personam judgment. This was proper, too. In effect this places a judgment lien against Baker for the balance of his prison term and beyond." (citing *Candelaria-Silva*, *Voigt*, and *United States v. Lester*, 85 F.3d 1409 (9th Cir. 1996));[21] *United States v. Huber*, 404 F.3d 1047, 1056 (8th Cir. 2005) ("Forfeiture under section 982(a)(1) in a money-laundering case allows the government to obtain a money judgment representing the value of all property involved in the offense, including

---

[21]    In *Lester*, 85 F.3d at 1410, a defendant and his wife held a 3/8 interest in a certain property. In holding that the defendant's undivided ½ interest in this interest was forfeitable under § 853(p), while the undivided ½ interest of his wife was not, the court observed that this holding "not only comports with the plain language of section 853, but it also is consistent with the underlying legal proposition that a criminal forfeiture is an *in personam* judgment against a person *convicted of a crime*." *Id.* at 1413 (internal quotation marks omitted). Thus, *Lester* relied on the *in personam* nature of the proceeding to support its conclusion that while the defendant's property was forfeitable, his wife's was not. *Lester* did not discuss the form that this *in personam* order should take, and it appears that the district court in that case ordered the forfeiture of specific property; *i.e.*, "a preliminary order of forfeiture of various properties which [defendant] owned or had an interest in," *id.* at 1410, rather than a personal money judgment. Thus, *Lester* does not support the proposition for which it is cited in *Baker*.

the money or other property being laundered (the corpus), and any property used to facilitate the laundering offense." (internal quotation marks omitted)).[22]

United States v. Hall, 434 F.3d 42 (1st Cir. 2006), demonstrates how cases like *Candelaria-Silva*, which assume the propriety of personal money judgments in forfeiture proceedings, are subsequently read as establishing the propriety of such judgments. In that case, the defendant, relying on *United States v. Croce*, 334 F. Supp. 2d 781 (E.D. Pa. 2004), argued that the district court could not enter a personal money judgment in a proceeding against an insolvent defendant under 21 U.S.C. § 853. Citing the above-mentioned language from *Candelaria-Silva*, which it construed as a "rul[ing]" of that case, the First Circuit stated in *Hall* that "*Croce* is at odds with the law of this circuit," as well as "several appellate decisions that have addressed the question." 434 F.3d at 59 (citing *Huber*, 404 F.3d at 1056; *Baker*, 227 F.3d at 970; *Lester*, 85 F.3d at 1413; *Robilotto*, 828 F.2d at 948-99; and *Ginsburg*, 773 F.2d at 801-803). It then observed that

> [t]here are two primary reasons for permitting money judgments as part of criminal forfeiture orders. First, criminal forfeiture is a sanction against the individual defendant rather than a judgment against the property itself . . . . Second, permitting a money judgment, as part of a forfeiture order, prevents a drug dealer from ridding himself of his ill-gotten gains to avoid the forfeiture sanction.

*Id.* (internal citations omitted).

*Hall* exemplifies the shortcomings exhibited, to varying degrees, by all of the cases cited by the government. First, it does not even attempt to explain how a statute can authorize personal money judgments when it does not, by its terms, authorize such judgments.

---

[22] This quote from *Huber* underscores how the body of law addressed here strays from the text of § 982. The statute, for better or for worse, does not allow the government to obtain a money judgment representing *the value of* all property involved in the offense. It allows the government to forfeit the *property* involved in the offense.

Second, rather than explaining how the language of the statute it purports to interpret sustains its interpretation, *Hall* relies on cases that either interpret statutes containing meaningfully different language (the pre-amendment RICO forfeiture provision in *Robilotto* and *Ginsburg*), assume the meaning of the statute without examining its terms (*Candelaria-Silva*), or do not even purport to address the propriety of personal money judgments in forfeiture proceedings (*Lester*). Third, *Hall* relies on the *in personam* nature of forfeiture proceedings, a fact that is logically insufficient to establish the availability of personal money judgments. Fourth, it relies on a desire to achieve the purpose of the statute without discussing whether and how the remedies and procedures explicitly described by the statute fail to effectuate that purpose. Fifth, it fails to account for the fact that Congress has explicitly authorized "personal money judgments" in other statutes but did not do so in § 982 or § 853.

Some cases have taken the statutory silence on the question as an endorsement of money judgments. In *United States v. Day*, 524 F.3d 1361 (D.C. Cir. 2008), for example, the D.C. Circuit, while noting that neither § 853 nor 18 U.S.C. § 981 "specifically authorizes money judgments," observed that "nothing in the relevant statutes suggests that money judgments are *forbidden*." *Id.* at 1377. The court cites no authority for the novel proposition that a remedy or sanction not expressly forbidden by Congress is thereby authorized by it. Congress itself obviously takes a different view of the matter; why would it expressly require the imposition of a money judgment in 31 U.S.C. § 5332 if, as *Day* concluded, the mandate to enter such a judgment was inherent in "the open-ended nature of an order forfeiting the proceeds of an offense"? *Id.* (quoting Br. for Appellee at 51).

The court in *Day* also "found it instructive that 21 U.S.C. § 853 contains no language limiting the amount of money available in a forfeiture proceeding to those assets in the defendant's possession at the time forfeiture is ordered." *Id.* at 1377-78; *see also id.* at 1378 ("[21 U.S.C. § 853] is concerned not with how much an individual has but with how much he received in connection with the commission of the crime." (internal quotation marks omitted)). As discussed above, however, "amounts of money" are not "available" in forfeiture proceedings at all -- forfeiture statutes (with the exception of 31 U.S.C. § 5332) are concerned with the transfer of *property*, and not with awarding money judgments to the government. Because the statute at issue here does not contemplate the award of money judgments to the government, it is unsurprising that Congress took no steps to limit such awards. Thus, while the statutory lacuna noted in *Day* is instructive, it does not support that court's conclusion.

The Eleventh Circuit has held that because "28 U.S.C. § 2461(c) authorizes the government to seek forfeiture of specified property 'in accordance with the Federal Rules of Criminal Procedure' and [those rules] explicitly contemplate the entry of money judgments in criminal forfeiture cases," a district court did not exceed its statutory authority in entering a forfeiture money judgment against a mail fraud defendant. *United States v. Padron*, 527 F.3d 1156, 1162 (11th Cir. 2008) (citing Rule 32.2). This conclusion is flawed for two reasons. First, 28 U.S.C. § 2461(c) provides only that when a defendant is convicted of a violation for which "*forfeiture of property* is authorized," the court "shall order *the forfeiture of the property* as part of the sentence in the criminal case pursuant to . . . the Federal Rules of Criminal Procedure." (emphasis added). This provision thus requires only that orders forfeiting specific property be entered pursuant to the federal rules, rather than some procedural scheme of my own design. It

does not authorize me to impose some other forfeiture sanction, such as a money judgment. Second, even if § 2461(c) spoke of forfeiture generally (rather than forfeiture "of property"), the fact that Rule 32.2 "contemplates" personal money judgment forfeiture orders does not mean that it thereby authorizes such judgments. As discussed above, this would be so even if the Advisory Committee's notes had not expressly "take[n] no position as to the correctness of" rulings approving money judgment forfeitures. Fed. R. Crim. P. 32.2 advisory committee's note.

Furthermore, the alleged availability of personal money judgments raises difficult questions as to their effect. Only one of the circuits to endorse such judgments has weighed in on this issue.[23] In *United States v. Vampire Nation*, 451 F.3d 189, 202 (3d Cir. 2006), the Third Circuit declared that "the *in personam* forfeiture judgment may also be distinguished from a general judgment *in personam*. The judgment *in personam* here is one in forfeiture and is limited by the provisions of 21 U.S.C. § 853(a) to [property that is proceeds of or used to facilitate the commission of defendant's crime]."

As an initial matter, it would appear that a "money judgment" limited to specific property is, in fact, nothing more than an order directing the forfeiture of specific property. Assuming, however, that the "limited" money judgment envisioned by the Third Circuit exists, it is difficult to reconcile with the judgment envisioned in *Baker*, which, in effect "places a judgment lien against Baker for the balance of his prison term and beyond." 227 F.3d at 970. In

---

[23]     The Seventh Circuit's decision in *United States v. Tedder*, 403 F.3d 836, 841 (2005) suggests that personal money judgments may only be satisfied by assets traceable to offense property and that forfeiture reaches only "*traceable* substitute assets." (emphasis added). That case involved a forfeiture award of "roughly $2.8 million," and the court stated that "1.7 million of this comes from" an entity created to hold the defendant's criminal proceeds "and the rest stands as a personal money judgment against Tedder to be satisfied out of assets that he had purchased with the tainted proceeds." *Id.* at 840. However, Tedder challenged the forfeiture award only on the grounds that the district court's post-verdict reduction of the forfeiture amount violated his right to a jury trial and that the judge and jury had both overestimated the amount of proceeds Tedder had received. The case therefore does not address the issues presented here.

short, an additional problem with awarding money judgments under these forfeiture statutes is that it is not clear whether or how the execution of such judgments is limited. If the statutes authorize a money judgment that can be enforced in state proceedings against any property of a defendant, it is unclear why Congress would create detailed provisions requiring the court to order the forfeiture of offense property and providing procedures for the execution and enforcement of such orders, including detailed provisions for the forfeiture of substitute property. The fact that the statutes in question do not provide for the enforcement of money judgments suggests that they do not authorize such judgments.

The principal difference between the money judgment sought by the government and the forfeiture order authorized by the statute is that the former could be enforced like any civil judgment, while the latter can be enforced only by the court that entered it. I cannot conclude that Congress would deem this difference irrelevant, as there are legitimate reasons to prefer that the sentencing court oversee both the imposition and the execution of sentences containing federal forfeiture awards.

In sum, a number of early cases interpreting the first iteration of RICO's criminal forfeiture provision suggest that the forfeiture sanction in the original version of 18 U.S.C. § 1963 might be given effect by the entry of a personal money judgment against the defendant. Although subsequent amendments and the addition of substitute property provisions have made that conclusion untenable, courts in other circuits have continued to endorse, and even require, the entry of such judgments. Finding their reasoning unpersuasive, and the text of the forfeiture statute at issue here unambiguous, I conclude that the statute does not authorize the award of a personal money judgment, and that the availability of such judgments in this case is not

necessary to effect the remedial purpose of § 982. Accordingly, to the extent that the government moves for entry of a money judgment in the amount of $2.3 million, its motion is denied, and the order of forfeiture shall be amended accordingly.

B.      *Availability of an Order Forfeiting Substitute Property*

Having determined that it would be improper to enter a money judgment against John Surgent, I next consider whether I am authorized to enter an order requiring him to forfeit substitute property. As discussed above, the government's initial motion for forfeiture sought both entry of a money judgment and an order directing the forfeiture of "any other property of the defendant," *i.e.*, substitute property, "up to the value of the money judgment." Gov't Aug. 26, 2005 Mem. 5. The government subsequently amended its proposed preliminary order of forfeiture to specify the property that should be subject to this order of forfeiture.

Section 982(a) provides that a court, in imposing sentence on a person convicted of an offense in violation of [18 U.S.C. § 1956] . . . shall order that the person forfeit to the United States any property . . . "involved in such offense, or any property traceable to such property." On April 10, 2006, I found that Surgent had transferred $2,151,800 from his Bank Atlantic account to co-conspirator Scott Piccinnini and $203,000 to co-conspirator Louis Colonna. Both transfers were to accounts in the Bahamas. I also found, beyond a reasonable doubt, that those funds constituted "property involved in the offense within the meaning of Section 982(a)(1) of Title 18." Apr. 10 Tr. 7. Accordingly, under § 982(a)(1), I was obliged to order Surgent to forfeit this property to the government.

However, those findings, which identify the offense property in this case, also demonstrate that this property had been transferred by Surgent to individuals in the Bahamas.

Under 21 U.S.C. § 853(p)(1)(B) and (C), "[p]aragraph (2) of this subsection shall apply, if any property described" in 18 U.S.C. § 982(a)(1),[24] "as a result of any act or omission of the defendant . . . has been transferred . . . to, or deposited with, a third party; [or] has been placed beyond the jurisdiction of the court."  Based on the above findings, I conclude that § 853(p)(2) applies in this case.  That provision states that "the court shall order the forfeiture of any other property of the defendant, up to the value of any property described" in § 853(p)(1)(B) and (C). Accordingly, based on the showing made by the government so far, I conclude that I am authorized (and required) to order the forfeiture of substitute property.  And I did so by entering a preliminary order of forfeiture on May 1, 2006.[25]

The Surgents do not dispute that the property identified above was involved in the offense of conviction.  Nor do they dispute that this property was transferred to a third party and placed outside the jurisdiction of this court by an act of the defendant.  Nonetheless, they offer several reasons why an order forfeiting substitute property would be inappropriate in this case.

1.    *Failure to Seek Forfeiture of Offense Property*

First, Regina contends that "the government is not entitled to an order forfeiting substitute property in this case because it has not sought to forfeit specific property enumerated in 21 U.S.C. § 853(a)."  Dec. 6, 2005 Mem. at 6-7.  As a threshold matter, the relevant offense

---

[24]    853(p) (1) explicitly references only subsection (a) of § 853.  However, in *Bermudez*, the Second Circuit held that in money laundering cases, it should be interpreted to refer to § 982(a).  This interpretation is both sensible and binding.

[25]    John Surgent filed for bankruptcy in November of 2002, and my May 1, 2006 order states that "by virtue of the defendant's pending bankruptcy, . . . the Court finds that the elements of 21 U.S.C. § 853(p)(1) have been met."  That conclusion was error.  As a matter of law, it is unclear whether offense property subject to the automatic stay triggered by the filing of a bankruptcy petition would satisfy one of the conditions listed in § 853(p)(1)(A)-(E).  Even assuming that it would, the government made no showing that the offense property in this case, which was transferred to third parties in the Bahamas in 1999, two years before John filed his bankruptcy petition, was unavailable for forfeiture due to the bankruptcy filing.  However, it remains clear that § 853(p)(2) applies in this case,  and my initial error as to why it applies does not alter that conclusion.

property in this case is described in § 982(a), not §853(a).  In any event, the contours of Regina's argument are not entirely clear.  She asserts that "[s]ection 853 permits the forfeiture of substitute property only when the government has pled and proven that [offense] property is subject to forfeiture, but that property is unavailable due to some act of the defendant."  *Id.* at 7.  I agree.  However, the government did plead and prove these facts in their application for a personal money judgment and an order forfeiting substitute property.

Regina also suggests that the government must first explicitly seek (and, apparently, I must enter) an order forfeiting offense property before I may enter an order forfeiting substitute property.  *See* Dec. 6, 2005 Mem. at 8 ("Without an order forfeiting [*offense*][26] property, there can be no order forfeiting *substitute* property.").  Neither the statute, Rule 32.2, nor any cases cited by the Surgents identifies the entry of such an order as a prerequisite to the application for an order forfeiting substitute property.  And if the government can prove that offense property is unavailable, an order forfeiting such property is an exercise in futility.  To the extent § 982(a) imposes a duty to enter such an order, I believe that this duty is discharged once the government shows that the substitute property provisions in § 853(p) are applicable.  Similarly, to the extent that the government has a duty to "seek" the forfeiture of offense property, I believe that duty is satisfied when they identify that property and determine that it is no longer available.

2. *Duty to Locate, Recover, or Trace Offense Property*

Regina also "disagrees with plaintiff's conclusion that, if this proceeding were transformed from a money judgment forfeiture to the forfeiture of specific property, the government would automatically satisfy section 853(p)'s standard for forfeiture of substitute

---

[26]      Regina's filings use the term "specific property" to refer to what I call "offense property."

assets." Jan. 17, 2006 Reply Mem. 14. As discussed in more detail below, there is no need to "transform" this proceeding because, at all relevant times, the government has sought both a personal money judgment and an order forfeiting substitute property. Furthermore, Regina's contention that the government has not satisfied the requirements of § 853(p) is meritless.

Regina does not argue that the government has failed to show that John transferred the offense property to third parties, *see* § 853(p)(1)(B), out of the jurisdiction of this court, *see* § 853(p)(1)(C). Indeed, she virtually concedes the fact, faulting the government for failing to allege that it "employed *any* effort, let alone 'due diligence[,]' to bring the funds transferred overseas from defendant's Bank Atlantic account back within the jurisdiction of the Court." Jan. 17, 2006 Reply Mem. 14; *see also* Dec. 6, 2005 Mem. 8 ("The very definition of substitute property is that it is a *substitute* for [offense] property that cannot with due diligence be located."). However, the requirements of § 853(p)(1) are listed using the disjunctive "or." As a result, if the government shows that offense property "has been placed beyond the jurisdiction of the court," under subparagraph (C), it need not demonstrate that that property "cannot be located upon the exercise of due diligence" under subparagraph (A) before it may resort to the forfeiture of substitute property.

Regina also notes that the government failed to seek a special verdict regarding the offense property at trial and failed to seek an order directing the defendant to have the offense property returned to the jurisdiction. Although the statute authorizes such procedures, its language indicates that these measures are permissive, rather than mandatory. Under § 853(c), offense property "that is subsequently transferred to a person other than the defendant *may* be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United

33

States . . . ." (emphasis added).   And under § 853(p)(3), if offense property is transferred out of the jurisdiction of the court, "the court *may, in addition to any other action authorized by this subsection*, order the defendant to return the property to the jurisdiction of the court . . . ." (emphasis added).   The statute does not suggest that these measures *must* be taken, or that a failure to take them affects the availability of an order forfeiting substitute property in any way.

Regina notes that "[t]he government also has not alleged, let alone established, that it cannot locate property 'traceable to' the offense."  Jan. 17, 2006 Reply Mem. 14.   While Congress might reasonably have required the government to make some effort to trace the proceeds of the property involved in the offense before allowing it to seek forfeiture of substitute property, the statute it enacted imposes no such duty.   Under § 853(p)(1), the substitute property provisions "shall apply . . . if *any* property described" in § 982(a)(1) has been placed beyond the court's jurisdiction.   That includes "any property" involved in the offense "*or* any property traceable to such property" (emphasis added).   Here, the government has shown that the property involved in the offense is unavailable, and the substitute property provision requires nothing more.   The only apparent consequence of the government's failure to identify traceable property is that I cannot order the forfeiture of *that* property under 18 U.S.C. § 982(a) or property of equivalent value under § 853(p)(2).

3.      *The Notice Requirement of Rule 32.2(a)*

Regina contends that the forfeiture count in John's indictment made it clear that the government would be seeking only a money judgment, and argues that Rule 32.2 "makes it clear that the government is bound at trial by the terms of the indictment."  Jan. 17, 2006 Reply Mem. 12.  Both her premise and her conclusion are flawed.

Regina's argument, it appears, is based on the statement in the indictment that the government will seek forfeiture of "a sum of money equal to $2,314,800." Indictment at ¶ 17. This language arguably refers to a sum of money, rather than the specific greenbacks laundered by John. That is, it suggests that the government would seek a money judgment rather than an order forfeiting specific property.

However, other language in the indictment demonstrates that the government is attempting to use this language to describe specific property. Paragraph 17 states that "the government will seek forfeiture . . . of all property involved in the offense of conviction," and that this property "includ[es] but [is] not limited to" the $2,314,800. And in paragraph 18, the government states that, if authorized, it will seek the forfeiture of substitute property, including the Franklin Lakes property. *Id.* at ¶ 18. Thus, the indictment did not signal to John that the government would pursue forfeiture only in the form of a money judgment.

Furthermore, the notice requirement of Rule 32.2(a) provides only that "[a] court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as a part of any sentence in accordance with the applicable statute." Even if the indictment had said that the government would be seeking only a money judgment pursuant to the applicable statutes, John would have been on notice that the government would seek the forfeiture of property -- the only reason to seek such a judgment would be to use it to take a defendant's property away from him. The indictment, which stated that, "upon [John Surgent's] conviction of [conspiracy to commit money laundering], the government will seek forfeiture in accordance with [18 U.S.C. § 982], of all property involved in the offense of conviction in

violation of [18 U.S.C. § 1956] and all property traceable to such property as a result of the defendant's conviction of Count Three of this Superseding Indictment," Indictment at ¶ 17, makes the government's intent even more clear. The fact that one item of property they mentioned might technically not be deemed property does not change that conclusion.

Regina also cites *United States v. Bornfield*, 145 F.3d 1123, 1138 (10th Cir. 1998), as a case "vacating [a] forfeiture special verdict because [the] government changed [its] theory of forfeiture from [the] time of indictment to [the] time of trial." Jan. 17, 2006 Reply Mem. 12. *Bornfield* contains no such principle. In that case, the government did not change its "theory" of forfeiture -- the indictment stated that the government would seek an order forfeiting offense property, and the government asked the jury to find that the property specified was, in fact, offense property. What changed in *Bornfield* was the way the indictment described that property. The indictment initially referred to "account number [x] and the contents thereof at Sunwest Bank," *Bornfield*, 145 F.3d at 1133, but it was amended to "$13,007.42 located in account number [x] at Sunwest Bank." *Id.* at 1134. The court ultimately concluded that while the initial description was potentially tenable, the amended description, which was submitted to the jury, did not, as a matter of law, describe offense property. Accordingly, by finding otherwise, the jury clearly erred. Thus, the dispositive fact in *Bornfield* was that the amended allegation -- the one on which the jury's verdict was based -- was untenable as a matter of law. The court attributed no significance to the mere fact, standing alone, that that the forfeiture allegation had been amended.[27]

---

[27] Even if Regina had correctly discerned the holding of *Bornfield*, it would have no applicability here. In this case, the government contends it is entitled to a money judgment and to an order forfeiting substitute property. The latter request is entirely consistent with the forfeiture allegation in paragraph 18 of the indictment.

Regina also contends that principles of equitable and judicial estoppel bar "the government's attempt to change horses in mid-stream." Jan. 17, 2006 Reply Mem. 12. However, the government never indicated, either in the indictment or in its motions for forfeiture, that it intended to seek only a money judgment and not the forfeiture of substitute property. Instead, the government has consistently sought both types of order. The fact that I cannot issue one of them does not bear on my ability to issue the other.

4. *John's Right to a Jury and Estoppel*

Regina argues that allowing the government to change its theory of forfeiture implicates John's right to a jury determination of the relevant forfeiture issues and principles of judicial and equitable estoppel. As discussed above, Rule 32.2(b)(1) provides that "[i]f the government seeks forfeiture of specific property, the court must determine what property is subject to forfeiture under the applicable statue. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." According to Regina, there is a world of difference between these two inquiries, and the former is far more onerous than the latter.

Regina further suggests that the jury trial provision of 32.2(b)(4)[28] applies only to the forfeiture of specific property. That portion of the rule provides that "[u]pon a party's

---

The former request is arguably less consistent with the indictment. However, because I have already concluded that I cannot grant this request for other reasons, any inconsistency is largely academic.

[28] Section (b)(4) replaces Rule 31(e), which provided that the jury in a criminal case must return a special verdict "as to the extent of the interest or property subject to forfeiture." In *Libretti v. United States*, 516 U.S. 29 (1995), the Supreme Court held that criminal forfeiture was an aspect of sentencing, and therefore did not implicate any constitutional right to a jury trial. It therefore concluded that the special verdict requirement of Rule 31(e) was, in effect, a statutory right that could be modified or repealed at any time. Nonetheless, the Committee "decided to retain the right for the parties, in a trial held before a jury, to have the jury determine whether the government has established the requisite statutory nexus between the offense and the property to be forfeited," but stated that the jury "would not have any role in determining whether a defendant had an interest in the property to be forfeited," an issue that would be resolved in an ancillary proceeding 'before the court alone, without a jury.'"

request in a case in which a jury returns a verdict of guilty, the jury must determine whether the government has established the requisite nexus between the property and the offense committed by the defendant."  In *United States v. Reiner*, 393 F. Supp. 2d 52, 56 (D. Me. 2005), the court concluded that because no nexus determination is necessary to determine "the amount of money" a defendant will be ordered to pay, a defendant has no right to a jury trial on issues of forfeiture when the government does not request "forfeiture of identifiable property," and seeks "only an *in personam* money judgment" against a defendant.  This holding is inapplicable in this case, where the government has sought both a money judgment and an order forfeiting specific property.  Furthermore, it is untenable, because a determination of the "amount" issue for a personal money judgment necessarily entails a determination of the value of the property "involved in" the offense.  In other words, assuming *arguendo* a court can award a personal money judgment of forfeiture, how does the fact-finder determine the "amount" that the defendant must pay?  The only sensible answer is that this amount is equal to the value of what I have termed "offense property," *i.e.,* the property that the court "shall order" the defendant to forfeit once he is convicted of an enumerated violation.  *See* § 982(a)(1); § 853(a).  Under § 982(a)(1), that means the value of "any property involved in" the offense "or property traceable to such property."

         This amount cannot be ascertained, however, until the offense property is identified.  That is, the government must demonstrate the requisite nexus between the offense and some property.  This accords with the approach of courts that have endorsed the award of forfeiture money judgments -- in *Casey*, for example, the court found that the district court erred by refusing to impose a money judgment for "forfeiture of the proceeds" of a drug sale, and the

---

(citing 21 U.S.C. § 853(n)(2)).  The Advisory Committee's notes do not discuss how to reconcile the availability of a personal money judgment in forfeiture proceedings with the scope of the right to a jury trial.

term "proceeds" was relevant because that is how the relevant statute, 21 U.S.C. § 853(a), describes offense property. 444 F.3d at 1073. Neither the parties nor the *Reiner* opinion suggest any other method by which the amount the defendant shall be ordered to forfeit should be ascertained. Accordingly, in a hypothetical money judgment case, the government would first need to establish that certain property was involved in an offense. It would then need to demonstrate the value of that property. This value, once found, establishes the "amount" of the judgment that the defendant will be ordered to pay.

This analysis makes it clear that to obtain any forfeiture sanction, the government must establish a nexus between some property and the offense of conviction. Once this nexus is established, the government must also demonstrate the value of such property if it seeks a money judgment, because that value will dictate the appropriate amount of the money judgment. The government must also demonstrate the value of the offense property if it intends to seek forfeiture of substitute property, because a court can only order the forfeiture of substitute property "up to the value of" any offense property. § 853(p)(2).

However, Rule 32.2(b)(4), on its face, provides the right to a jury trial only on the first issue, the "nexus between the property and the offense committed."[29] Thus, regardless of whether the government seeks a money judgment or forfeiture of specific property, the defendant has the right to try only a single issue -- the nexus issue -- to the jury. Accordingly, the government's theory of forfeiture has no effect on the scope of a forfeiture defendant's jury trial right or the consequences of waiver. I am therefore not persuaded by Regina's argument that John waived his jury right, believing it to be worthless, because the government indicated in the

---

[29] It is possible that Rule 32.2 implicitly provides a jury trial on the value of the original property (1) when the government seeks forfeiture of substitute property, (2) when the government seeks a forfeiture money judgment, (3) or in both situations.

indictment that it would be seeking a money judgment rather than an order forfeiting specific property. Nor can she maintain that John waived his right to a jury trial only on the "amount" issue and not the "nexus" issue, because the former necessarily includes the latter, and John had a right to a jury trial only on the nexus issue, regardless of the government's theory of forfeiture.

Regina also suggests that principles of estoppel somehow nullify John's waiver. The thrust of this argument is that, in waiving his jury trial, John reasonably relied, to his detriment, on the government's representation that it would only seek a money judgment rather than the forfeiture of specific property. This argument fails for several reasons. First, as a factual matter, there is no indication that John's decision to waive his jury trial right was influenced by the government's theory of forfeiture. Second, the indictment did not signal that the government would be seeking only a money judgment. Finally, as discussed above, regardless of the government's theory of forfeiture, the only issue that the defendant could force the government to try to a jury, the nexus issue, is the same whether the government seeks a money judgment, the forfeiture of specific property, or both. Accordingly, I am not persuaded by the argument that John's decision to waive his right to a jury trial was improperly influenced by the way the government sought forfeiture.

C.      *Procedural Concerns Regarding the Forfeiture of Substitute Property*

Based on the foregoing, I conclude that I must "order the forfeiture of any other property of the defendant, up to the value of" the offense property identified by the government, which is approximately $2.3 million. 21 U.S.C. § 853(p). I next consider the procedure to be followed in doing so.

1.     *The Government Must Show That the Substitute Property It Seeks to Forfeit Is Property of the Defendant Before an Order Forfeiting that Property May Be Entered*

Rule 32.2(e) governs the forfeiture of "substitute assets" and "subsequently located property." With respect to the former, it provides:

> (1) In general. On the government's motion, the court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that . . .
> (B) is substitute property that qualifies for forfeiture under an applicable statute.
> (2) Procedure. *If the government shows that the property is subject to forfeiture under Rule 32.2(e)(1), the court must:*
> (A) enter an order forfeiting that property, or amend an existing preliminary order or final order to include it; and
> (B) if a third party files a petition claiming an interest in the property, conduct an ancillary proceeding under Rule 32.2(c) (emphasis added).

Under the plain language of this provision, the court is not required to enter an order forfeiting "substitute property" until the "government shows that the property is subject to forfeiture under Rule 32.2(e)(1)." This is done by showing that the property "is substitute property that qualifies for forfeiture under an applicable statute." In this case, the applicable statute is § 853(p)(2), which requires the court to forfeit property "of the defendant." Under Rule 32.2(e)(2), therefore, the government must show that any alleged substitute property is property "of the defendant" before an order forfeiting that property may be entered. This is consistent with Rule 32.2(b)(1), which provides that, "[a]s soon as practicable after a [conviction] on any count . . . regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute," and Rule 32.2(b)(2), which provides that "[i]f the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture . . . directing the forfeiture of specific property without regard to any third party's interest in all or part of it." Section (e) simply provides the procedure for the court to

follow in determining whether *substitute* property is subject to forfeiture. *See United States v. Messino*, 122 F.3d 427, 429 (7th Cir. 1997) (suggesting, in dicta, that district court erred by ordering the forfeiture of substitute property without finding that the defendant owned the property).

The government argues that "[i]n obtaining a forfeiture order including substitute assets, the Government need not prove the defendant's interest in those assets. Instead, ownership issues are deferred to the ancillary proceeding where potential claimants bear the burden of proving their legitimate right, title or interest in the assets by a preponderance of the evidence." Gov't Feb. 24, 2009 Mem. 4. The government's argument erroneously relies on the Advisory Committee's notes' discussion of Rule 32.2(b), which states that the "new rule [32.2] resolves" difficulties presented by the old rules "by postponing the determination of the extent of the defendant's interest until the ancillary proceeding." Fed. R. Crim. P. 32.2 advisory committee's notes. Although the notes do not explicitly say so, the language on which the government relies obviously addresses the procedure for orders forfeiting offense property. The offense property provision requires the forfeiture of property "involved in" the crime, and is not explicitly limited to property "of the defendant." Accordingly, when the government seeks an order forfeiting offense property, the government need not make a preliminary showing of the defendant's ownership to show that the property is subject to forfeiture under § 982(a), and "the ancillary proceeding has become the forum for determining the extent of the defendant's forfeitable interest in the property." Rule 32.2 advisory committee's notes.[30] As the Advisory

---

[30]    The government's reliance on *De Almeida v. United States*, 459 F.3d 377, 381 (2d Cir. 2006), is misplaced for the same reason. When that case states, correctly, that "[t]he statutory wording makes sufficiently clear that criminal forfeiture is not a measure restrict to property owned by the criminal defendant; it reaches *any* property that is 'involved' in the offense," it is explicitly referring to the "offense property" provisions of 18 U.S.C.

Committee's notes make clear, that procedure spares both trial courts and juries the need to complicate criminal trials with litigation over a defendant's (or several co-defendants') ownership interests in property "used to commit the offense." *Id.* That concern has never attended the forfeiture of substitute property.

Moreover, the statute makes clear that I cannot determine whether substitute property "is subject to forfeiture," Rule 32.2(b)(2), (e)(2), without first finding that it is property "of the defendant." Thus, I conclude that these passages in the notes pertain only to the forfeiture of offense property, and therefore shed little light on the issue at hand. In any event, it would be improper to rely on the Advisory Committee's notes to relieve the government of a burden plainly imposed by both the statute and the text of the rule. *Cf. United States v. Nahodil*, 36 F.3d 323, 328 (3d Cir. 1994) ("Although advisory committee notes [to the Federal Rules of Civil Procedure] are due some deference, they cannot be allowed to contradict the express language of a Rule and its authorizing statute." (internal citations omitted)).

The government also directs me to Rule 32.2(c)(2), which states as follows: "When the ancillary proceeding ends, the court must enter a final order of forfeiture by amending the preliminary order of forfeiture as necessary to account for any third-party rights. If no third party files a timely petition, the preliminary order becomes the final order of forfeiture if the court finds that the defendant (or any combination of defendants convicted in the case) had an interest in the property that is forfeitable under the applicable statute." According to the

---

§ 982(a)(1) and 21 U.S.C. §853(a)(1). *United States v. Lazarenko*, 575 F. Supp. 2d 1139, 1142 (N.D. Cal. 2008), *amended on reconsideration*, 2008 WL 4858151 (N.D. Cal. Nov. 10, 2008) similarly discusses an order forfeiting offense property. Though *United States v. Power Co., Inc.*, 2008 WL 612207 at *4 (D. Nev. 2008), states that "[t]hird parties who wish to assert a claim . . . must wait until after . . . the district court has ordered the property forfeited," it does not appear to address the finding a district court must make before ordering the forfeiture of substitute property.

government, this provision suggests that the defendants' interest in any potentially forfeitable property is either established during an ancillary proceeding, or, if no petitions are filed, after the time for filing has passed.

I believe that this language demonstrates the Advisory Committee's belief that it is best to determine the defendant's interest in forfeitable property during an ancillary proceeding. However, this language does not purport to relieve the government of its burden, imposed by sections (b)(2) and (e)(2) of the same rule, to show that any alleged substitute property is "subject to forfeiture." In cases involving substitute property, the government must do so by showing that the property in question is property "of the defendant."[31] Thus, my preliminary order of forfeiture was erroneous because it ordered the forfeiture of property without any preliminary showing by the government.

2. *Burden and Standard of Proof*

As discussed above, Rule 32.2(e)(1)-(2) requires me to enter an order forfeiting substitute property if "the government shows" that the property "is substitute property that qualifies for forfeiture under an applicable statute." This language places the burden on the government to show that some piece of property is substitute property under § 853(p).[32]

As to the burden of persuasion, the Second Circuit has held that the Sixth Amendment does not require a judge to consider only facts found by a jury beyond a reasonable doubt in imposing criminal forfeiture sanctions under RICO, *United States v. Fruchter*, 411 F.3d

---

[31] At most, the language in (c)(2) apparently requires me to make a redundant finding in substitute property cases where no third-party petitions have been filed. However, the timely petition in this case renders that language inapplicable.

[32] Section 853 forbids the intervention of third parties "except as provided in subsection (n)." Subsection (n), in turn, is only implicated "[f]ollowing the entry of an order of forfeiture under this section." Thus, Regina's earlier intervention via her motion to vacate the restraining order was technically improper. I note, however, that the arguments she made during that motion, many of which have been helpful in resolving the current motions, were adopted by reference by her husband, who is a proper party to these proceedings.

377 (2005), and suggests that such forfeiture determinations are governed by a preponderance standard. ("So long as the sentencing court finds by a preponderance of the evidence that the criminal conduct through which the proceeds were made was foreseeable to the defendant, the proceeds should form part of the forfeiture judgment."); *see also United States v. Capoccia*, 503 F.3d 103, 116 (2d Cir. 2007) ("Sentencing courts determine forfeiture amounts by a preponderance of the evidence." (citing *Fruchter*)). Other circuits have held that "the government's burden for forfeiture under § 982(a)(1) is the preponderance standard." *Voigt*, 89 F.3d 1050; *see also United States v. Myers*, 21 F.3d 826 (8th Cir. 1994). I can see no reason to apply a different standard under § 853(p)(2).

In its August 2008 motion to amend the preliminary order of forfeiture, the government states that "[w]hatever the appropriate burden is, it cannot be higher than probable cause," Aug. 11, 2008 Mem. 4 n.4, and that "it is difficult to imagine meeting a higher burden in an *ex parte* proceeding." *Id.* It also notes, correctly, that "the probable cause standard governs the pre-trial seizure and restraint of property." *Id.*

The government's arguments are unpersuasive. Although it does not appear that third parties may oppose the government's initial application for an order forfeiting substitute property, *see* 21 U.S.C. § 853(k), the defendant himself may oppose such a request. Indeed, such an order is a part of the defendant's sentence, and it would be quite anomalous to make a sentencing determination without the defendant's participation. The statute explicitly provides that a request for a pre-trial restraining order is made *ex parte* and requires only a finding of probable cause. 21 U.S.C. § 853(e)(2). However, the statute makes no such provisions for an order forfeiting substitute property.

It seems clear that a motion for an order forfeiting substitute property is more analogous to an order forfeiting offense property. As discussed above, both motions require the court to make findings regarding both the identity of the offense property and its unavailability. The government concedes that these facts must be found by at least a preponderance standard, and does not suggest that a defendant has no standing to oppose such a request. In some cases, a defendant may not have incentive to oppose the government's attempt to prove that certain property belongs to him. But I fail to see why this fact should result in imposing a lesser burden on the government in establishing the defendant's interest in the property.

  3.  *What is property "of the defendant"?*

  Section 853(p)(2) allows me to order the defendant to forfeit only property "of the defendant." Because property subject to forfeiture under § 853(b) includes "real property . . . and tangible and intangible personal property, including rights, privileges, interests, claims, and securities," the "of the defendant" language requires me to find that the defendant has a cognizable property interest in the property the government moves to forfeit. In other words, just as I must find a nexus between property and the offense in order to forfeit it as offense property under § 982(a), I must find a nexus between property and the defendant in order to forfeit it as substitute property under § 852(p).

  Judge Gold concluded that the extent of the defendant's interest in substitute property is defined by state law. R&R 15-23. Although the Second Circuit has not reached the issue, the Ninth Circuit has persuasively argued that "[s]tate law determines whether [third-party claimants proceeding under § 853(n)] have a property interest, but federal law determines whether or not that interest can be forfeited." *United States v. Nava*, 404 F.3d 1119, 1127 (9th

Cir. 2005).  I see no reason why the same analysis should not guide my determination whether the government has demonstrated defendant's property interest in any alleged substitute property.  *See also United States v. Lee*, 232 F.3d 556, 560 (7th Cir. 2000) (stating, without analysis, that "[w]e look to state property law to determine whether [the defendant's] interest in the [substitute property] was a property interest subject to forfeiture").  Although the Eleventh Circuit disagreed with *Lee* in *United States v. Fleet*, 498 F.3d 1225, 1231 (11th Cir. 2007), both cases assume that the extent of a defendant's interest in property is determined by reference to state law.  In other words, both courts implicitly relied on state law to determine whether the property in question was property of the defendant; they disagreed only about whether that property may be forfeited under § 853(p) despite Florida's homestead exemption.

The cases cited by the government in its objections conclusively establish that some courts in fact rely on federal common law to determine the scope of a defendant's property interest in criminal forfeiture proceedings.  However, they fail to convince me that it is proper to do so.  Some of the cases simply do not acknowledge the issue.  *Compare United States v. Bankston*, 182 F.3d 296, 319 (5th Cir. 1999) (agreeing, without analysis, "with the district court's decision not to allow an obviously false partnership agreement to be used to provide the basis for a claim of interest under § 1963(l)(6)(A))," *with Nava*, 404 F.3d at 1128 (explaining why the court was not "free to reject the role of state law when, irrespective of whether the state would recognize the title, we think the transaction is a sham" (internal citation and quotation marks omitted)). *See also United States v. Ida*, 14 F. Supp. 2d 454 (S.D.N.Y. 1998) (rejecting third-party Hickey's petition challenging forfeiture of property titled in his name because the "overall picture that emerges here is one of calculated deception, the object of which is to

47

suspend a fig leaf between the gaze of the Court and the grim realities of Hickey's relationship with [racketeering defendant] Ida"). Others purport, without analysis, to apply federal common law rules derived from cases that actually involve straightforward exercises in statutory interpretation.[33] *United States v. Totaro*, 345 F.3d 989, 996, 999 (8th Cir. 2003), in deciding to graft federal common law rules onto state property law, states that to do otherwise "would do a severe disservice to the intent and purpose of the RICO forfeiture statute" and that "[s]tate property law cannot trump the government's right to forfeiture." This analysis fails to recognize that the statute, as written, already reflects Congress's conception of the proper balance between the punitive goals of criminal forfeiture and the interest of the states and their citizens in a coherent property regime. *See also Nava*, 404 F.3d at 1128-29.

The government's analysis of *Nava* in its objections is similarly unpersuasive. Gov't Obj. 36. To the extent the *Nava* court demonstrated a willingness to overlook "bare legal title" in certain circumstances, it did so only because it concluded that Montana law did so. *See Nava*, 404 F.3d at 1130 ("Montana courts have recognized that 'dominion and control' is the

---

[33]     Both *United States v. Scardino*, 956 F. Supp. 774, 778 (N.D. Ill. 1997), which the government cites, and *United States v. Infelise*, 938 F. Supp. 1352, 1369 (N.D. Ill. 1996), on which *Scardino* relies, suggest that federal courts "generally do not recognize claims made by third parties who possess title to property but, the evidence shows, do so only as nominal or straw owners on behalf of a defendant." Neither of the cases cited for this proposition in *Infelise* remotely suggests that federal courts should properly look to federal common law to determine whether a defendant has a forfeitable interest in substitute property. *United States v. Granado*, 72 F.3d 1287, 1293-94 (7th Cir. 1995), holds that a sentencing court can consider assets nominally held by another in determining the "financial resources" of the defendant, 18 U.S.C. §3572(a)(1), because "[n]othing in either the statute or the guideline precludes" such consideration. 1293-94.

            *Infelise*'s citation to *United States v. Herrero*, 893 F.2d 1512, 1542 (7th Cir. 1990), on this point is puzzling. Although the facts of *Herrero* demonstrate that one defendant in that case served as the "straw man" of another defendant with regard to the forfeited property, *id.* at 1519, the Seventh Circuit did not attribute decisional significance to that fact. The decision in *Herrero* does not rely on a common law rule regarding nominal ownership, but on a straightforward application of 21 U.S.C. § 853(d), which establishes a rebuttable presumption of forfeitability if certain conditions are satisfied. This statutory presumption, incidentally, is the only part of § 853 that is explicitly not incorporated into § 982 by reference. Indeed, *Herrero*, like state property law, implicitly recognizes the legitimacy of "nominal" ownership -- section 853(d) provides for the forfeiture of "any property *of a person convicted*" of certain crimes, and the government sought the forfeiture as a part of the sentence of the straw man defendant, rather than the defendant on whose behalf he held the property.

essence of ownership and not 'bare legal title.'").  Absent some showing of its validity in the courts of New Jersey, however, the doctrine of bare legal title has no apparent relevance here.

Indeed, the government concedes that state law determines whether a claimant in an ancillary proceeding has an interest in property, but contends that "federal law determines whether that interest is sufficient to defeat the government's interest in the property under the federal forfeiture statute."  Gov't Obj. 28 (quoting *United States v. 392 Lexington Parkway South*, 386 F. Supp. 2d 1062, 1069 n.10 (D. Minn. 2005)).  However, I cannot weigh the competing interests of the claimant and the government until the government's interest in the property is ascertained.  Under § 853, the government's interest is coextensive with that of the defendant, because it is entitled only to the forfeiture of property "of the defendant."  As discussed above, a claimant's burden to demonstrate an interest superior to that of the defendant does not arise until the government has proven the extent of the defendant's interest.  Accordingly, I now look to whether the government has done so with respect to the property it seeks to forfeit.

D.      *John Surgent's Interest in the Substitute Assets*

1.      *The Franklin Lakes Property*

a.      *Factual Allegations Regarding the Franklin Lakes Property*

The Surgents purchased the Franklin Lakes property on December 29, 1988.  Regina held title to the property and claims that she funded the purchase with her own assets, although the government suggests that some of the purchase money came from her husband.  Regina transferred title to the property to John on July 3, 1995, at which time John used the property as collateral for a $600,000 loan from Hudson City Bank.  On October 31, 1995,

Midatlantic Bank issued a $215,000 line of credit also secured by the property.  John apparently transferred the property back to Regina in July 1995, although the transfer was not recorded until July 1, 1996.

On September 7, 1999, Regina transferred the property to RH Surgent LLC, a Nevada Limited Liability Company created on or about August 16, 1999.  Regina testified that the property was transferred to the LLC for estate planning purposes, but John also testified that the purpose of the transfer was "asset protection" in case John got "jammed up."  Gov't Obj. 11 (internal quotation marks omitted).  John's accountant paid the LLC's expenses, which included payment on the loans secured by the Franklin Lakes property and totaled several thousand dollars a month.  Neither Regina nor the LLC reported these payments as income, and the LLC never filed a tax return.  John claimed the mortgage interest deductions relating to the Franklin Lakes property on his individual tax returns, and included the value of the property in a statement of his individual net worth submitted in the LLC's January 2000 application for another mortgage on the property.  In connection with this mortgage, John stated that he was the manager of the LLC and that both he and Regina were the member or partners thereof.  The LLC's Articles of Incorporation state that the LLC is to be run by its managers and lists Regina as the sole manager and the organizer executing the Articles of Organization.  The Articles do not contain a list of members or any information about attaining membership status, and subsequently filed annual lists of managers or members list Regina as the sole manager and do not identify any members.  R&R 30.

The government also alleges that between March 15, 1999 and November 14, 1999, approximately $1.4 million in proceeds from John's securities fraud was used to renovate

the property.  It does not specify which of these transfers were made when Regina, as opposed to the LLC, held title to the property.  The government also argues that the 2000 mortgage was obtained using the proceeds of John's securities fraud, and that approximately $500,000 of the mortgage was used to fund renovations of the property.

b.    *The Legal Significance of these Facts*

The government contends that John's interest in the Franklin Lakes property consists of the $1.9 million in proceeds from his securities fraud that he spent renovating the house and a marital interest in one-half of the remaining equity.  After carefully considering marital law and the doctrines of resulting trusts and constructive trusts, Judge Gold concluded that neither John's status as Regina's spouse nor his investment of alleged criminal proceeds in the property gave rise to a property interest under New Jersey law.  R&R 12-15.  In its objections, the government's sole argument with reference to state law is that "[e]ven if the Court were to rely solely upon New Jersey law (which it should not), it is clear that Ms. Surgent cannot claim [a]n interest in the over $1.9 million of criminal proceeds invested in the home because, under New Jersey law, "[a] thief cannot acquire lawful title to property purchased with stolen funds."  Gov't Obj. 30.  For this proposition, it cites a single unreported decision from the appellate division of the New Jersey Superior Court, *Bound Brook Ford, Inc. v. Seabolt*, 2007 WL 789115 (Mar. 19, 2007).  *Bound Brook Ford* in turn cites *O'Keefe v. Snyder*, 83 N.J. 478 (1980), which holds that "the thief acquire[s] no title and [cannot] transfer good title to others regardless of their good faith and ignorance of the theft."

This proposition is of no use to the government.  If New Jersey law would regard Surgent as a thief, then he would have no interest in the money he stole or the property he

51

purchased with it. Consequently, it would not be regarded as property of the defendant under New Jersey law. Thus, to the extent that *O'Keefe* denies Regina some interest in the Franklin Lakes property, it also denies that interest to John, and, by proxy, the government.

The government analogizes this case to *United States v. Totaro*, 345 F.3d 989 (8th Cir. 2003). In that case, title to the property was held by defendant's spouse, and she had proven "a substantial legal interest, title or claim to the property" in an ancillary proceeding challenging forfeiture of the entire property following defendant's conviction under RICO. *Id*. at 996. The court also found that "but for" the defendant's RICO proceeds, which "paid the mortgage, real estate taxes and upkeep on the property," defendant's wife would not have been able to retain ownership of the property. *Id.* The court therefore determined that the defendant had acquired an interest in the property, and that this interest was forfeited under 18 U.S.C. § 1963(a), which provides that a defendant convicted of a RICO violation "shall forfeit to the United States, irrespective of any provision of State law (1) any interest the person has acquired or maintained in violation of RICO." *Id.* at 998-99 (quoting 18 U.S.C. § 1963(a)(1)).

Implicit in this analysis is a conclusion that the use of RICO proceeds to maintain the home did not give the defendant an interest in that property under state law, but it gave rise to a cognizable property interest under RICO's forfeiture provision. This conclusion is not explained, and it seems suspect. If the defendant's wife, the sole owner of the property under state law, had attempted to sell the property, the husband could hardly object on the grounds that he had acquired an interest in the property by investing RICO proceeds in it.

Also suspect is the conclusion that this interest was forfeitable under 18 U.S.C. § 1963(a)(1), as an interest "acquired or maintained in violation of RICO." The activity that

produced the proceeds was a violation of RICO. However, the court did not explain how the defendant's use of those proceeds to pay his wife's mortgage was *itself* a violation of RICO.

Furthermore, RICO's forfeiture provision also requires the forfeiture of "any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly," from a RICO violation. 18 U.S.C. § 1963(a)(3). Thus, to the extent the property constituted RICO proceeds, the court could have ordered its forfeiture under this provision. One could interpret this provision to mean that property traceable to RICO proceeds (*i.e.*, RICO offense property) is forfeitable regardless of the defendant's interest in it. Or it could be interpreted to mean that the defendant had an interest in that property under § 1963 to the extent it represented proceeds of the RICO violation. The first interpretation would render state law regarding ownership irrelevant; the second would supersede such law. In either event, the *Totaro* court's tenuous analysis regarding (a)(1) seems unnecessary.

The government reads *Totaro* to say that when property is maintained with proceeds of criminal activity, the criminal obtains an interest in that property under federal law. I believe it would be inappropriate to announce or apply such a rule. When Congress intends to render the proceeds of criminal activity subject to forfeiture, it enacts legislation providing for forfeiture as a penalty for that crime. At the time of John's crimes, no statute contemplated the forfeiture of the proceeds of a securities fraud violation. Accordingly, if I ordered forfeiture of property based on its nexus to John's securities fraud, I would be imposing a sanction not contemplated by Congress at the time of John's offense. I decline to do so.

2.    *The Safeguard Shares*

Judge Gold concluded that the conveyance of the Safeguard shares was fraudulent, and therefore that under New Jersey law, their transfer to Regina would be put aside and they would be deemed the property of John Surgent. There is perhaps no better evidence of the soundness of this conclusion than the curious arguments Regina levels against it.

Regina first argues that Judge Gold's "conclusion . . . was not acknowledged as applicable, let alone demonstrated" by the government. Regina Obj. 2. However, the government explicitly argued that the transfer of the shares to Regina was void. Regina provides no reason to believe that the fact that Judge Gold based his conclusion on New Jersey law rather than the federal forfeiture law somehow renders it erroneous.

Her argument, in essence, is that Judge Gold erred because he decided against her on a theory she herself, rather than the government, suggested. I disagree and I conclude that the government has proven by a preponderance of the evidence that the Safeguard shares held by Regina are the property of John Surgent under New Jersey law, and must therefore be forfeited pursuant to § 853(p)(2).

I also find that the government has proven as a matter of law that Regina Surgent did not have a "right, title or interest" in the shares that "was vested in the [her] rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture" or any time thereafter. Regina adduced no evidence suggesting that John's intent was not fraudulent, and her sole factual argument on this issue was the lame suggestion that "the evidence adduced by plaintiff appears to indicate that the shares were a modest and legitimate gift from the defendant to his wife." Regina Mem. in

Support of Mot. for Summary Judgment 23.  As a result, I find no genuine issue of material fact on this issue and award summary judgment on this aspect of the petition.

3.     *The LLC*

As the indictment itself alleges, the Franklin Lakes property is not currently owned by Regina, but by the LLC.  The government argues that the LLC is a sham and should be disregarded.  In the alternative, they seek to amend the order of forfeiture to include John's interest in the LLC.

As Judge Gold observed, however, the transfer to the LLC was not fraudulent: Regina did not need to transfer her property to the LLC to prevent it from being forfeited for John's crimes.  Furthermore, even if the LLC is set aside as a sham, Nevada and New Jersey law would regard Regina as the owner of its assets.  Judge Gold opined that John's management of and contributions to the LLC might have given him some interest *in the LLC*, either as a creditor or a member, but concluded that numerous factual issues would need to be resolved before making that determination.

Although I agree with Judge Gold's analysis, I find that no such determination need occur.  To the extent that the conduct alleged by the government gave John an interest in the LLC, or rendered him the "true" owner of the LLC's assets, such an interest arose no later than November 8, 2002.  Thus, to the extent John possessed an interest in the LLC that may be forfeitable as a substitute asset, he possessed such an interest no later than that date.

However, on the date in question, John filed a petition for bankruptcy.  Under 11 U.S.C. § 541(a)(1), as the government notes, Aug. 11, 2008 Mem. 8, all of the debtor's legal and

equitable interests in property "as of the commencement of the case" become the property of the bankruptcy estate.

I have found no case addressing the effect of a bankruptcy filing on the government's attempts to forfeit a bankruptcy debtor's assets as substitute property under § 853(p). However, it seems clear that property of the bankruptcy estate is not property of the defendant. Indeed, the government suggests that if "the Government were successful in establishing that Surgent had an interest in the Franklin Lakes property under a veil piercing analysis, that interest would revert to the bankruptcy estate." Aug. 11, 2008 Mem. 8. Because any interest John acquired in the LLC prior to November 8, 2002 would now be the property of the bankruptcy estate, rather than property of the defendant, the government's motion to amend the order of forfeiture to include this property is denied.

## CONCLUSION

Because the government has failed, as a matter of law, to demonstrate that any interest in the Franklin Lakes property or the LLC is property of the defendant John Surgent, the final order of forfeiture will not include this property. Because the government has proved that the Safeguard shares are property of John Surgent, and Regina has failed as a matter of law to demonstrate that she has a superior interest in this property, the Safeguard shares will be included in the final order of forfeiture.

So ordered.


JOHN GLEESON, U.S.D.J.

Dated: Brooklyn, New York
     August 17, 2009